1   Gennaro A. Filice (SBN: 061112)
    Amber M. Trincado (SBN: 260186)
2   FILICE BROWN EASSA & MCLEOD
    1999 Harrison Street – 18th Floor
3   Oakland, California  94612
    Telephone:  (510) 444-3131
4   Facsimile:  (510) 839-7940
    Email: gfilice@filicebrown.com
5

6   Constance K. Robinson (pro hac vice)
    Peter M. Boyle (pro hac vice)
7   KILPATRICK STOCKTON LLP
    607 14th Street, N.W., Suite 900
8   Washington, D.C.  20005
    Telephone:  (202) 508-5800
9   Facsimile:  (202) 508-5858
    Email: crobinson@kilpatrickstockton.com;
10        pboyle@kilpatrickstockton.com
11

12   *Counsel for Defendant Collegiate Licensing Company*

13

14            **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
15               **OAKLAND DIVISION**

16   EDWARD C. O'BANNON, JR., on behalf of    Case No. 4:09-cv-03329 CW
    himself and all others similarly situated,
17
                         **DEFENDANT COLLEGIATE**
18           Plaintiff,            **LICENSING COMPANY'S NOTICE OF**
                         **MOTION AND MOTION TO DISMISS**
19   v.                        **THE COMPLAINT PURSUANT TO**
                         **FED. R. CIV. P. 12(b)(6)**
20   NATIONAL COLLEGIATE ATHLETIC
    ASSOCIATION (a/k/a the "NCAA"), and
21   COLLEGIATE LICENSING OMPANY (a/k/a   Hearing Date: November 17, 2009
    "CLC")                            Time:        2:00 p.m.
22                                Dept:       Courtroom 2, 4th Floor
                               Judge:      Hon. Claudia Wilken
23
          Defendants.           Date Complaint filed:  July 21, 2009
24

25 _____

26

27

28          **DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION**
       **AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. CIV. P. 12(b)(6)**
                      Case No. 4:09-cv-03329-CW

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on November 17, 2009[1] at 2:00 p.m. before the Honorable

Claudia Wilken, United States District Court, 1301 Clay Street, Suite 400 S, Oakland, CA 94612-

5212, Courtroom 2, 4th Floor, defendant Collegiate Licensing Company ("CLC") will, and hereby

does, move the Court for an order dismissing all causes of action in the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). CLC moves to dismiss these causes of actions on the

following grounds:

(1) Plaintiff has failed to state a claim under the antitrust laws (15 U.S.C. § 1) because:

(a) Plaintiff has failed to allege facts from which one could plausibly infer that CLC

participated in any contract, combination or conspiracy in violation of § 1 of the

Sherman Act; and,

(b) Plaintiff has failed to allege facts sufficient to show any cognizable antitrust injury to

himself or injury to competition and therefore lacks antitrust standing.

(2) Plaintiff has failed to state a claim for unjust enrichment because:

(a) Plaintiff has failed to identify under which common law he seeks relief;

(b) Plaintiff has failed to plead he is entitled to restitution or to a constructive trust; and,

(c) Plaintiff has failed to plead that he conferred any benefit on CLC.

(3) Plaintiff has failed to state a claim for an accounting because:

(a) Plaintiff has failed to allege there is any relationship between he and CLC;

(b) Plaintiff has failed to allege the accounts allegedly at issue are unusually complex;

and,

(c) Plaintiff has failed to allege he does not have an adequate remedy at law.

---

[1] The Court has authorized Defendants to notice the hearing for November 17, 2009 for the convenience of the Court as other pending motions in this matter will be heard that day.

1

2

## **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. iv

I.   INTRODUCTION .............................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................................ 4

III. ARGUMENT AND CITATION OF AUTHORITIES...................................................... 4

A. Legal Standard ........................................................................................................... 4

B. Plaintiff Has Failed To State An Antitrust Claim Against CLC .................................... 5

    1.   Plaintiff Has Failed to Allege Facts From Which One Could
        Plausibly Infer that CLC Participated in the Alleged Antitrust
        Conspiracy. ..................................................................................................... 6

    2.   Plaintiff Has Failed to State an Antitrust Claim Because He Has
        Not Alleged Facts Sufficient to Show Any Cognizable Antitrust
        Injury to Himself or Harm to Competition. .............................................. 13

C. Plaintiff's Unjust Enrichment and Accounting Claims Fail as a Matter of Law. ....... 16

    1.   Plaintiff Has Failed To State A Claim For Unjust Enrichment. .............. 17

    2.   Plaintiff Has Failed To State A Claim For Equitable Accounting. ......... 18

IV.  CONCLUSION  ................................................................................................................ 19

**DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**
Case No. 4:09-cv-03329-CW

i

# TABLE OF AUTHORITIES

**CASES**

*49er Chevrolet, Inc. v. Gen. Motors Corp.,*
    803 F.2d 1463 (9th Cir. 1986) ..................................................................... 11

*Aguero v. Mortgageit, Inc.,*
    09-CV-0640, 2009 WL 2486311 (E.D. Cal. Aug, 19, 2009) ........................... 18

*Appleton v. Intergraph Corp.,*
    627 F. Supp. 2d 1342 (M.D. Ga. 2008) ........................................................ 15

*Arbitron Co. v. Tropicana Prod. Sales, Inc.,*
    No. 91 Civ 3697, 1993 WL 138965 (S.D.N.Y. Apr. 28, 1993) ....................... 15

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ............................................................................ 4, 5, 16

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of
Carpenters,*
    459 U.S. 519 (1983) ................................................................................... 13

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ........................................................................ 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................... passim

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ..................................................................................... 6

*Car Carriers, Inc. v. Ford Motor Co.,*
    745 F.2d 1101 (7th Cir. 1984) ..................................................................... 15

*Cargill, Inc. v. Monfort of Colo., Inc.,*
    479 U.S. 104 (1986) ................................................................................. 6, 13

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) .......................................................................... 5

*County of Santa Clara v. Astra USA, Inc.,*
    C 05-03740, 2006 WL 2193343 (N.D. Cal. July 28, 2006) ........................... 17

*Eagle v. Star-Kist Foods, Inc.,*
    812 F.2d 538 (9th Cir. 1987) ....................................................................... 13

*Faigman v. Cingular Wireless, LLC,*
    No. C. 06-04622, 2007 WL 708554 (N.D. Cal. Mar. 2, 2007) ...................... 17

*Faircloth v. A.L. Williams & Assocs., Inc.,*
    465 S.E.2d 722 (Ga. App. 1995) ................................................................. 18

*In re Copper Mtn. Sec. Litig.,*
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ........................................................... 5

*In re Late Fee & Over-Limit Fee Litig.,*

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

ii

528 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................................ 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................... 7, 16

*In re TFT LCD (Flat Panel) Antitrust Litig.,*
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................................... 6

*In re: Dynamic Random Access Memory Antitrust Litig.,*
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ................................................................... 13

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.,*
No. CV 07-00043, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007) .......................... 11

*Ivey v. Bd. of Regents,*
673 F.2d 266 (9th Cir. 1982) .................................................................................... 8

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008) ......................................................................... 5, 11, 12

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) .......................................................................... 5, 10

*Korea Kumho Petrochem. v. Flexsys Am. LP,*
No. C07-01057, 2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ................................ 6

*Kritzer v. Lancaster,*
96 Cal. App. 2d 1 (1950) ........................................................................................ 18

*La Collina Dal Lago v. Pac. Bell Tel. Co.,*
No. C-08-2451, 2008 WL 4559739 (N.D. Cal. Oct. 11, 2008) ............................... 5

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,*
884 F.2d 504 (9th Cir. 1989) .......................................................................... 5, 15, 16

*Mangindin v. Wash. Mut. Bank,*
No. 09-1268, 2009 WL 1766601 (N.D. Cal. June 18, 2009) .................................. 18

*Mann v. City of Tuscon,*
782 F.2d 790 (9th Cir. 1986) .................................................................................... 8

*McKinniss v. Sunny Delight Beverages, Co.,*
No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .................................. 17

*Mun. Utils Bd. of Albertville v. Ala. Power Co.,*
934 F.2d 1493 (11th Cir. 1991) .............................................................................. 13

*Parrish v. Nat'l Football League Players Ass'n,*
534 F. Supp. 2d 1081 (N.D. Cal. 2007) ............................................................ 14, 18

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ................................................................................................ 17

*Rutman Wine Co. v. E. & J. Gallo Winery,*
829 F.2d 729 (9th Cir. 1987) .................................................................................. 15

*Salerno v. Am. League of Prof'l Baseball Clubs,*
429 F.2d 1003 (2d Cir. 1970),

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

iii

*cert. denied*, 400 U.S. 1001 (1971)......................................................................... 15

*Sheakalee v. Fortis Ben. Ins. Co.*,
    No. 08-CV-00416, 2008 WL 4224575 (E.D. Cal. Sept. 15, 2008) .................................... 17

*Smith Serv. Oil Co. v. Parker*,
    549 S.E.2d 485 (Ga. App. 2002)............................................................................. 18

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................... 5

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................................ 12

*Tate v. Pacific Gas & Elec. Co.*,
    230 F. Supp. 2d 1072 (N.D. Cal. 2002).................................................................. 11

*Temple v. Circuit City Stores, Inc.*,
    Nos. 06CV5303, 06 CV 5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)................... 11

*Thomas v. Mundell*,
    572 F.3d 756 (9th Cir. 2009) .................................................................................... 8

*Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko*,
    540 U.S. 398 (2004)................................................................................................ 15

**STATUTES**
15 U.S.C. § 1 (2006)..................................................................................................... 1, 4

**OTHER AUTHORITIES**
1 Cal. Jur.3d *Accounts & Accounting* § 77............................................................. 18

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

iv

1

2
**MEMORANDUM OF POINTS AND AUTHORITIES**

3
Defendant Collegiate Licensing Company ("CLC") respectfully submits this

4
memorandum of points and authorities in support of its motion to dismiss the claims asserted

5
against CLC by Plaintiff Edward C. O'Bannon, Jr. ("Plaintiff" or "O'Bannon") pursuant to Fed.

6
R. Civ. P. 12(b)(6).

7
## I.   INTRODUCTION

8
Plaintiff, on behalf of himself and other current and former collegiate athletes, asserts

9

10
against CLC and the National Collegiate Athletic Association ("NCAA") two federal antitrust

11
claims under Section 1 of the Sherman Act, 15 U.S.C. § 1 (2006), and state-law claims for unjust

12
enrichment and an accounting.

13
O'Bannon, a former college basketball player, alleges an antitrust conspiracy between and

14
among the NCAA and its member institutions to force student-athletes to sign specific eligibility

15
forms promulgated by the NCAA, an inter-collegiate athletic association comprised of over 1,000

16
colleges, conferences, and other organizations.  Complaint ("Compl.") ¶¶ 5, 9-11.  According to

17

18
Plaintiff, these forms effectively fixed the prices paid by NCAA schools for the use of student-

19
athletes' images and likenesses after their college playing careers ended and also operated as a

20
group boycott to prevent the NCAA schools from offering student-athletes better terms during the

21
college recruitment process.  Compl. ¶ 87.  But CLC, which represents the NCAA and various

22
NCAA schools in connection with trademark licensing, has nothing whatsoever to do with the

23
allegedly offensive NCAA forms, does not license student-athletes names, images, or likeness,

24

25
and Plaintiff has not and cannot allege otherwise.  Compl. ¶¶ 98, 99.  The Complaint only recites

26
innocuous facts about CLC's business.  *See*, *e.g.*, Compl. ¶¶ 98-103, 133-34.

27
Realizing as much, O'Bannon makes a futile attempt to somehow tie CLC to the

28
purported conspiracy by generally alleging, in a very vague and conclusory manner, that CLC

serves as the "NCAA's licensing arm," Compl. ¶¶ 2, 134, and that CLC "facilitated" the alleged

conspiracy. Compl. ¶¶ 13, 175, 185, 198. But O'Bannon cannot use such vague allegations to try

to suggest that CLC has some unexplained role in either licensing the NCAA's rights or somehow

assisting the allegedly illegal conduct to connect CLC sufficiently to the alleged conspiracy.

Indeed, these vague allegations fail to suggest and cannot be used to infer that CLC had anything

to do with the subject matter of the alleged conspiracy, *i.e.*, the NCAA eligibility forms.

Moreover, the specific allegations found in the Complaint about CLC contradict and refute

Plaintiff's vague suggestions that CLC had any role in granting licenses to former student-

athletes' rights or that CLC has "facilitated" any alleged conspiracy to boycott or fix prices paid

to former student-athletes. Specifically, the Complaint admits:

- CLC serves as the trademark licensing representative for the NCAA and several NCAA member institutions, *see* Compl. ¶ 98;

- In those specific licensing transactions in which the Complaint identifies CLC as having played a role, the licensees acquired rights from the NCAA and NCAA schools, through CLC, to reproduce the NCAA's and schools' trademarks, including logos, uniforms, mascots, and stadiums, *see* Compl. ¶¶ 133-34, 139, 161;

- Other unrelated parties serve as the NCAA's exclusive licensing representatives for other rights, *see* Compl. ¶¶ 120, 131, 147;

- CLC makes no mention whatsoever on its website about licensing of student-athletes' names, images, or likenesses, *see* Compl. ¶¶ 97, 99; and

- CLC participates in licensing transactions in which putative class members independently license the use of their names, images, and likenesses for use in conjunction with the NCAA's and NCAA schools' trademark rights,

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

2

1   which CLC separately licenses to the product manufacturers. *See* Compl.

2   ¶¶ 133, 143.

3   Rather than showing that CLC participated in any illegal conspiracy to harm former NCAA

4   athletes, these specific allegations demonstrate that CLC has helped putative class members by

5

6   creating opportunities for former NCAA athletes to license their likenesses and negate any

7   inference that CLC joined the conspiracy alleged elsewhere in the Complaint.

8       Plaintiff has also failed, in several respects, to allege facts necessary to articulate a viable

9   antitrust claim, not just against CLC, but against anyone. For instance, Plaintiff does not allege

10  facts sufficient to suggest that he competes in the alleged relevant market, which Plaintiff

11  identifies as the "collegiate licensing market." Compl. ¶ 79. Rather, Plaintiff only complains

12

13  about being denied compensation for the unauthorized use of his image. Compl. ¶¶ 184, 199.

14  Plaintiff therefore has not adequately pleaded any antitrust injury to himself, the basis for his

15  antitrust standing, or even harm to competition – all necessary prerequisites for stating an antitrust

16  claim.

17      Finally, Plaintiff's claims for unjust enrichment and equitable accounting also fail to state

18  claims upon which relief may be granted. First, Plaintiff has failed to identify the state common

19  law under which he is proceeding. Second, California does not recognize unjust enrichment and

20

21  equitable accounting as independent causes of action. Third, even if the claims are recognized,

22  Plaintiff has failed to plead the requisite elements. In particular, regarding unjust enrichment,

23  Plaintiff has failed to plead (1) any entitlement to restitution or to the imposition of a constructive

24  trust because there is no relationship between O'Bannon and CLC or (2) that he conferred *any*

25  *benefit* on CLC. Regarding equitable accounting, Plaintiff has failed to plead (1) he has any

26  relationship with CLC; (2) the accounts allegedly at issue are unusually complicated, or (3) he

27

28

1   lacks an adequate remedy at law.  The Court therefore should also dismiss Plaintiff's unjust

2   enrichment and accounting claims.

3       For these reasons, CLC's motion to dismiss should be granted.

4   **II.       STATEMENT OF ISSUES TO BE DECIDED**

5       1.   Whether Plaintiff's allegations fail to state a claim under 15 U.S.C. § 1 ("Sherman

6
7   Act");

8       2.   Whether Plaintiff's allegations fail to state a claim for unjust enrichment; and

9       3.   Whether Plaintiff's allegations fail to state a claim for an accounting.

10

11  **III.      ARGUMENT AND CITATION OF AUTHORITIES**

12      **A.    Legal Standard**

13      Plaintiff's Complaint fails to state a claim against CLC and should be dismissed under

14  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a Complaint must set forth "enough

15  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

16  544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial

17  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18
19  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing

20  *Twombly*, 550 U.S. at 556).  Stating a claim "requires more than labels and conclusions, and a

21  formulaic recitation of a cause of action's elements will not do.  Factual allegations must be

22  enough to raise a right to relief above the speculative level on the assumption that all of the

23
24  allegations in the Complaint are true." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see*

25  *also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported

26  by mere conclusionary statements, do not suffice.").  Given the expense associated with antitrust

27  discovery, a court should dismiss any antitrust claim and not allow the claim to proceed to the

28

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

4

1   discovery phase if the claim fails to state a plausible entitlement to relief. *See Twombly*, 550 U.S.

2   at 557-58; *see also Iqbal*, 129 S.Ct. at 1953-54 (rejecting invitation to relax pleading requirements

3   on grounds that discovery would be "minimally intrusive").

4   　　　In deciding a motion to dismiss, a court need not accept conclusory allegations of law or

5   unwarranted inferences, and dismissal is required if the facts are insufficient to support a

6   cognizable claim. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

7   (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *Balistreri v.*

8   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). And a court may consider documents

9   attached to or incorporated by reference in the Complaint in deciding a motion under Rule

10  12(b)(6). *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *In re Copper Mtn. Sec.*

11  *Litig.*, 311 F. Supp. 2d 857, 865 (N.D. Cal. 2004) (Walker, J.).

12  　　　Because Plaintiff's Complaint fails to nudge any claims asserted against CLC across the

13  line from "conceivable to plausible" under *Twombly* and *Iqbal*, the Court should dismiss the

14  Complaint.[2]

15  **B.   Plaintiff Has Failed To State An Antitrust Claim Against CLC**

16  　　　"To state a claim under Section 1 of the Sherman Act . . ., [Plaintiff] must plead not just

17  ultimate facts (such as conspiracy), but evidentiary facts which, if true, will prove: (1) a contract,

18  combination or conspiracy among two or more persons or distinct business entities; (2) by which

19  the persons or entities intended to harm or restrain trade or commerce…; (3) which actually

20  injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citing

21  *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)). To properly

22  plead an antitrust conspiracy under *Twombly,* "the complaint must allege facts such as a 'specific

---

[2] And in the class-action context, the classes' claims must be dismissed if the Complaint fails to state a claim upon which relief may be granted to the individual class representatives. *See La Collina Dal Lago v. Pac. Bell Tel. Co.,* No. C-08-2451, 2008 WL 4559739, at *2 (N.D. Cal. Oct. 11, 2008) (Illston, J.).

1   time, place, or person involved in the alleged conspirac[y]." *Id.* (quoting *Twombly*, 127 S.Ct. at

2   1970 n.10). Moreover, an antitrust plaintiff must also plead facts sufficient to show that it has

3   suffered an antitrust injury, *i.e.*, an injury of the type that the antitrust laws were designed to

4   prevent and that has a sufficiently close causal nexus to harm to competition generally in the

5   relevant market. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

6   Without alleging the factual predicates to show an antitrust injury, a plaintiff cannot establish that

7   it has antitrust standing. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110-11 (1986);

8   *Korea Kumho Petrochem. v. Flexsys Am. LP,* No. C07-01057, 2008 WL 686834, at *3 (N.D. Cal.

9   Mar. 11, 2008) (Jenkins, J.). Plaintiff has failed to plead facts, which if true, would prove that

10  CLC participated in the alleged antitrust conspiracy or that the alleged conspiracy has inflicted

11  any antitrust injury on the Plaintiff or harm to competition.

12

13          **1.      Plaintiff Has Failed to Allege Facts From Which One Could Plausibly Infer
                       that CLC Participated in the Alleged Antitrust Conspiracy.**

14

15          For its antitrust claims, Plaintiff must allege evidentiary facts to show "that each

16  individual defendant joined the conspiracy and played some role in it because, at the heart of an

17  antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re*

18  *TFT LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (Illston, J.)

19  (internal quotations and citations omitted); *see also In re Static Random Access Memory (SRAM)*

20

21

22

23

24

25

26

27

28

DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

6

1    *Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (Wilken, J.)  (plaintiff must allege

2    sufficient facts to plausibly suggest that each defendant participated in the antitrust conspiracy).[3]

3          Here, the Complaint lacks any allegations that CLC joined in or played any role in the

4    alleged antitrust conspiracy between and among the NCAA and its member schools.  The

5    Complaint is completely devoid of any allegations that CLC had or has any role in the actions that

6    the NCAA or its member schools have allegedly taken in connection with the NCAA eligibility

7    forms, which O'Bannon claims comprise the alleged conspiracy.  Plaintiff does not allege,

8    because it cannot do so, any facts suggesting that CLC even encouraged the NCAA or its

9    members schools to use the allegedly anticompetitive forms, which would be insufficient to state

10   an antitrust conspiracy claim in any event.  *See Hackman v. Dickerson Realtors, Inc.,* 520 F.

11   Supp. 2d 954, 965 (N.D. Ill. 2007); *AD/SAT v. Associated Press*, 181 F.3d 216, 242-43 (2d Cir.

12   1999) (encouraging, assisting and endorsing development of competitor's product insufficient to

13   show participation in either conspiracy to boycott plaintiff's product or agreement to refuse to

14   deal with plaintiff).  Because Plaintiff has failed to allege facts from which one could reasonably

15   infer that CLC reached a meeting of the minds with the NCAA and NCAA member schools to fix

16   prices and boycott O'Bannon and the other putative class members, Plaintiff has not pleaded

17   enough to show CLC participated in the alleged conspiracy.  *See, e.g., Twombly,* 550 U.S. at  557

18   ("without that further circumstance pointing toward a meeting of the minds [allegations that

---

[3] In *SRAM*, Plaintiffs had asserted an antitrust claim for price fixing, allegedly effected through an exchange of price information among the defendants.  This Court denied defendants' motion to dismiss in *SRAM* because the complaint contained specific allegations about defendants' communications on the subject matter relating to the conspiracy.  Plaintiffs alleged and attached to the complaint emails showing the defendants' participation in the information exchange program.  And defendants conceded that exchanges of price information could establish the conspiracy element necessary for a price-fixing claim under Section 1 of the Sherman Act. Moreover, the plaintiffs alleged that the same defendants participated in and some pleaded guilty to participating in a price-fixing conspiracy relating to DRAM, a related product.  These allegations  could support the plausible inference that the defendants fixed prices of SRAM. *SRAM,* 580 F. Supp. 2d at 901-03.  As discussed below, O'Bannon's Complaint contains no such similar factual allegations regarding CLC.

merely provide] an account of a defendant's commercial efforts stays in neutral territory" and fails to state a claim for antitrust conspiracy); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (Armstrong, J.) (same) (quoting *Twombly,* 127 S. Ct. at 1966).

Plaintiff's generalized and overbroad allegation that CLC serves as the "NCAA's licensing arm" does not provide sufficient factual content to tie CLC to any allegedly improper licensing transactions or to the alleged conspiracy. *See* Compl. ¶¶ 2, 80, 97, 134. The Complaint sheds no light on what Plaintiff means by the term "licensing arm" or what acts CLC has supposedly taken as the NCAA's alleged "licensing arm." As such, these allegations are hopelessly vague and cannot save Plaintiff's otherwise deficient claims from dismissal. *Thomas v. Mundell*, 572 F.3d 756, 763 (9th Cir. 2009) (citing *Mann v. City of Tuscon*, 782 F.2d 790, 793 (9th Cir. 1986)); *see also Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (holding vague and conclusory allegations of official's participation in civil rights violation in § 1983 claim insufficient to withstand motion to dismiss). The Complaint certainly does not allege or even suggest that, as the NCAA's purported "licensing arm," CLC would have had any role in or even any influence over the NCAA schools' alleged requirement that student-athletes sign the particular NCAA eligibility forms that give rise to the purported price fixing and group boycott conspiracy. And in any event, the specific allegations about CLC found in the Complaint contradict the general and vague notion that CLC has some vast, undefined role in all NCAA licensing transactions. *See, e.g.*, Compl. at ¶¶ 36, 98, 99, 103 (CLC is trademark licensing representative for NCAA and schools); *id.* at ¶ 120 (Thought Equity Motion is NCAA's exclusive licensing agent for video footage); *id.* at ¶ 131 (Associated Press is NCAA's exclusive licensing agent for photographs); *id.* at ¶¶ 133-34, 139, 161 (CLC involved in licenses to toy maker, video game producer, and jersey and apparel manufacturer to allow use of NCAA's and member

schools' trademarks needed to reproduce logos, uniforms, stadiums, and mascots); *id.* at ¶¶ 104-132, 149-156 (Complaint fails to identify CLC involvement in any other identified licensing transaction).

Plaintiff identifies in the Complaint the types of rights that CLC handles for the NCAA and NCAA schools. Regarding the specific licensing transactions in which the Complaint identifies CLC as having played some role, the NCAA or NCAA schools licensed, through CLC, trademark rights needed to reproduce, among other things, the colleges' uniforms. For example, Plaintiff admits that McFarlane Toys obtained a license through CLC to reproduce certain NCAA schools' uniforms. Compl. ¶¶ 133-34. And with regard to EA's NCAA video game products, the Complaint concedes that the NCAA licensed, through CLC, the trademark rights necessary to reproduce the schools' "'stadiums, uniforms, and mascots.'" Compl. ¶ 139. And both MacFarlane Toys and EA separately obtained licenses from putative class members to use their names, licenses, and images in connection with the licensees' respective products. Compl. ¶¶ 133, 143.

Indeed, the Complaint further acknowledges that "'[CLC] is the ***trademark*** licensing representative'" for the NCAA and various NCAA schools. *See* Compl. ¶ 98, *see also id.* ¶ 99 ("'CLC's mission has been to serve as the guiding force in collegiate trademark licensing'"); *id.* ¶¶ 36, 103 (CLC is "'leader in collegiate brand licensing'"). CLC's and the NCAA's websites both readily confirm that CLC serves as the licensing representative for the NCAA and several NCAA members with regard to their trademark rights and not a licensing representative for any and all sorts of intellectual property and other rights. See Decl. of Peter M. Boyle ¶¶ 3, 5, 5a-5b & Ex. A (listing and providing passages from CLC's website showing CLC focuses singularly on

1   licensing and protecting clients' trademark rights).[4]  Plaintiff claims that the NCAA, on its

2   website, identifies CLC as its "licensing representative" for the NCAA's "licensing program" and

3   directs potential licensees to contact CLC.  ¶¶ 96, 97.  But according to the relevant portion of the

4
    NCAA's website, "The NCAA licensing program consists of a limited number of companies that
5
6   are committed to producing quality products with NCAA registered trademarks and registered

7   trademarks of member institutions . . ."  *See* Boyle Decl., ¶¶ 6, 6a-6c & Ex. B.  CLC's role in

8   representing the NCAA and NCAA schools, as alleged in the Complaint and supported by the

9   materials incorporated by reference in the Complaint, does not suggest in the least that CLC

10  participated in or even contributed to the alleged conspiracy.  Indeed, Plaintiff has not and cannot

11  even properly allege that CLC has granted any licenses or even represented any licensor --
12
    whether the NCAA, a member school, or other client -- in granting a license to use any former
13
14  NCAA athlete's name, image, or likeness.  Plaintiff points out that nowhere on CLC's website

15  does CLC offer or discuss licenses to student-athletes' images or likenesses.  Compl. ¶ 99.  The

16  simple reason for this is that CLC does not sell those rights and Plaintiff has asserted no plausible

17  allegation to suggest otherwise.

18      Implicitly admitting that CLC did not participate in the alleged conspiracy, Plaintiff

19  attempts to tie CLC to the conspiracy with the very weak, vague, and conclusory allegations that
20
    CLC somehow "facilitated" the conspiracy between and among the NCAA and its members.  For
21
22  instance, the Complaint states, "the NCAA has organized, maintained, and operated an illegal

23  horizontal cartel consisting of its member schools and conferences, additionally facilitated by

24  CLC."  Compl. ¶ 13; *see also id.* ¶¶ 175, 185, 198 (CLC "facilitated" and benefited from the

25

26  ─────────────────
    [4] The Complaint liberally quotes from and thereby incorporates CLC's and the NCAA's websites
27  by reference. Compl. *See, e.g.* Compl.  ¶¶ 96-99, 108, 113.  The Court therefore may properly
    consider the websites' content in deciding this motion. *See, e.g., Knievel v. ESPN*, 393 F.3d
28  1068, 1076-77 (9th Cir. 2005).

─────────────────
DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
Case No. 4:09-cv-03329-CW

conspiracy). Plaintiff fails to elaborate, however, as to how CLC possibly facilitated a conspiracy the aim of which allegedly was to force NCAA student-athletes to sign certain NCAA eligibility forms, thereby allegedly allowing NCAA schools to "purchase" student-athletes' rights of publicity at no cost, and allegedly preventing member schools from offering student-athletes better terms. Certainly, bald allegations that a defendant "facilitated" a conspiracy-- not even that it participated in the conspiracy--cannot render plausible an antitrust conspiracy claim against a particular defendant where bald allegations that the defendant participated in that same conspiracy would fail. *Tate v. Pacific Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1083 (N.D. Cal. 2002) (Alsup, J.) (citations omitted); *see also Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV 07-00043, 2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007) ("As with the magic words "coerce," "combine," and "conspiracy," a mere allegation that parties entered into an agreement to restrain trade does not suffice to state a § 1 claim.") (citing *Twombly,* 127 S. Ct. at 1966).

As the case law makes clear, an alleged horizontal conspiracy at one level of the distribution chain does not *ipso facto* taint all parties in the distribution chain that deal with the alleged conspirators (especially in circumstances, like here, where no allegations exist to suggest the party further down the distribution chain handled the product supposedly tainted by the alleged conspiracy). *See, e.g., Kendall,* 518 F.2d at 1048 (motion to dismiss granted in favor of bank where antitrust plaintiff failed to allege facts to show banks joined conspiracy between and among members of credit card consortium); *Temple v. Circuit City Stores, Inc.,* Nos. 06CV5303, 06 CV 5304, 2007 WL 2790154, at *7 (E.D.N.Y. Sept. 25, 2007) (motions to dismiss granted to retailers accused of conspiring with credit card companies in part because antitrust allegations lacked "requisite 'amplification'" to suggest retailers joined credit card conspiracy); *see also 49er Chevrolet, Inc. v. Gen. Motors Corp.,* 803 F.2d 1463, 1467 (9th Cir. 1986) (car transport

1   company did not, as a matter of law, engage in antitrust conspiracy with car manufacturer to force

2   car dealer to "sell" repair services at low prices for cars damaged in transport because transport

3   company had no role whatsoever in setting terms upon which manufacturer dealt with dealer).  In

4   any event, the Complaint's specific allegations show that CLC's licensing activities actually

5   promoted licensing by putative class members, not undermined or prevented it.  Compl. ¶¶ 133-

6   34, 143.  Indeed, without acquiring, through CLC, a license to the NCAA's or schools'

7   trademarks, MacFarlane Toys, for example, would have had no need to purchase a license from

8   the putative class members to use their names and likenesses. *See id.*  This contradicts the vague

9   suggestion that CLC has facilitated any effort to boycott former NCAA athletes or prevent them

10  from receiving compensation for use of their likenesses.

11

12          Because specific allegations in the Complaint, as well as materials incorporated by

13  reference into the Complaint contradict the general allegation that CLC is the NCAA's "licensing

14  arm" or that CLC "facilitated" the alleged conspiracy, these allegations do not provide the factual

15  content needed to state a claim against CLC.  Indeed, on a motion to dismiss, a court need not

16  accept as true conclusory allegations that are contradicted by specific allegations or by documents

17  cited in the Complaint. *See, e g., Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th

18  Cir. 1998).

19

20          All Plaintiff has done with regard to CLC is to recite in his Complaint various innocuous

21  facts about CLC's commercial activities. *See, e.g.,* Compl. ¶¶ 36, 80, 97-103, 133-34, 143.  As

22  the Ninth Circuit has recognized, without more, Plaintiff's Sherman Act Section 1 claim against

23  CLC remains in neutral territory, which means O'Bannon has failed to nudge his claims against

24  CLC over the line from possible to plausible. *Kendall*, 518 F.3d at 1048; *see also Twombly* 550

25  U.S. at 557.  Plaintiff certainly has not pleaded enough evidentiary facts that create a reasonable

26  expectation that discovery will reveal an illegal agreement in which CLC has participated.

27

28

**DEFENDANT COLLEGIATE LICENSING COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**
Case No. 4:09-cv-03329-CW

12