1  Gennaro A. Filice III (SBN: 061112)
   Amber M. Trincado (SBN: 260186)
2  **FILICE BROWN EASSA & MCLEOD LLP**
   Lake Merritt Plaza
3  1999 Harrison Street, 18th Floor
   Oakland, CA 94612-0850
4  Telephone : 510-444-3 13 1
   Facsimile: 510-839-7940
5  Email: gfilice@filicebrown.com
6
   Constance K. Robinson (*pro hac vice*)
7  Peter M. Boyle (*pro hac vice*)
   **KILPATRICK STOCKTON LLP**
8  607 14th Street, N.W., Suite 900
   Washington, D.C.  20005
9  Telephone:  (202) 508-5800
   Facsimile:  (202) 508-5858
10 Email: crobinson@kilpatrickstockton.com
   pboyle@kilpatrickstockton.com
11
   Attorneys for Defendant
12 COLLEGIATE LICENSING COMPANY
13
14          **UNITED STATES DISTRICT COURT**
15          **NORTHERN DISTRICT OF CALIFORNIA**
16
17 EDWARD C. O'BANNON, JR., on            Case No. 4:09-cv-03329 CW
   behalf of himself and all others similarly
18 situated,                             **DEFENDANT COLLEGIATE LICENSING**
                                         **COMPANY'S REPLY BRIEF IN SUPPORT**
                   Plaintiff,            **OF ITS MOTION TO DISMISS PURSUANT**
19                                       **TO FED. R. CIV. P. 12(B)(6)**
20         v.
                                         Hearing Date: November 17, 2009
21 NATIONAL COLLEGIATE ATHLETIC          Time:      2pm
   ASSOCIATION (a/k/a the "NCAA"); and   Dept:      Courtroom 2, 4th Floor
22 COLLEGIATE LICENSING COMPANY          Judge:     Hon. Claudia Wilken
   (a/k/a "CLC"),
23                                       Date Complaint filed:  July 21, 2009
                   Defendants.
24
25
26
27
28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

---

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
(4:09-cv-03329-CW)

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES .......................................................................................... ii

I.  INTRODUCTION AND ISSUES TO BE DECIDED ...........................................1

II.  ARGUMENT...........................................................................................................2

    A.  Plaintiff Has Failed to Allege Facts From Which One Could Plausibly Infer that CLC Participated in the Alleged Conspiracy............................................................2

        1.  Plaintiff's Allegations and Arguments About CLC's Purported Licensing Activities And Role in Supposedly Protecting Athletes' Amateur Status Do Not Give Rise To Any Plausible Inference That CLC Participated in Any Alleged Conspiracy.............................................................................4

        2.  Reading the Complaint as a Whole and Putting Plaintiff's Vague Allegations in Proper Context, It Becomes Clear that Plaintiff Has Failed to Allege that CLC Participated in the Alleged Conspiracy. .............................8

    B.  Plaintiff Has Failed to Allege Antitrust Injury or Harm to Competition..................9

    C.  Plaintiff's Common Law Claims Must Be Dismissed...........................................12

III.  CONCLUSION......................................................................................................14

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

i

1

2                                    **TABLE OF AUTHORITIES**

3    **Cases**

*Al-Kidd v. Ashcroft,*
4      No. 06-36059, 2009 WL 2836448 (9th Cir. Sept. 4, 2009)................................................2

5
*Barbera v. WMC Mortg. Corp.,*
6      No. C 04-3738, 2006 WL 167632 (N.D. Cal. Jan. 19, 2006)...................................3, 14

7    *Bell Atl. Corp. v. Twombly,*
       550 U.S. 544 (2007)...........................................................................................3, 6, 9
8
*Bhan v. NME Hospitals, Inc.,*
9      772 F.2d 1467 (9th Cir. 1985) ........................................................................................10

10   *Brunswick Corp. v. Riegel Textile Corp.,*
       752 F.2d 261 (7th Cir. 1984) ..........................................................................................11
11
*Car Carriers, Inc. v. Ford Motor Co.,*
12     745 F.2d 1101 (7th Cir. 1984) ..............................................................................3, 9, 11

13
*Cholla Ready Mix, Inc. v. Civish,*
14     382 F.3d 969 (9th Cir. 2004) ............................................................................................3

15   *Clegg v. Cult Awareness Network,*
       18 F.3d 752 (9th Cir. 1994) ..............................................................................................8
16
*County of Santa Clara v. Astra USA, Inc.,*
17     C 05-03740, 2006 WL 2193343 (N.D. Cal. July 28, 2006) .........................................14

18   *Daniel v. Am. Bd. of Emergency Med.,*
       428 F.3d 408 (2nd Cir. 2005)...........................................................................................10
19
*Eagle v. Star-Kist Foods, Inc.,*
20     812 F.2d 538 (9th Cir. 1987) ............................................................................................9
21
*Faigman v. Cingular Wireless, LLC,*
22     No. C06-04622, 2007 WL 708554 (N.D. Cal. Mar. 2, 2007)........................................12

23
*Five Smiths, Inc. v. Nat'l Football League Players Ass'n,*
24     788 F. Supp. 1042 (D. Minn. 1992)..................................................................................7

25   *Hamilton v. Aubrey,*
       No. 2:07-cv-01413-HDM-RJJ, 2008 WL 1774469 (D. Nev. Apr. 15, 2008) ........................3, 12
26
*In re Elevator Antitrust Litig.,*
27     502 F.3d 47 (2d Cir. 2007) ..............................................................................................6

28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1107 (N.D. Cal. 2008) ..........................................................................6

*In re Travel Agent Comm'n Antitrust Litig.*,
    No. 07-4464, 2009 WL 3151315 (6th Cir. Oct. 2, 2009) .................................................6

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
    No. CV 07-00043 MMM, 2007 WL 4976364 (C.D. Cal. Oct. 27, 2009) ..................8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................................8

*Kline v. Coldwell Banker*,
    508 F.2d 226 (9th Cir. 1974) ..........................................................................................9

*Kritzer v. Lancaster*,
    96 Cal. App. 2d 1 (1950) ..............................................................................................14

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*,
    884 F.2d 504 (9th Cir. 1989) ...................................................................................10, 12

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ........................................................................................10

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .......................................13

*Parrish v. Nat'l Football League Players Ass'n*,
    534 F. Supp. 2d 1081 (N.D. Cal. 2007) .................................................................10, 13

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
    532 F.3d 963 (9th Cir. 2008) ..........................................................................................3

*Sanjuan v. Am. Bd. of Psychiatry*,
    40 F.3d 247 (7th Cir. 1994) ..........................................................................................10

*Shwarz v. United States*,
    234 F.3d at 428 (9th Cir. 2000) ......................................................................................3

*Stamatakis Indus., Inc. v. King*,
    965 F.2d 469 (7th Cir. 1992) ........................................................................................11

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition § 28:8 (4th ed. 2009) ........................4

FBE&M
Lake Merritt Plaza
1999 Harrison Street
Eighteenth Floor
Oakland CA 94612-3541

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)
(4:09-cv-03329-CW)**

## I.   INTRODUCTION AND ISSUES TO BE DECIDED

Plaintiff Edward C. O'Bannon, Jr. ("Plaintiff" or "O'Bannon") has failed to state a viable antitrust claim against Defendant Collegiate Licensing Company ("CLC"). No matter how long his Complaint is, or how many numbered paragraphs it contains, it must describe what CLC has done to join in and participate in the alleged antitrust conspiracy. It does not. In his Opposition Brief, Plaintiff tries to tie CLC to the alleged conspiracy by arguing that CLC brokers licensing deals "involving" former athletes names, images, and likenesses and suggesting that CLC enforces alleged releases that deprive putative class members of their rights of publicity. But the Complaint contains no allegations to support these arguments. And the one and only licensing transaction that Plaintiff's Brief gives as an example to show CLC's participation in the allegedly illegal conduct actually negates any inference that CLC participated in the alleged conspiracy. Indeed, in that transaction, a licensing arrangement with Electronic Arts for videogames, CLC only licensed trademark rights to EA, and former NCAA athletes separately licensed to EA the use of their names, likenesses, and images and received compensation for such use. The Complaint acknowledges this, as does Plaintiff's Brief. Under these circumstances, no plausible inference that CLC participated in any alleged conspiracy can be justified, particularly when Plaintiff's only example of CLC's allegedly improper conduct undercuts Plaintiff's entire claim.

Plaintiff essentially ignores CLC's argument that Plaintiff has failed to allege a sufficient basis for antitrust injury and antitrust standing, necessary prerequisites for an antitrust action. He cites no legal authority for his position that he has sufficiently alleged antitrust injury, even though, contrary to Ninth Circuit law, he has not alleged that he participates in the relevant market. Rather, Plaintiff merely cites alleged injury-in-fact without explaining how that alleged injury to a non-participant in the relevant market has any proximate connection to harm to competition in the relevant market—the touchstone for determining antitrust injury.

Plaintiff's arguments that his common law claims should survive are similarly unavailing. Regarding his unjust enrichment claim, Plaintiff has not shown that unjust enrichment is an independent claim and he has failed to allege facts to show that he has conferred anything of value on CLC, which would be necessary under the circumstances to state a claim. And Plaintiff

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

- 1 -

1  cannot maintain his claim for an equitable accounting against CLC because, for among other

2  reasons, he has not alleged any relationship with CLC.

3      For these reasons, more fully discussed below, CLC asks the Court to dismiss the

4  Plaintiff's antitrust and state law claims against CLC.

5  **II.    ARGUMENT**

6      **A.    Plaintiff Has Failed to Allege Facts From Which One Could Plausibly Infer**
7              **that CLC Participated in the Alleged Conspiracy.**

8      Plaintiff concedes, as he must, that, to state an antitrust claim against CLC, his Complaint

9  must contain enough "factual content that allows the court to draw the reasonable inference" that

10  CLC participated in the alleged conspiracy. Pl.'s Opp. Br. at 9 (citing *Al-Kidd v. Ashcroft*, No.

11  06-36059, 2009 WL 2836448 (9th Cir. Sept. 4, 2009)).   Still, Plaintiff fails to point to any

12  allegations that would allow the Court to draw a reasonable inference that CLC participated in

13  any alleged conspiracy to fix prices paid to former NCAA athletes or to boycott those former

14  athletes to deprive them of compensation.

15      Realizing that his Complaint is insufficient, Plaintiff seeks to confuse the issue by raising

16  new allegations in its Brief and pointing to vague allegations that do not reasonably suggest that

17  CLC engaged in any illegal conduct.  In his Complaint, O'Bannon claims certain NCAA

18  eligibility forms and Bylaws effectively serve as a price fixing and group boycott conspiracy.

19  Compl. ¶¶ 9-11, 75, 77, 87. But now that CLC has pointed out that it has nothing to do with those

20  forms, O'Bannon, through his Opposition Brief, tries to switch the focus to some supposedly

21  broader conspiracy not discernible in any way from the allegations in the Complaint, arguing that

22  CLC supposedly played some role in two "aspect[s]" of  the allegedly broader conspiracy – (1)

23  the NCAA eligibility forms and (2) "CLC's brokering of licensing deals that provide no royalties

24  to student-athletes." Pl.'s Opp. Br. at 12.  The assertion regarding CLC's alleged brokerage

25  activities is new.  Further, Plaintiff's Brief contains other new legal conclusions that CLC

26  "licenses and directly manages every aspect of illegal arrangements at issue" and that CLC

27

28

FBE&M
Lake Merritt Plaza
1999 Harrison Street
Eighteenth Floor
Oakland CA 94612-3541

- 2 -
**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)
(4:09-cv-03329-CW)**

1  "imposes the horizontal restraints at issue here." Pl.'s Opp. Br. at 1.[1]  These new assertions are

2  unsupported by the Complaint and cannot help Plaintiff avoid dismissal.  Plaintiff may not use his

3  Brief to amend or vary the allegations set forth in the Complaint.  *See Car Carriers, Inc. v. Ford*

4  *Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984); *Barbera v. WMC Mortg. Corp.,* No. C 04-3738,

5  2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006).  And in any event, the Court need not

6  construe vague allegations about CLC's licensing activities, or its purported role in protecting

7  NCAA athletes eligibility, in a way that is internally inconsistent with and contradicted by more

8  specific allegations in the Complaint, nor need it draw the unreasonable and unwarranted

9  inferences proposed by Plaintiff.  *See Hamilton v. Aubrey*, No. 2:07-cv-01413-HDM-RJJ, 2008

10  WL 1774469, at *1 (D. Nev. Apr. 15, 2008) (citing *Shwarz v. United States*, 234 F.3d at 428, 435

11  (9th Cir. 2000)); *see generally Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004)

12  (court need not accept unwarranted deductions of fact or unreasonable inferences).

13       O'Bannon tries to distinguish the cases cited by CLC that hold vague allegations will not

14  suffice on a motion to dismiss, although Plaintiff cites no cases to support his position.  The

15  primary point of distinction that Plaintiff raises is that the cases cited by CLC are not antitrust

16  cases. Pl.'s Opp. Br. at 14-15.  But that distinction has no relevance here.  The rule that vague

17  allegations cannot save a Complaint from dismissal extends beyond the civil rights and

18  constitutional standing context.  It is a well-accepted standard that Plaintiff cannot seriously

19  dispute.  *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Rick-Mik Enters., Inc. v.*

20  *Equilon Enters. LLC,* 532 F.3d 963, 975 (9th Cir. 2008) (holding that "price-fixing claim fails for

21  vagueness").

22       Thus, notwithstanding Plaintiff's change in theory and new allegations, he has not shown

23

24  [1] Plaintiff also suggests in his Brief that allegations, based on comments from CLC's website, that
     CLC represents the consolidated retail power of various NCAA institutions in some vague,
25  unexplained way somehow allows for the inference of illegal conspiracy. Pl.'s Opp. Br. at 1.
     This innocuous comment merely refers to the benefits available to licensees from being able to
26  license multiple high-quality collegiate brands in a one-stop shopping environment through CLC
     and how those benefits can help licensees sales at retail.  But regardless, the comment has no
27  relevance here in a case in which Plaintiff does not compete at the retail level or, for that matter,
     compete at all in any relevant market.
28

- 3 -

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

1    that CLC participated in any way in any alleged scheme to fix the prices paid to former student

2    athletes or to boycott them.

3              1.    **Plaintiff's Allegations and Arguments About CLC's Purported**
                     **Licensing Activities And Role in Supposedly Protecting Athletes'**
4                    **Amateur Status Do Not Give Rise To Any Plausible Inference That**
                     **CLC Participated in Any Alleged Conspiracy.**
5

6              Plaintiff does not explain what he means by the term "brokered" nor does that term appear

7    anywhere in his Complaint.  Plaintiff admits that CLC represents the NCAA and various NCAA

8    institutions in connection with the licensing of trademark rights (*e.g.* school names and icons).

9    Pl.'s Opp. Br. 5; Comp. ¶ 97.  Trademark rights are separate and distinct rights from the rights of

10   publicity, which cover the former athletes' names, likenesses, and images.  *See, e.g.,* 5

11   MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 28:8 (4th ed. 2009) ("While the key to

12   the right of publicity is the commercial value of a human identity, the key to … trademarks is the

13   use of a word or symbol in such a way that it identifies and distinguishes a *commercial source*.")

14   (emphasis in original).  Plaintiff tries to suggest in his Brief, but cannot and does not point to a

15   single allegation in his Complaint, that CLC handles the licensing of intellectual property other

16   than trademark rights.  Plaintiff's Brief refers to the licensing arrangement with EA for

17   videogames as a "CLC brokered deal[] involving the use[] of student-athletes' names, likenesses

18   and images."  Pl.'s Opp. Br. at 3.  To the extent Plaintiff's comment means to suggest that CLC

19   licensed any past or present athletes' name, likeness, or image, it is directly contradicted by

20   Plaintiff's Complaint, which states that the rights licensed to EA by CLC's clients, the NCAA and

21   NCAA member schools, were not rights of publicity, but rather trademark rights needed "to

22   reproduce the stadiums, uniforms, and mascots of [NCAA member] schools."  Compl. ¶ 139.

23   Moreover, unlike Plaintiff's Brief, the Complaint does not allege or suggest that CLC brokered

24   any deal for the licensing of any other rights other than trademark rights, including any former

25   NCAA athletes' right of publicity, and Plaintiff cannot allege this because it simply is not true.

26             Moreover, Plaintiff's only example of an allegedly improper deal supposedly brokered by

27   CLC – the EA videogame deal – shows that CLC is not involved in any conspiracy as that deal,

28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

- 4 -

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**
**12(B)(6)**
**(4:09-cv-03329-CW)**

1   as alleged in the Complaint, demonstrates that former NCAA athletes can and do license their

2   names, likenesses, and images to licensees, like EA, that have separately obtained licenses from

3   CLC to the NCAA's or NCAA members' trademarks.  The Complaint admits this.  Compl. ¶ 143.

4   In fact, Plaintiff admits that in most of the licensing transactions in which CLC is identified in the

5   Complaint as having had some involvement, former NCAA athletes independently licensed the

6   use of their names, likenesses, or images to the licensees.  Compl. ¶¶ 133, 143.  According to

7   Plaintiff, if CLC were not engaged in the allegedly unlawful conduct, "third party [licensees]

8   would need to purchase rights from former student-athletes prior to offering products using their

9   names, likenesses or images."  Pl.'s Opp. Br. at 12.  That is exactly what has happened here, at

10  least with regard to the transactions in which CLC has participated, and why EA and McFarlane

11  Toys obtained licenses from putative class members.  Under the very logic that O'Bannon asks

12  this Court to adopt, these allegations actually demonstrate that CLC did not participate in the

13  alleged antitrust conspiracy.  And these allegations completely refute the new, unsupported

14  assertions found only in Plaintiff's Brief that licensees negotiate exclusively with CLC and that

15  CLC has exercised control over former NCAA athletes' rights.  *See* Pl.'s Opp. Br. at 6.

16      Plaintiff tries to avoid the significance of putative class members' licenses to the third-

17  party licensees by arguing that "CLC only recently allowed such deals, and beforehand

18  successfully prevented them."  Pl.'s Opp. Br. at 15.  But the Complaint is not limited in temporal

19  scope; rather it alleges an ongoing conspiracy affecting competition in the present.  Compl. ¶¶ 43,

20  46, 188, 193, 195 (alleging "ongoing concerted action").  But more importantly, Plaintiff cannot

21  explain how its best and only example of a "CLC-brokered deal" falls into the category of

22  transactions that Plaintiff concedes shows that CLC "allows" putative class members to license

23  and receive compensation for their rights.

24      Plaintiff's Brief also tries to implicate CLC in the alleged conspiracy by lumping it in with

25  many different "for-profit entities" and pointing to many different types of licensing transactions,

26  including the innocuous deals in which CLC participated.  Pl.'s Opp. Br. at 4-5.  But Plaintiff

27  cannot show that it has sufficiently pled that CLC participated in the alleged conspiracy by

28  pointing to allegations aimed generally at a group of defendants and co-conspirators.  *See, e.g., In*

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

1  re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1107, 1109 (N.D. Cal. 2008) (Illston,

2  J.); In re Travel Agent Comm'n Antitrust Litig., No. 07-4464, 2009 WL 3151315, at * 7 (6th Cir.

3  Oct. 2, 2009) (complaint allegations "refer[ing] to 'defendants' or 'defendants' executives' . . .

4  represent precisely the naked conspiratorial allegations rejected by the Supreme Court in

5  Twombly") (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565 n.10 (2007)); In re Elevator

6  Antitrust Litig., 502 F.3d 47, 50-51 (2d Cir. 2007) (general allegations "without any specification

7  of any particular activities by any particular defendant ... do [] not supply facts adequate to show

8  illegality") (internal citation omitted).

9          Recognizing that the sparse and innocuous allegations about CLC's licensing activities do

10  not sufficiently tie CLC to the alleged conspiracy, Plaintiff tries to tie CLC to the allegedly

11  unlawful NCAA eligibility forms, which the Complaint alleges comprise the purported antitrust

12  conspiracy. See, e.g., Compl. ¶¶ 9-11. Plaintiff does this by pointing to a vague sound bite in an

13  article quoted in the Complaint, which indicates that one of CLC's tasks is "'protecting the

14  amateur standing of [NCAA] members' athletes.'" Pl.'s Opp. Br. at 12 (quoting Compl. ¶ 139).[2]

15  The passage in the Complaint, however, which quotes some but not all of the relevant article,

16  does not indicate one way or another what activities CLC supposedly undertakes to protect the

17  amateur status of current NCAA athletes. Compl. ¶ 139. Put in proper context, this sound bite

18  merely addresses unidentified efforts taken during licensing transactions to ensure that licensing

19  activities do not result in an NCAA athlete becoming ineligible under the NCAA's amateur rules,

20  which necessarily only affects current athletes playing collegiate sports and not former NCAA

21  athletes. These vague and unspecified efforts – alleged either in the Complaint or for the first

22  time in Plaintiff's Brief -- have no reasonable relationship to the alleged restraints supposedly

23

_____

24  [2] Plaintiff's Brief also claims that CLC is a "key player" in managing the NCAA's "amateurism
   regulations." Pl.'s Opp. Br. at 3, 12. But the Complaint does not allege this. Rather, the
25  Complaint quotes an article that refers to CLC as the "key player" in managing an unidentified
   "distinction," which the reader cannot identify given artful editing by Plaintiff. See Compl. ¶
26  139. Nowhere in the Complaint does it say or suggest that CLC is a key player in managing the
   NCAA's amateur regulations. Pl.'s Opp. Br. at 3. In any event, Plaintiff has conceded in its
27  Opposition Brief to NCAA's Motion to Dismiss that "this case does not involve questions of the
   protection of amateur sports." Pl.'s Opp. Br. to NCAA Mot. to Dismiss at 3.
28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

1   imposed on former NCAA athletes. Compl. ¶ 184. Moreover, neither this passage in the

2   Complaint nor any other allegation in the Complaint suggests that whatever alleged role CLC

3   may play in protecting athletes' eligibility has anything to do with implementing or enforcing the

4   NCAA forms in question.[3] In an effort to cure this apparent deficiency, Plaintiff now claims in

5   his Brief that protecting amateur status somehow "involves implementing and enforcing releases"

6   against former NCAA athletes. Pl.'s Opp. Br. at 12. And based on this, Plaintiff asks the Court

7   to draw the unwarranted and unsupported inference that CLC participated in the alleged

8   conspiracy. Not only can Plaintiff not amend his Complaint in this way, but this position that

9   O'Bannon now takes in his Brief conflicts with the position that he previously has taken in the

10  Complaint – i.e., that the NCAA amateur rules have no reasonable connection to the alleged

11  restrictions imposed on Plaintiff. Compl. ¶ 184. Accordingly, it would be unreasonable to draw

12  an inference that, some vague, undefined role in protecting the amateur status of present athletes,

13  somehow means that CLC has an alleged role in implementing and enforcing alleged releases that

14  purportedly fix prices paid to former NCAA athletes and allegedly prevent these former athletes

15  from receiving compensation. *See, e.g., Five Smiths, Inc. v. Nat'l Football League Players Ass'n,*

16  788 F. Supp. 1042, 1048-49 (D. Minn. 1992) (refusing to draw the inference of a price-fixing

17  conspiracy from vague allegations). Moreover, given the admission by Plaintiff that CLC

18  participates in licensing arrangements in which former NCAA athletes independently license the

19  use of their names, likenesses, and images and receive compensation for such use, the vague

20  allegation that CLC has some role in protecting the amateur status of current NCAA athletes does

21  not reasonably support an inference that CLC participated in the alleged conspiracy. *See Int'l*

22  _____
[3] Plaintiff concedes that these forms do not contain any release requiring former NCAA players to
23  relinquish their rights of publicity to the NCAA or members schools. Compl. ¶ 12. The language
    in the NCAA forms, which the Complaint quotes, does not preclude former NCAA athletes from
24  licensing their rights and receiving compensation for the use of their rights. Compl. ¶ 74. In
    fact, the Complaint acknowledges that several class members have in fact licensed and received
25  compensation for licensing those rights. Compl. ¶¶ 133, 143. And the NCAA, in its Points and
    Authorities in Support of its Motion to Dismiss, shows that the NCAA forms in question do not
26  prevent O'Bannon or any other former NCAA athlete from licensing or obtaining compensation
    for their rights. NCAA Mot. to Dismiss at 12-14. It would therefore be unreasonable to infer that
27  any party, including CLC, used these forms as a means to conspire to fix prices paid to former
    athletes and boycott the former athletes to deprive them of compensation.
28

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**
**12(B)(6)**
**(4:09-cv-03329-CW)**

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

1    *Norcent Tech. v. Koninklijke Philips Elecs. N.V.,* No. CV 07-00043 MMM, 2007 WL 4976364, at

2    * 8-10 (C.D. Cal. Oct. 27, 2009).

3              2.      **Reading the Complaint as a Whole and Putting Plaintiff's Vague**
4                      **Allegations in Proper Context, It Becomes Clear that Plaintiff Has**
                       **Failed to Allege that CLC Participated in the Alleged Conspiracy.**
5

6              Reading the Complaint as a whole, there are no allegations moving the conspiracy

7    pendulum from speculative to plausible.  Plaintiff asserts that the Complaint "contains fact-based

8    allegations to show CLC's involvement in a rampant conspiracy," (Pl.'s Opp. Br. at 15), but

9    points to none.  Similar to the Complaint, Plaintiff's Opposition Brief contains either innocuous

10   facts (*e.g.*, brokering licenses) or legal conclusions (*e.g.*, CLC "manages every aspect of illegal

11   arrangements at issue," and "imposes the horizontal restraints at issue" (Pl.'s Opp. Br. at 1)), that
12
     do not provide the requisite answers to the applicable questions, "who, did what, to whom (or
13
     with whom), where and when."  *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1048 (9th Cir.
14
15   2008).  "The court is not required to accept legal conclusions cast in the form of factual

16   allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v.*

17   *Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).  The Complaint's allegations about

18   CLC's specific licensing transactions negate any inference that CLC joined any alleged
19
     conspiracy.  *See supra* at 5.
20
21             Contrary to Plaintiff's suggestion, his vague and conclusory allegations concerning

22   innocuous business dealings are far a field from the allegations accepted by this Court in *SRAM.*

23   *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F. Supp. 2d 896, 904 (N.D. Cal.

24   2008) (Wilken, J.).  The complaint there contained specific allegations about defendants'

25   communications on the subject-matter of the conspiracy, included as attachments, emails

26   evidencing defendants' exchange of pricing information, and alleged criminal pleas by the same
27
     defendants in a related industry, which this Court found "plausibly suggest[ed]" that each
28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510 444 3131

- 8 -

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**
**12(B)(6)**
**(4:09-cv-03329-CW)**

defendant participated in a conspiracy. *Id.* at 901-04. There is simply nothing similar here. It is axiomatic that "in order . . . to become liable in a treble damage case [defendant] must have knowingly, intentionally and actively participated in an individual capacity in the scheme." *Kline v. Coldwell Banker*, 508 F.2d 226, 232 (9th Cir. 1974). Plaintiff does not aver any facts supporting the inference that CLC knowingly, intentionally, and actively participated in the alleged conspiracy. Especially here, where Plaintiff pleads an alleged *per-se* price-fixing claim, something more than bald allegations and innocuous business dealings that apply in many licensing contexts must be pled to sustain a claim. "'[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)). "When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Car Carriers, Inc.,* 745 F.2d at 1106.

In sum, Plaintiff's vague, conclusory, and conflicting allegations do not sufficiently state a plausible conspiracy claim against CLC and should be dismissed.

**B.      Plaintiff Has Failed to Allege Antitrust Injury or Harm to Competition.**

Contrary to Ninth Circuit law, Plaintiff argues that he need not plead facts to show he is a market participant to properly plead antitrust injury or antitrust standing, but he cites no cases to support this argument. Pl.'s Opp. Br. at 10. CLC, in contrast, has cited applicable Ninth Circuit law, which holds, "[t]he requirement that the alleged injury be related to anticompetitive behavior requires, as a corollary, that the injured party *be a participant in the same market* as the alleged malefactors." *Eagle v. Star-Kist Foods, Inc.,* 812 F.2d 538, 540 (9th Cir. 1987) (emphasis added)

- 9 -

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

(quoting *Bhan v. NME Hospitals, Inc.,* 772 F.2d 1467, 1470 (9th Cir. 1985)); *see also* CLC

Opening Br. at 13-15. In fact, in response to CLC's Motion, Plaintiff makes no effort to cite any

cases[4] to support his position that he has sufficiently pled antitrust injury. Pl.'s Opp. Br. 10-11.

Nor has Plaintiff attempted to explain how his alleged injury has a proximate connection to harm

to competition generally, *id.*, which is required for antitrust injury. *Les Shockley Racing Inc. v.*

*Nat'l Hot Rod Ass'n,* 884 F.2d 504, 508 (9th Cir. 1989); *McGlinchy v. Shell Chem. Co.*, 845 F.2d

802, 811 (9th Cir. 1988).

O'Bannon merely claims he has suffered injury from the uncompensated use of his name,

likeness, and image. But a failure to receive compensation from an alleged cartel, particularly

where a plaintiff has made no effort to compete in the relevant market for the sale of such rights,

does not qualify as antitrust injury. *See, e.g., Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d

408, 439-40 (2nd Cir. 2005) (seeking to share in cartel profits not recognized as antitrust injury);

*Sanjuan v. Am. Bd. of Psychiatry,* 40 F.3d 247, 251 (7th Cir. 1994) (decrease in earnings not

antitrust injury).

In response to the NCAA's motion to dismiss, Plaintiff suggests that he has suffered

antitrust injury and need not allege he is, or ever was, a market participant because he allegedly

has been foreclosed from the market by Defendants' alleged activities in licensing his name,

likeness, or image, which supposedly satisfied any alleged market demand for such licenses.

Plaintiff's Opposition to NCAA's Motion to Dismiss at 9-10, 12. Several problems exist with

---

[4] Plaintiff mischaracterizes the relevance of this Court's Opinion in *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1091 (N.D. Cal 2007), which CLC cites. Plaintiff claims *Parrish* has no relevance here because the court did not specifically address antitrust injury. Pl.'s Opp. Br. at 10-11. But *Parrish* has a great deal of relevance here. The Court in *Parrish* ruled, under almost the same fact pattern, that plaintiffs, former professional football players, did not allege that they ever offered to license their names, likenesses, and images and could not claim that they competed against a players' union, which sold licenses to former players' names, likenesses, and images. And this ruling was one basis for finding that plaintiffs suffered no injury in fact. *Parrish*, 534 F. Supp. 2d at 1091.

- 10 -

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

this theory.  First, it finds no support in any allegations set forth in the Complaint and should be

disregarded.  *See Car Carriers, Inc.*, 745 F.2d at 1107.  Second, it describes an alleged situation

in which licensees have more, not fewer, options than simply turning to O'Bannon for a license to

his name, likeness, or image and, thus, describes an increase in competition, not a reduction in

competition.  Harm resulting from an increase in competition, even if the competition is allegedly

improper or unfair, cannot support a claim for antitrust injury.  *See Stamatakis Indus., Inc. v.

King*, 965 F.2d 469, 471 (7th Cir. 1992).  Third, for yet another reason, this is not the type of

injury the antitrust laws were designed to remedy.  It is not the purpose of the antitrust laws to

resolve disputes between potential rivals about what party may properly license intellectual

property rights, especially if, at the end of the day, as Plaintiff claims here, only one party to the

dispute would be left to license the particular rights in question.  *Brunswick Corp. v. Riegel

Textile Corp.*, 752 F.2d 261, 267 (7th Cir. 1984).  Indeed, under these circumstances, the antitrust

laws are indifferent as to which party exploits the rights, even if one party arguably secured the

disputed rights through misappropriation.  *Id.*  Fourth, the Complaint contradicts O'Bannon's new

theory about market foreclosure.  The Complaint admits that putative class members can and do

license their names, images, and likenesses for use in collegiate-oriented products.  Compl. ¶¶

133-134, 143.  O'Bannon cannot reasonably explain, nor tries to explain, how class members

Tom Brady, Peyton Manning, Adrian Peterson, JaMarcus Russell, Ray Lewis, Hines Ward,

Michael Crabtree, Brian Johnson, Brian Orakpo, Mark Sanchez, and Kevin Love have all

managed to sell their rights notwithstanding the barriers supposedly created by the alleged

conspiracy and Defendants' alleged licensing activities, but Plaintiff for some inexplicable reason

cannot.  Compl. ¶¶ 133, 143.  Because these allegations about putative class members' licensing

activities contradict Plaintiff's conclusory allegations and arguments that he has allegedly been

foreclosed from any relevant market, the Court may disregard these allegations on these

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541

additional grounds. *See Hamilton v. Aubrey*, No. 2:07-cv-01413-HDM-RJJ, 2008 WL 1774469, at * 1 (D. Nev. Apr. 15, 2008).

Not only has Plaintiff failed to adequately allege antitrust injury, but his bald allegations regarding market exclusion and lost compensation do not suffice to show the requisite harm to competition necessary to state a claim under Section 1 of the Sherman Act. Indeed, as the Ninth Circuit has commented previously:

> Plaintiffs insist that their allegation of market exclusion and resulting loss of income are sufficient to plead an outline of facts showing injury to competition that would enable a factfinder to conclude that defendants violated Sherman Act § 1. We cannot agree. Although proof of plaintiffs' allegations would establish harm to their business interests, such proof would not, standing alone, show injury to competition in the market as a whole.

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,* 884 F.2d 504, 508 (9th Cir. 1989).

For these reasons, Plaintiff has failed to allege sufficient facts to establish antitrust injury, antitrust standing, or the requisite harm to competition. This provides another basis for dismissing Plaintiff's antitrust claims. Accordingly, the Court should dismiss Plaintiff's antitrust claims in their entirety.

### C.   Plaintiff's Common Law Claims Must Be Dismissed.

As with his antitrust claim, Plaintiff cannot avoid dismissal of his unjust enrichment claim. Plaintiff makes a futile attempt to distinguish Judge Patel's decision in *Faigman v. Cingular Wireless, LLC*, No. C06-04622, 2007 WL 708554 (N.D. Cal. Mar. 2, 2007), a case upon which CLC relies, by arguing that unjust enrichment represents a viable stand-alone claim here because the elements for unjust enrichment differ from the elements of a Section 1 claim. Pl.'s Opp. Br. at 17. But *Faigman* found an unjust enrichment claim to be derivative and not an independent cause of action where the claim arose out of the same illegal conduct as the companion claims. *Faigman*, 2007 WL 708554, at *1. As in *Faigman*, because Plaintiff's

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
**(4:09-cv-03329-CW)**

1    substantive, companion claims fail, *ipso facto*, the derivate claim of unjust enrichment fails as

2    well. *Id.* at * 6; Compl. ¶ 205.

3            To the extent unjust enrichment may be considered an independent cause of action, it is

4    only available as "a basis for obtaining restitution based on quasi-contract or imposition of a

5    constructive trust." *McKinniss v. Sunny Delight Beverages Co.,* No. 07-02034, 2007 WL

6    4766525, at * 6 (C.D. Cal. Sept. 4, 2007).  Plaintiff concedes in his Opposition that he "has not

7
     pled a 'constructive trust' cause of action." Pl.'s Opp. Br. at 17 n.6.  Plaintiff is left therefore
8
9    with a restitution-based, quasi-contractual theory.  The Complaint lacks any allegation that

10   Plaintiff conferred any specific benefit on CLC, in sharp contrast to the cases Plaintiff cites in his

11   Opposition Brief, in which the plaintiffs conferred specific benefits or payments on defendants.

12   Pl.'s Opp. Br. at 16-17.  As discussed above, there is no allegation in the Complaint that CLC
13
     granted a license for the use of Plaintiff's name, likeness, or image without just compensation to
14
15   the Plaintiff, and Plaintiff simply has no response to this argument in his Opposition Brief.

16   Plaintiff makes the bald statement in his Brief that "CLC unlawfully obtained licensing revenue

17   that rightfully belong to plaintiff and the putative class members," Pl.'s Opp. Br. at 17, but there

18   is nothing in the cited paragraphs or the Complaint as a whole which suggests that Plaintiff or

19   purported class members conferred any benefit on CLC – entitling Plaintiff to restitution. *See*
20
     *Parrish v. Nat'l Football League Players Ass'n,* 534 F. Supp. 2d 1081, 1100 (N.D. Cal. 2007).
21
22   Accordingly, the Court should dismiss Plaintiff's unjust enrichment claim.

23           In addition, Plaintiff concedes in his Opposition Brief that an accounting claim is

24   equitable in nature and only appropriate when accounts are unusually complicated.  Pl.'s Opp. Br.

25   at 18.  Plaintiff argues that "determining the amount of defendants' ill-gotten gains in this case

26   would be complicated and not subject to an easily identifiable, fixed sum," yet cites no allegation

27   in his Complaint supporting this contention. *Id.*  Plaintiff has failed to plead this in his Complaint

28

FBE&M
Lake Merritt Plaza
1999 Harrison Street
Eighteenth Floor
Oakland CA 94612-3541

- 13 -

**REPLY BRIEF IN SUPPORT OF CLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**
**(4:09-cv-03329-CW)**

and cannot now do so in his Opposition Brief. *See Barbera v. WMC Mortg. Corp.*, No. C04-3738, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006). Further, Plaintiff has failed to cite any case wherein a claim for accounting was upheld where there was no relationship between the parties. *See Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 6-7 (1950). Plaintiff does not allege any relationship between him and CLC to warrant an accounting. Plaintiff also concedes that equitable accounting is not available when there is an adequate remedy at law, but states he is pursuing the claim in the alternative. But Plaintiff cannot plead equitable accounting in the alternative because it is derivative in nature. *County of Santa Clara v. Astra USA, Inc.*, C 05-03740, 2006 WL 2193343, at *6 (N.D. Cal. July 28, 2006); Compl. ¶ 208. Because Plaintiff's antitrust claims must be dismissed for the reasons set forth above, Plaintiff's claim for an equitable accounting cannot stand alone and should be dismissed as well. *Id.*

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff's federal antitrust claims and state law claims for unjust enrichment and an equitable accounting should be dismissed in their entirety.

Dated: November 3, 2009                       _____/s/Gennaro A. Filice III_____

Gennaro A. Filice III (SBN: 061112)
**FILICE BROWN EASSA & McLeod LLP**
Lake Merritt Plaza
1999 Harrison Street, 18th Floor
Oakland, CA 94612-0850
Telephone : 510-444-3 13 1
Facsimile: 510-839-7940
Email: gfilice@filicebrown.com

Constance K. Robinson (pro hac vice)
Peter M. Boyle (pro hac vice)
**KILPATRICK STOCKTON LLP**
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 508-5800
Facsimile: (202) 508-5858

Attorneys for Defendant Collegiate Licensing Company

- 14 -

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541