MICHAEL P. LEHMANN (SBN 77152)
mlehmann@hausfeldllp.com
BRUCE J. WECKER (SBN 78530)
bwecker@hausfeldllp.com
ARTHUR N. BAILEY, JR. (SBN 248460)
abailey@hausfeldllp.com
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104
Telephone:     (415) 633-1908
Facsimile:     (415) 358-4980

MICHAEL D. HAUSFELD (*pro hac vice*)
mhausfeld@hausfeldllp.com
HILARY K. SCHERRER (SBN 209451)
hscherrer@hausfeldllp.com
SATHYA S. GOSSELIN (SBN 269171)
sgosselin@hausfeldllp.com
SWATHI BOJEDLA (*pro hac vice*)
sbojedla@hausfeldllp.com
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, D.C.  20006
Telephone:     (202) 540-7200
Facsimile:     (202) 540-7201

*Antitrust Plaintiffs' Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD C. O'BANNON, JR. on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (NCAA); ELECTRONIC ARTS, INC.; and COLLEGIATE LICENSING COMPANY,<br><br>Defendants. | Case No. 09-cv-3329-CW<br><br>**ANTITRUST PLAINTIFFS' EVIDENTIARY BENCH MEMORANDUM**<br><br>Judge:     Hon. Claudia Wilken<br>Crtrm:     2, 4th Floor |

1  The Antitrust Plaintiffs ("APs") hereby present this evidentiary bench memorandum
2 concerning the authenticity and/or admissibility of certain trial exhibits, as well as other objections
3 raised by the National Collegiate Athletic Association ("NCAA").

4  **I.  FACTUAL BACKGROUND**

5  On May 14, 2014, the APs and the NCAA entered into a limited stipulation regarding the
6 admissibility and authenticity of certain documents, which the Court approved. *Keller* v.
7 *Electronic Arts, Inc*., Case No. 4:09-cv-1967-CW, Dkt. Nos. 1068, 1083 ("*Keller*"). They agreed
8 that: (a) documents authored and produced by a party are authentic; (b) statements contained in e-
9 mails made by employees of the NCAA while they were employed by it and within the scope of
10 their employment are not subject to hearsay or authenticity objections (although the NCAA
11 reserved the right to raise hearsay within hearsay objections) and (c) statements contained in e-
12 mails made by individual APs are not subject to hearsay or authenticity objections (although the
13 APs reserved the right to raise hearsay within hearsay objections). That same day, the parties
14 exchanged objections to proposed trial exhibits.

15  At the pretrial conference and meet and confer sessions since then and over the weekend,
16 counsel for the NCAA indicated that it would object to a number of proposed trial exhibits, on the
17 grounds that every document requires a sponsoring witness in order to be admissible. Under that
18 theory, for example, if AP's expert Dr. Roger Noll ("Noll") discusses an authentic, admissible
19 document—even an unobjected-to trial exhibit produced by the NCAA—the NCAA would have
20 objected. There was a subsequent meet and confer at 10 PM this evening, and it was suggested
21 that the parties have regularized meet and confers to work through this and other document issues.
22 However, the parties have yet to reach resolution on these issues, and seek the Court's guidance

23  In addition, in e-mails sent on June 8, 2014, the NCAA objected to certain demonstratives
24 and summary exhibits ("demonstratives") proposed to be used with Noll and Dr. Daniel Rascher
25 ("Rascher"). Although the APs are continuing to meet and confer on these, in this submission the
26 APs will respond to those contentions, incorporating a response e-mailed to the NCAA's counsel
27 on June 8.

28

## II. NECESSITY FOR SPONSORING WITNESS

The NCAA gave its written objections to the APs' proposed trial exhibits on May 14, 2014. *Keller* Dkt. No. 1070-5. On June 7, in an attempt to come to resolution on certain documents, the APs sent to NCAA's counsel several lists of documents that should be admitted. The first was a subset of APs' proposed trial exhibits to which the NCAA has made no objection and that APs are likely to use at trial.[1] *See* Exhibit A, attached hereto. This list contained 74 exhibits. APs also compiled lists of all of APs' proposed trial exhibits to which the NCAA made only relevance objections and all of the NCAA-produced documents on APs' exhibit list to which the NCAA made only an authenticity objection. These lists are attached hereto as Exhibits B and C, respectively. Finally, Exhibit D represents a subset of additional NCAA documents to which there should be no objection.

APs' position is that the stipulation regarding authenticity and admissibility discussed above ought to obviate the requirement for a sponsoring witness, at least as to NCAA documents. In large and complex cases, federal courts have admitted documents without requiring a sponsoring witness. *See, e.g., In re Vitamin C Antitrust Litig.*, Nos. 06-md-1738(BMC)(JO), 05-cv-0453, 2013 WL 504257 at *5-6 & n.6 (E.D.N.Y. Feb. 8, 2013) (court admitted record of a Chinese pharmaceutical symposium meeting even in the absence of a sponsoring witness); C. Michael Buxton & Michael Glover, "Managing a Big Case Down To Size", 15 No. 4 *Litigation* 22 (1989) (describing major case where the ETSI Pipeline Company sued several leading railroads for price-fixing, where documents were introduced without a sponsoring witness).

As noted above, in meet and confer sessions held over the weekend and continuing into tonight, APs understand the NCAA to be reconsidering their position on the necessity of sponsoring witness testimony, but the parties have not yet resolved the issue. While the parties will continue to work cooperatively towards streamlining admissibility issues, the Court's

---

[1] Out of APs' proposed exhibits, the NCAA has no objection to 143 exhibits. For the purposes of reaching an agreement, APs focused on a subset of these documents that are likely to be admitted into evidence, but take the position that all of these documents are admissible.

guidance is needed in determining the best way to address the admission of these documents. It is the preference of the APs that rulings are made on the admissibility of at least unobjected-to documents in the APs' case-in-chief, rather than provisionally admitting documents subject to final determination at the end of the case.

This issue came up at the May 28 pretrial conference, where the APs' counsel noted that having a sponsoring witness testify is not required under the federal rules and furthermore is impractical when those witnesses were not being made available in APs' case-in-chief. Tr. of May 28, 2014 Pretrial Conf. at 34-38 ("5/28 Tr."). This would be especially difficult given that two authors of several key documents—Wallace Renfro and David Berst—will not appear live at trial. *O'Bannon* v. NCAA, Case No. 4:09-cv-3329-CW, Dkt. No. 174 ("*O'Bannon*").  (In addition, former NCAA President Myles Brand is deceased.) The Court expressed the view that a sponsoring witness was only really needed for documents in dispute, such as documents claimed to be inauthentic. 5/28 Tr. at 34. The Court said, "I would assume there's some sort of universe of documents here that everybody knows are authentic and are relevant and are going to come in. And it seems to me you can just agree on those and put them all in….if it's documents you know that they can get in and you know that are not—are not inauthentic, then I rather have a big stack of them at the beginning." *Id*. at 36. NCAA's counsel told the Court that the NCAA wanted to raise objections, and the Court said that if there were some documents at issue, they could be admitted provisionally, subject to a later motion to strike if no foundation was laid, but noting "that I can't quite imagine what it would be." *Id*. at 38.

The Court noted that some foundation might be appropriate for *third-party* documents in some instances, but clarified that those instances would be rare. It warned that it did not intend to have people from conferences to come in and testify about authenticity. *Id*. at 39-40.  Likewise, it stated that "I don't want to have a witness come in and say, yes, this is produced in the ordinary course of business, et cetera, unless there is some actual dispute that it was a business record, which seems sort of unlikely." *Id*. at 41. As to hearsay issues, the Court made it clear "that's a legal question, not a question of admissibility or sponsorship or anything else…." *Id*. at 41.

1    The APs thought they could secure such an agreement with the NCAA and shared with it
2 the documents they felt were ripe for stipulation on June 7 (i.e. documents with no objections,
3 only relevance objections, or only authenticity objections.) The parties have yet to reach a
4 resolution. The Court's guidance is therefore necessary.

### III.   AUTHENTICITY OF DOCUMENTS PRODUCED IN DISCOVERY.

#### A. Defendant-Produced Exhibits

7    As reflected in Exhibit C, the NCAA is continuing to raise objections as to the authenticity
8 of some of its own produced e-mails, as well as to certain of its broadcasting agreements and
9 standardized college athlete eligibility forms. These objections should be rejected, either in light of
10 the parties' stipulation described above or in light of the case law.

11    APs take the position that all documents produced in response to a discovery request or
12 subpoena in this litigation are self-authenticating. With respect to the NCAA (as well as EA and
13 CLC) in the Ninth Circuit, documents produced by a party in discovery and offered into evidence
14 by a party-opponent are considered authentic when they bear evidence of authenticity and the
15 producing party does not dispute their production.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d
16 764, 777 n.20 (9th Cir. 2002); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881,
17 889 n.12 (9th Cir. 1996); *Salkin v. United Servs. Auto. Ass'n*, 835 F. Supp. 2d 825, 828 (C.D. Cal.
18 2011) *aff'd sub nom. Salkin v. USAA Life Ins. Co.*, 544 F. App'x 713 (9th Cir. 2013); *Barefield v.
19 Bd. of Trustees of CA State Univ., Bakersfield*, 500 F. Supp. 2d 1244, 1257 (E.D. Cal. 2007);
20 *Anand v. BP W. Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007); *Metro-
21 Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006)
22 ("*Grokster*") ("[a]uthentication can be accomplished by judicial admission, such as stipulation or
23 production of the items at issue in response to a discovery request."); *In re Homestore.com, Inc.
24 Sec. Litig.*, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004) ("*Homestore*") ("[these documents are
25 deemed authentic because Plaintiff identified the documents as being produced by parties in
26 discovery."); *Violan v. On Lok Senior Health Servs.*, Case No. 12-cv-05739-WHO, 2013 WL
27 6907153, at *15 (N.D. Cal. Dec. 31, 2013) ("[d]ocuments produced by a party in discovery are

deemed authentic when offered by the party-opponent."); *Flagstar Bank v. Loan Experts*, No. C10-03190, 2012 WL 4801431, at *16 (N.D. Cal. Oct. 9, 2012) ("[a]uthentication can be accomplished when a document is produced in response to a discovery request.") (quoting 31 Fed. Prac. & Procedure: Evid. § 7105 at 39).[2]

Each party who produced documents pursuant to discovery requests in this litigation affixed their respective Bates stamps to the documents. Courts in this Circuit have noted that a Bates stamp can provide evidence of authenticity. *See Grow v. Garcia*, No. 03:07-cv-00105-CRH-RAM, 2010 WL 455118, at *1 (D. Nev. Feb. 3, 2010); *Tele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-cv-01673-RMW, 2008 WL 4809441, at *13 n.14 (N.D. Cal. Oct. 28, 2008); *Elston v. Toma*, No. CV01- 1124-BR, 2004 WL 1048132, at *3 (D. Or. Apr. 15, 2004). In addition to Bates stamps, many documents also appear on the letterhead of the party, or bear other marks of the organization, including the e-mail addresses of the party's personnel. The NCAA has not disputed the production of the documents in question, affixed with its Bates stamp, nor has EA or CLC done so for documents to which each affixed its Bates stamps.

### B. Third Party-Produced Exhibits

The NCAA has also objected to the authenticity of documents produced by third parties in this litigation in response to subpoenas. With respect to these documents, the same standard of authenticity by production should apply. *See, e.g.,* PX 2162 (2007 contract between Fox Broadcasting Company and NCAA Division I conferences for the Bowl Championship Series). In *In re Ebay Seller Antitrust Litig.*, No. C07-cv-01882-JF(RS), 2010 WL 760433 (N.D. Cal. Mar. 4, 2010) *aff'd*, 433 F. App'x 504 (9th Cir. 2011), the defendant challenged the authenticity of certain evidence, and the court denied the challenge, finding that the relevant documents were "properly authenticated either by virtue of their production by eBay or by a third party pursuant to discovery requests in this litigation . . ." *Id.* at *6 n.6 (N.D. Cal. Mar. 4, 2010). *See also* Charles Wright &

---

[2] The legal authority in this memo is known to NCAA counsel as it was provided to the NCAA for inclusion in the Joint Pretrial Conference Statement, but the NCAA took the position that it was inappropriate for that statement.

Arthur Miller, 31 FED. PRAC. & PROC. EVID. § 7105 (1st ed.) ("[a]uthentication can also be accomplished through judicial admissions such as . . . production of items in response to subpoena or other discovery request."). Similar to the party-produced documents discussed above, many of these documents include internal identifiers and the fact of production and authenticity is currently uncontested by the producing parties, who were given notice of their use in advance of trial. As such, documents produced through third-party subpoena are authentic.

Similarly, for the reasons states above, documents produced through open records requests are also authenticated by virtue of their production in response to such a request. *See Sullivan v. Dollar Tree Stores, Inc.*, No. C07- 5020-EFS, 2008 WL 1730079 (E.D. Wash. Apr. 10, 2008), *aff'd,* 623 F.3d 770 (9th Cir. 2010) (finding that documents produced pursuant to FOIA request were properly authenticated). Like the other documents, these exhibits include internal identifiers, the producing parties were notified of their potential use at trial, and their authenticity is undisputed thus far.

`IV.    ADMISSIBILITY OF OTHER APS' EXHIBITS

Outside of the documents described in the enclosed lists, the parties have disputes over several other categories of documents to which the NCAA has lodged hearsay objections.

### A. NCAA Reports

The APs will offer into evidence a number of reports, memoranda, agendas, plans, and other meeting records authored by the NCAA or one of its subsidiary committees or cabinets. The NCAA has not objected to the admission of many such documents. For others, however, the NCAA has lodged objections, mostly on hearsay grounds. *See, e.g.,* PX 2045 (Report of the NCAA Division I Task Force on Commercial Activity in Intercollegiate Athletics), 2096 (NCAA Division I Governance Committee meeting report), 2503-2508 (various NCAA Membership Reports). The NCAA has objected to most of these documents solely on hearsay grounds.

Any report or other document authored by the NCAA, any subcommittee or cabinet, or any NCAA executive qualifies as the statement of a party opponent and is admissible against the NCAA as non-hearsay. Under Fed. R. Evid. 801(d)(2)(C) and (D), statements made by a party's

authorized representative, or by a party's agent or employee on a matter within the scope of that relationship and while it existed, are not hearsay.  Here, where reports, agendas, plans, and other meeting records are authored by NCAA-appointed committees, authorized to speak on behalf of the NCAA and/or acting within the scope of their duties as an NCAA-appointed committee, those documents do not contain hearsay.  *See Reid Bros. Logging Co. v. Ketchikan Pulp Co.,* 699 F.2d 1292, 1306 (9th Cir. 1983) (report produced at party's request constitutes party admission)*; Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 177 n.1 (2d Cir. 2003) (same); *Barnes v. D.C.*, 924 F. Supp. 2d 74, 99 (D.D.C. 2013) (same); *Green v. Baca*, 226 F.R.D. 624, 636 (C.D. Cal. 2005) (same). *See also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (presentations and business plans bearing defendant's names, logos, and trademarks were party statements).  Therefore, the NCAA's hearsay objections to these types of documents are unsubstantiated.

### B.  NCAA, EA and CLC E-Mails

Plaintiffs will introduce e-mails between various NCAA, EA and CLC executives and employees at trial.  *See, e.g.,* PX 280 (e-mail chain involving NCAA's David Berst); 283 (e-mail chain involving David Berst and Jim Isch); 2025 (e-mail between NCAA President Myles Brand and his advisor Wallace Renfro regarding use of student-athletes names and likenesses). EA and CLC are still party-opponents in this litigation.  As noted above, the NCAA has agreed to the admissibility of statements contained in its e-mails, but it is not clear that it is willing to admit the complete e-mails themselves; also, no stipulation was reached as to e-mails from CLC or EA. "[E-]mails written by a party are admissions of a party opponent and admissible as non-hearsay under Fed.R.Evid. 801(d)(2)." *Homestore*, 347 F. Supp. 2d at 781; *see also In re Oracle Corp. Sec. Litig.*, No. C01-00988 SI, 2009 WL 1709050, at *21 n.24 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir. 2010) ("[a]n internal e-mail chain written by [Defendant's] employees is admissible as an admission by a party opponent."). Therefore, the APs intend to introduce the entirety of e-mails from NCAA, EA and CLC personnel.

### C. Co-Conspirator Statements

The APs also intend to introduce statements made by officers, executives, and athletic department employees at NCAA member institutions into evidence as statements of co-conspirators in furtherance of the conspiracy under Fed. R. Evid. 801(d)(2)(E).  These include statements by NCAA officials, university presidents, athletic directors, chancellors, and coaches about existing rules and potential changes that concern the ability of class members to receive payment for their names, images, and likenesses ("NIL"), and any statements about preserving the NCAA enterprise.  *See, e.g.,* PX 2060 (Big 12-produced e-mail chain between Big 12 commissioner, University of Texas president, and University of Nebraska chancellor regarding name and likeness issues); PX 2046 (e-mail from University of Iowa Faculty Athletics Representative to David Berst and others regarding compensation to student-athletes).

Rule 801(d)(2)(E) provides that an out of court statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  The exception has been applied to testimony in civil antitrust cases.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458-59 (9th Cir. 1990) ("*Petroleum Prods.*").  The proponent of a co-conspirator statement must show "by a preponderance of the evidence, that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made in the course and in furtherance of the conspiracy."  *Id.* (internal quotation marks omitted) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

In determining whether these prerequisites have been met for admission of the evidence, the Court can consider the statements themselves, along with some other evidence aside from the statements to show that the defendant knowingly participated in the alleged conspiracy. *Petroleum Prods.* 906 F.2d at 459.  Here, the APs intend to introduce independent evidence, through testimony from their experts and from the NCAA's own witnesses, that the NCAA and its member schools have engaged in a conspiracy to fix the price for APs' NIL at zero dollars. Plaintiffs will introduce into evidence the rules and bylaws relating to eligibility that serve as instruments of the conspiracy and a means of enforcement.  This evidence standing alone is

sufficient to show by a preponderance of the evidence that a conspiracy between the NCAA and its member schools exists.

In the exhibits in question, administrators from the NCAA and its member schools and conferences give their input on the conspiracy and potential rule changes regarding the NCAA's restraint on compensation to student-athletes for their names, images, and likenesses. *See, e.g.,* PX 2043 (memorandum from Chancellor of University of Nebraska regarding rule changes on student-athletes name and likenesses). Such statements are made to persuade other members of the conspiracy to make policy decisions consistent with the principles of preventing Plaintiffs and class members from monetizing their names, images, and likenesses. These statements are made in furtherance of the conspiracy, satisfying the second prerequisite of 801(d)(2)(E). *See United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988) ("statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E)… as are those made to 'reassure' members of a conspiracy's continued existence."); *United States v. Eaglin*, 571 F.2d 1069, 1083 (9th Cir. 1977) (statements made to keep members of the conspiracy "abreast of the conspirators' activities" or to induce continued participation are admissible non-hearsay). As such, these co-conspirator statements are non-hearsay statements admissible against the NCAA.

## V. RESPONSES TO OBJECTIONS TO CERTAIN DEMONSTRATIVES

Finally, the NCAA has also sought to exclude certain demonstratives that the APs' counsel intend to use in the direct examination of Noll and Rascher.

With respect to Noll, twelve of his demonstratives are objected to on the ground that they exceed the scope of Noll's expert reports.[3] That is not correct, as APs informed the NCAA by way of e-mail on June 8. Several of the challenged demonstratives define the economic concept of a "cartel" and cite examples of economic literature defining the NCAA as a cartel, including a textbook co-authored by the NCAA's expert, Dr. Daniel Rubinfeld ("Rubinfeld"). Noll discussed the economic literature, including Rubinfeld's textbook, at pages 50-51 of his "Reply Report on

---

[3] As Noll's direct examination is being fine-tuned, some of the demonstratives to which the NCAA has raised an objection may no longer be use.

Liability Issues of Roger G. Noll" (Nov. 15, 2013) ("Noll Reply"). Several other challenged demonstratives relate to the NCAA's changing practices of compensating college athletes who play Division I men's football and basketball, including changes in the number of athletic scholarships permitted by the NCAA. These topics were discussed at pages 93-94 and 124-26 and Exhibits 1A-1C of the "Expert Report on Liability of Roger G. Noll" (Sept. 25, 2013) ("Noll Report"). Other challenges relate to the licensing practices of the National Football League and the National Basketball Association. These subjects are discussed at pages 88-89 and Exhibit 7 of the Noll Report. The challenged demonstrative on recognition by NCAA member personnel of lack of competitive balance is found at pages 137-38 of the Noll Report, including the quotation from Bob Bowlsby, Commissioner of the Big 12 Conference. And the challenges to demonstratives concerning less restrictive licensing alternatives (including practices of other sports associations such as the International Olympic Committee) and group licensing, can be found at pages 128-34 and Exhibit 14 of the Noll Report. *See* Noll Reply, pp. 5, 20, 50. Noll has also discussed the less restrictive alternative of a trust fund payable after a college athlete graduates in a prior deposition. Transcript of Depo. of Roger Noll at 134-35, 187, 195, 231 (Feb. 27, 2013); "Reply Report on Class Certification of Roger G. Noll," pp. 20, 55, 71-72 (April 25, 2013).

As for the challenged Rascher demonstratives, the NCAA objects to the inclusion of competitive equity data, for which the APs have disclosed all backup data. However, the data is directly responsive to the declaration of Rubinfeld served on June 3, 2014. *O'Bannon* Dkt. No. 186-1. Since this is true rebuttal testimony to new testimony allowed by the Court, it should be allowed.

Dated: June 8, 2014                     Respectfully submitted,

By: */s/Michael P. Lehmann*
       Michael P. Lehmann (Cal. Bar No. 77152)
       Arthur N. Bailey, Jr. (Cal. Bar No. 248460)
       HAUSFELD LLP
       44 Montgomery Street, 34th Floor
       San Francisco, CA 94104
       Telephone:  (415) 633-1908
       Facsimile:  (415) 358-4980
       E-mail:    mlehmann@hausfeldllp.com
                  abailey@hausfeldllp.com

       Michael D. Hausfeld (*pro hac vice*)
       Hilary K. Scherrer (Cal. Bar No. 209451)
       Sathya S. Gosselin (Cal. Bar. No. 269171)
       Swathi Bojedla (*pro hac vice*)
       HAUSFELD LLP
       1700 K Street, NW, Suite 650
       Washington, DC 20006
       Telephone:  (202) 540-7200
       Facsimile:  (202) 540-7201
       E-mail:    mhausfeld@hausfeldllp.com
                  hscherrer@hausfeldllp.com
                  sgosselin@hausfeldllp.com
                  sbojedla@hausfeldllp.com

*Plaintiffs' Class Counsel
for the Antitrust Claims*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to the e-mail addresses registered.

By: _/s/Swathi Bojedla_____
Swathi Bojedla