MICHAEL D. HAUSFELD (*pro hac vice*)
mhausfeld@hausfeldllp.com
HILARY K. SCHERRER (SBN 209451)
hscherrer@hausfeldllp.com
SATHYA S. GOSSELIN (SBN 269171)
sgosselin@hausfeldllp.com
SWATHI BOJEDLA (*pro hac vice*)
sbojedla@hausfeldllp.com
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone:    (202) 540-7200
Facsimile:    (202) 540-7201

MICHAEL P. LEHMANN (SBN 77152)
mlehmann@hausfeldllp.com
BRUCE J. WECKER (SBN 78530)
bwecker@hausfeldllp.com
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104
Telephone:    (415) 633-1908
Facsimile:    (415) 358-4980

*Plaintiffs' Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR. on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (NCAA); ELECTRONIC ARTS, INC.; and COLLEGIATE LICENSING COMPANY,<br><br>Defendants. | Case No. 4:09-cv-3329 CW<br><br>**PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Judge:       The Honorable Claudia Wilken<br>Courtroom: 2, 4th Floor<br>Trial:       June 9-27, 2014 |

1

## TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................................... 2

II.     ARGUMENT ................................................................................................................ 3

      a.      Plaintiffs' counsel's historical hourly rates are reasonable and reflective of
           the prevailing market rates in the Northern District of California for
           lawyers of reasonably comparable skill, experience, and reputation.................... 7

      b.      Plaintiffs' counsel's historical hourly rates are all the more reasonable in
           light of the novelty and complexity of the issues, the special skill and
           experience of counsel and quality of their representation, the results
           obtained, and the high risk of non-recovery.......................................................... 10

      c.      Plaintiffs' counsel's total hours are reasonable...................................................... 11

      d.      Plaintiffs' costs and expenses are reasonable and of the type that are
           typically billed to clients. ....................................................................................... 14

      e.      This case is exceptional, and Plaintiffs request consideration of an upward
           adjustment. .............................................................................................................. 15

III.    CONCLUSION............................................................................................................. 16

# TABLE OF AUTHORITES

**Page(s)**

**FEDERAL CASES**

*Aloha Sports, Inc. v. NCAA*,
Case No. 1:04-cv-00204-DAE-KSC (D. Haw.)..........................................................7

*Applied Materials, Inc., v. Multimetrixs, LLC*,
Case No. 3:06-cv-07372-MHP (N.D. Cal.) ..............................................................7

*Auto. Prods. PLC v. Tilton Eng'g, Inc.*,
855 F. Supp. 1101 (C.D. Cal. 1994) ...............................................................14, 15

*Auto. Prods. PLC v. Tilton Eng'g, Inc.*,
CV 90-5500 KN (EX), 1993 WL 660146 (C.D. Cal. Nov. 18, 1993) ..............14, 15

*Azizian v. Federated Dep't Stores, Inc.*,
499 F.3d 950 (9th Cir. 2007)......................................................................................4

*Blackwell v. Foley*,
724 F.Supp.2d 1068 (N.D. Cal. 2010) .....................................................................15

*Cabrales v. Cnty. of L.A.*,
864 F.2d 1454 (9th Cir. 1988), *cert. granted, judgment vacated,* 490 U.S. 1087 (1989)
and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989)..........................................5, 6

*Cabrales v. Cnty. of L.A.*,
935 F.2d 1050 (9th Cir. 1991)....................................................................................6

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)..................................................................................6, 7

*Campbell v. Nat'l Passenger R.R. Corp.*,
718 F. Supp. 2d 1093 (N.D. Cal. 2010) ..........................................................5, 6, 16

*Caplan v. CNA Fin. Corp.*
573 F.Supp.2d 1244 (N.D. Cal. 2008) .......................................................................6

*Chalmers v. City of L.A.*,
796 F.2d 1205 (9th Cir. 1986) *opinion amended on denial of reh'g,* 808 F.2d 1373
(9th Cir. 1987).......................................................................................................5, 15

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ....................................................................................................5

*Costco Wholesale Corp. v. Hoen*,
538 F.3d 1128 (9th Cir. 2008)....................................................................................4

PLAINTIFFS' AMENDED  MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

*Cotton v. City of Eureka, Cal.*,
   889 F. Supp. 2d 1154 (N.D. Cal. 2012) ................................................................ 5

*Cunningham v. Cnty. of L.A.*,
   879 F.2d 481 (9th Cir. 1988) .......................................................................... 5, 6

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ....................................................................... 6, 8

*Hasbrouck v. Texaco, Inc.*,
   631 F. Supp. 258 (E.D. Wash. 1986) *aff'd in part, rev'd in part,* 879 F.2d 632
   (9th Cir. 1989) ............................................................................................... 14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ....................................................................................... 5, 6

*Image Technical Serv., Inc. v. Eastman Kodak Co.*,
   136 F.3d 1354 (9th Cir. 1998) ............................................................................ 4

*In re Air Cargo Shipping Services Antitrust Litigation*,
   No.06-md-1775 (E.D.N.Y.) ................................................................................. 8

*In re Endosurgical Products Direct Purchaser Antitrust Litigation*,
   No. 05-cv-08809 (C.D. Cal.) ............................................................................... 9

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*,
   No. 03-md-1542 (D. Conn.) ................................................................................ 9

*In re Flat Glass Antitrust Litigation II*,
   MDL No. 1942 (W.D. Pa.) ................................................................................... 9

*In re Municipal Derivatives Antitrust Litigation*,
   No. 08-2516 (S.D.N.Y.) ...................................................................................... 8

*In re Processed Egg Products Antitrust Litigation*,
   MDL No. 2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL 1827, 2014 WL 1991269 (N.D. Cal. May 12, 2014) .................................. 14

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 BMC JO, 2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) ........... 8

*Jordan v. Multnomah Cty*,
   815 F.2d 1258 (9th Cir. 1987) ....................................................................... 4, 5

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975)...................................................................................... 5

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009)................................................................................. 6

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996)........................................................................... 5, 6, 15

*NCAA v. Board of Regents*,
  468 U.S. 85 (1984)................................................................................................. 3

*Prison Legal News v. Schwarzenegger*,
  561 F. Supp. 2d 1095 (N.D. Cal. 2008) ................................................................ 12

*Schwarz v. Sec'y of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995)..................................................................................... 6

*Seven Gables Corp. v. Sterling Recreation Org. Co.*,
  686 F. Supp. 1418 (W.D. Wash. 1988)................................................................. 14

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*,
  731 F. Supp. 2d 937 (N.D. Cal. 2010) ............................................................... 4, 8

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
  460 F.3d 1253 (9th Cir. 2006)............................................................................... 15

*Twentieth Century Fox Film Corp. v. Goldwyn*,
  328 F.2d 190 (9th Cir. 1964)................................................................................. 14

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
  676 F.2d 1291 (9th Cir. 1982)................................................................................. 4

*U.S. Football League v. Nat'l Football League*,
  887 F.2d 408 (2d Cir. 1989).................................................................................. 15

**FEDERAL STATUTES**

15 U.S.C. § 26........................................................................................... 1, 3, 4, 14

28 U.S.C. §§ 1821, 1920........................................................................................ 14

**RULES**

Civil Local Rule 7-3................................................................................................. 1

Civil Local Rule 54-1...................................................................................... 1, 3, 4

Civil Local Rule 54-2............................................................................................... 4

Civil Local Rule 54-3......................................................................................... 4, 15

Civil Local Rule 54-4 ............................................................................................................. 4

Civil Local Rule 54-5 ...................................................................................................... 1, 3, 4

Civil Local Rule 54-5(b)(1) .................................................................................................... 1

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 12

Fed. R. Civ. P. 54(d) ...................................................................................................... 1, 14

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

2      **NOTICE IS HEREBY GIVEN** that on April 9, 2015 at 2:00 pm or as soon thereafter as

3  the matter may be heard by the Honorable Claudia Wilken, Plaintiffs seek an order awarding

4  Plaintiffs their reasonable attorneys' fees, costs, and expenses under 15 U.S.C. § 26, Fed. R. Civ.

5  P. 54(d), and Civil Local Rules 54-1 and 54-5. Class Counsel and counsel for the National

6  Collegiate Athletic Association ("NCAA") have met and conferred regarding this motion in an

7  effort to resolve disputed issues, as required by Civil Local Rule 7-3 and 54-5(b)(1).

8      Plaintiffs respectfully submit this memorandum in support of their amended motion for

9  attorneys' fees, costs, and expenses pursuant to the Clayton Act, 15 U.S.C.§ 26; Fed. R. Civ. P.

10  54(d); and Civil Local Rules 54-1 and 54-5.[1] Awarding reasonable attorneys' fees and costs is

11  required by statute and rule, and Plaintiffs request an award directed against the NCAA in the

12  following amounts:

13      Attorneys' fees: $45,573,985.45

14      Clayton Act recoverable costs and expenses: $5,295,062.20

15      Included within the Clayton Act costs and expenses are total taxable costs of $205,320.29,

16  which have been filed in a separate Bill of Costs, Dkt. 318. These amounts are amply supported

17  by Class Counsel and co-counsel's[2] detailed time records, accounting entries, and third-party

18  invoices as set forth in the accompanying declarations and exhibits.[3] Declarations of Plaintiffs'

19  counsel firms in support of these records are attached hereto. As Class Counsel previously

20  indicated to the Court, this amended motion and supporting documentation does not include

21  attorney time and expenses associated with the 2013 mediation and settlement of claims against

22  Electronic Arts, Inc. (EA) and Collegiate Licensing Company (CLC), or any subsequent related

23

---

24  [1] Plaintiffs filed their original motion for fees on October 21, 2014. Dkt. 319. The Court granted Plaintiffs leave to amend that motion on November 13, 2014. Dkt. 336.

25  [2] For the sake of convenience, Plaintiffs will use the term "Plaintiffs' counsel" broadly here to refer to all of their counsel who contributed to the prosecution of this litigation.

26  [3] These materials are privileged and shielded by the work-product doctrine and are being

27  provided without any waiver of any privilege or work-product doctrine. The accompanying time details will be filed under seal and have already been served on the NCAA (with minimal redactions for particularly sensitive information, consistent with the parties' stipulation, Dkt. 311;

28  these redactions will appear on the Court's copies as yellow highlighting).

work, which is more appropriately the subject of a future fees motion attendant to those proceedings.

# I.     BACKGROUND

On August 8, 2014, following the conclusion of a three-week bench trial, this Court issued its Findings of Fact and Conclusions of Law, directing the Clerk to enter judgment in favor of the Plaintiff class and noting that "Plaintiffs shall recover their costs from the NCAA." Dkt. 291 at 99. That same day, the Court issued its Permanent Injunction (Dkt. 292), and the Clerk entered judgment in favor of the Plaintiffs, specifying that "Plaintiffs recover from Defendant National Collegiate Athletic Association their costs of action" (Dkt. 293).

The judgment is the culmination of five years of painstaking litigation spanning, *e.g.*, ten motions to dismiss; far-reaching discovery that included 76 depositions and scores of discovery-related motions, frequently initiated by defendants; an entire year of class-certification briefing and proceedings; massive summary-judgment filings as well as *amici curiae* briefing; a slew of unsuccessful interlocutory appeal attempts by the NCAA; numerous pre-trial motions filed by the NCAA to stave off trial; and trial preparation and presentation. The complexities of, and risks associated with, this litigation defy comparison to most other contingent antitrust matters in recent history. At every turn, the NCAA brandished its past litigation successes and urged the Court to dismiss Plaintiffs' claims—even after four years of litigation and a complete discovery record. Over the course of the litigation, commentators frequently intoned about the numerous obstacles Plaintiffs faced in getting to trial, much less prevailing. And the result is superlative: a groundbreaking permanent injunction that finally prohibits suppression of competition for college athletes through the sharing of revenue obtained through the use of their names, images, and likenesses. Along the way, Plaintiffs exposed the inequities of college athletics, including the struggle between the "haves" and the "have nots," and the machinations of one of America's oldest cartels, which significantly harms competition and college athletes themselves. The sports world—and the legal profession—have noted the significance of this landmark victory, succinctly captured in an August 13, 2014 Editorial Board opinion from The New York Times (one of two

1  that day): "The O'Bannon Ruling: *College Athletes Win*."[4]

2        Class Counsel Hausfeld LLP supervised and coordinated the work of 32 law firms who

3  contributed resources to this trailblazing litigation, all in an effort to match the dozens of

4  accomplished attorneys litigating on the NCAA's behalf, including partners and associates from

5  WilmerHale, Munger, Tolles & Olson, and Schiff Hardin, as well as the *hundreds* of attorneys

6  across the country representing the NCAA's member schools and conferences; EA and CLC[5]; the

7  television broadcasters; and numerous other third parties who featured in this litigation, often in

8  third-party discovery facilitated by numerous other federal courts nationwide. Each plaintiffs'

9  firm shared in the considerable risk of non-payment given the unique aspects of this litigation and

10  the NCAA's past success in attaining dismissal based on *NCAA v. Board of Regents*, 468 U.S. 85

11  (1984). For years, there was simply no indication that Plaintiffs' counsel might recoup the tens of

12  thousands of hours—and millions of dollars in expenses—devoted to obtaining justice for college

13  athletes. That staggering investment of resources is all the more remarkable in light of the

14  relatively small size of most of the law firms representing Plaintiffs.

15        The Civil Local Rules, the Federal Rules of Civil Procedure, and the Clayton Act provide

16  for an award of attorneys' fees, costs, and expenses to the Plaintiffs following the entry of a

17  judgment in their favor. Accordingly, Plaintiffs seek an award of attorneys' fees, costs, and

18  expenses reasonably incurred as necessary in the successful prosecution of their injunctive claims

19  against the NCAA.[6]

20  **II.    ARGUMENT**

21        15 U.S.C. § 26 provides that "[a]ny person, firm, corporation, or association shall be

---

22  [4] *See* Exhibit H to the Declaration of Michael D. Hausfeld (emphasis added). "There are two
23  important consequences of a long-awaited ruling last week by a federal judge, Claudia Wilken, in
   the so-called O'Bannon case. College athletes will almost certainly be better off financially. And
24  the notion that these athletes are pure amateurs — 'students first, athletes second' — will be
   impossible to sustain. . . . Judge Wilken's ruling represents a significant victory for Ed O'Bannon,
25  a former basketball player for the University of California, Los Angeles, and other players like
   him who until now have been unable to share in the considerable wealth generated by their skill
26  and hard work." *Id.*

[5] For the duration of this litigation Keker & Van Nest has represented EA, and Kilpatrick
27  Townsend & Stockton has represented CLC.

[6] This motion includes taxable costs that Plaintiffs seek to recover in their concurrently filed Bill
28  of Costs.

     3     PLAINTIFFS' AMENDED MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

1   entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction

2   over the parties, against threatened loss or damage by a violation of the antitrust laws, including

3   sections 13, 14, 18, and 19 of this title . . . . In any action under this section in which the plaintiff

4   substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee,

5   to such plaintiff." Local Civil Rules 54-1, 54-2, 54-3, 54-4, and 54-5 likewise govern a motion for

6   attorneys' fees and bill of costs from a prevailing party following a judgment.

7       The Ninth Circuit has explained that reasonable fees, costs, and expenses span "every item

8   of service which, at the time rendered, would have been undertaken by a reasonable and prudent

9   lawyer to advance or protect his client's interest . . . ." *Twin City Sportservice, Inc. v. Charles O.*

10   *Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982); *see Theme Promotions, Inc. v. News Am.*

11   *Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 941-42 (N.D. Cal. 2010). Moreover, an award of fees and

12   costs is mandatory under 15 U.S.C. § 26, a feature of the Clayton Act designed to incentivize

13   private enforcement of the antitrust laws and deter anticompetitive behavior. *See Costco*

14   *Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1136-37 (9th Cir. 2008) ("[B]ecause fee shifting under

15   § 26 is mandatory, equity cannot influence the determination of whether fees and costs should be

16   awarded to substantially prevailing plaintiffs under that statute."); *see generally Azizian v.*

17   *Federated Dep't Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007). As the Ninth Circuit

18   explained in *Costco*,

19         Congress made fee awards mandatory under § 26 to "encourage [ ] ... private
20         parties to bring and maintain meritorious antitrust injunction cases." H.R.Rep. No.
          94–499(I), at 20 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2572, 2589–90.
21         Mandatory awards were seen as necessary to protect the injunction-seeking
22         plaintiff's financial incentive to file suit because antitrust cases are "normally very
          expensive to bring and maintain" and claims for injunctive relief by nature provide
23         no prospect of money damages. *Id.,* 1976 U.S.C.C.A.N. at 2588–89.

24   538 F.3d at 1136-37. The Ninth Circuit has further clarified that payment of attorneys fees by a

25   losing defendant is "part of his [or her] penalty for having violated the antitrust laws." *Image*

26   *Technical Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357 (9th Cir. 1998).

27       Courts in the Ninth Circuit look first to the "lodestar" in determining the reasonableness

28   of attorney fees. *Jordan v. Multnomah Cty*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar'

    4

1   is calculated by multiplying the number of hours the prevailing party reasonably expended on the

2   litigation by a reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.

3   1996) (internal citation omitted). And there is a strong presumption that the lodestar figure

4   represents a reasonable fee. *Jordan,* 815 F.2d at 1262. A court may, however, adjust the award

5   from the lodestar figure upon consideration of additional factors that bear upon reasonableness.

6   *Morales,* 96 F.3d at 363; *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1165 (N.D. Cal.

7   2012) (Wilken, J.). Upward adjustments are reserved, however, for the extraordinary cases, "such

8   as when the attorneys faced exceptional risks of not prevailing or not recovering any fees."

9   *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010); *see*

10  *Chalmers v. City of L.A.*, 796 F.2d 1205, 1212 (9th Cir. 1986), *opinion amended on denial of*

11  *reh'g,* 808 F.2d 1373 (9th Cir. 1987) ("In addition to the contingent nature of a fee arrangement,

12  delay in payment of a fee may justify an increase in a fee award.").

13       In determining a reasonable hourly rate, courts consider (1) the novelty and complexity of

14  the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the

15  results obtained; and (5) the contingent nature of the fee agreement. *See City of Burlington v.*

16  *Dague,* 505 U.S. 557, 562-63 (1992); *Cabrales v. Cnty. of L.A.,* 864 F.2d 1454, 1464 (9th Cir.

17  1988), *cert. granted, judgment vacated,* 490 U.S. 1087 (1989) and *opinion reinstated,* 886 F.2d

18  235 (9th Cir. 1989). Later, once a court has determined an appropriate fee by multiplying a

19  reasonable hourly rate by the number of hours reasonably expended, it can look to additional

20  factors not subsumed in the initial lodestar calculation to adjust the presumptively reasonable

21  lodestar figure, as appropriate. *See Morales*, 96 F.3d at 363-64; *Cabrales*, 864 F.2d at 1464.

22  Among those factors not subsumed in the initial consideration are (1) the time and labor required,

23  (2) the preclusion of other employment by the attorney due to acceptance of the case, (3) the

24  customary fee, (4) time limitations imposed by the client or the circumstances, (5) the experience,

25  reputation, and ability of the attorneys, (6) the 'undesirability' of the case, (7) the nature and

26  length of the professional relationship with the client, and (8) awards in similar cases. *See*

27  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Morales,* 96 F.3d at 363-64; *Cunningham v.*

28  *Cnty. of L.A.*, 879 F.2d 481, 487-89 (9th Cir. 1988); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

1 │ 67, 70 (9th Cir. 1975).

2 │       In determining the reasonableness of hourly rates (as well as the reasonableness of hours

3 │ expended), the paramount consideration is the result obtained. *See Hensley*, 461 U.S. at 434-36;

4 │ *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the

5 │ fee "is determined primarily by reference to the level of success achieved by the plaintiff");

6 │ *Morales,* 96 F.3d at 364-65; *Cunningham*, 879 F.2d at 486; *Cabrales*, 864 F.2d at 1464-65.

7 │ "Where a plaintiff has obtained excellent results, his attorney should recover a fully

8 │ compensatory fee." *Hensley*, 461 U.S. at 435-36. Furthermore, in determining overall success, it

9 │ may not be "significant that a prevailing plaintiff did not receive all the relief requested. For

10 │ example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa,

11 │ may recover a fee award based on all hours reasonably expended if the relief obtained justified

12 │ that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11; *see Caplan v. CNA Fin. Corp.*

13 │ 573 F.Supp.2d 1244, 1250 (N.D. Cal. 2008) (Wilken, J.). If a plaintiff achieves only partial

14 │ success, however, fees are not warranted for hours spent pursuing unsuccessful claims that turned

15 │ on different facts and legal theories altogether. *Hensley*, 461 U.S. at 433; *Schwarz v. Sec'y of*

16 │ *Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995); *Campbell*, 718 F. Supp. 2d at 1103.

17 │ Conversely, "[i]f the unsuccessful and successful claims involve a common core of facts or are

18 │ based on related legal theories, the court should 'focus on the significance of the overall relief

19 │ obtained by the plaintiff in relation to the hours reasonably expended on the litigation,' so that a

20 │ plaintiff who has achieved substantial relief should not have attorneys' fees reduced because the

21 │ court did not adopt each contention raised." *Campbell*, 718 F. Supp. 2d at 1103 (quoting *Schwarz,*

22 │ 73 F.3d at 901); *see Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991) ("[P]laintiffs

23 │ are to be compensated for attorney's fees incurred for services that contribute to the ultimate

24 │ victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be

25 │ compensable, in full or in part, if it contributes to the success of other claims.").

26 │       Finally, absent unusual circumstances, a reasonable hourly rate should also reflect the

27 │ prevailing market rates in the forum district for lawyers of reasonably comparable skill,

28 │ experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008);

*Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). A prevailing party seeking an award of attorney's fees must furnish satisfactory evidence that the requested rates are in line with those found in the local community. *Camacho*, 523 F.3d at 979.

   **a. Plaintiffs' counsel's historical hourly rates are reasonable and reflective of the prevailing market rates in the Northern District of California for lawyers of reasonably comparable skill, experience, and reputation.**

The historical hourly rates submitted by Plaintiffs' counsel in this application are well within with the range of rates charged by law firms engaged in similar litigation in the Northern District of California, and throughout the United States for that matter. Tables of the attorneys and paralegals who have worked on this matter, as well as their historical hourly rates are found in the attached declarations and related exhibits. These hourly rates range from $985 for senior partners with more than 40 years experience to $175 for the most junior associate. Paralegal rates are likewise within a reasonable range reflecting seniority and experience.

These historical rates are reasonable first because they are the standard rates charged by Plaintiffs' counsel (many of whom also live and practice in this District) and comparable to the rates that the NCAA has paid for their own counsel (many of whom also live and practice in this District) in fiercely defending this litigation. As reflected in the attached declarations, the historical rates included in this submission reflect the typical hourly rates of each of the co-counsel law firms involved in the prosecution of the litigation; no special adjustments have been made here. On information and belief, Plaintiffs understand the NCAA's counsel of choice in this litigation—WilmerHale, Munger, Tolles & Olson, and Schiff Hardin—to have reasonably comparable historical rates.[7] (Plaintiffs have repeatedly requested a summary of the NCAA's expenditures in litigating this case, including counsel's hourly rates, total expenses, total hours, and total attorney fees paid to date, but the NCAA has resisted any reciprocal information-

---

[7] Indeed, a brief survey of other dockets reveals that two of the NCAA's principal counsel here charged comparable rates *six to eight years ago*. In *Aloha Sports, Inc. v. NCAA*, Case No. 1:04-cv-00204-DAE-KSC (D. Haw.), another antitrust matter, Gregory Curtner sought his then-current rate (in 2006) of $540 per hour and was awarded his historical rate of $485 per hour for his representation of the NCAA. *See* Hausfeld Decl., Ex. I. And in *Applied Materials, Inc., v. Multimetrixs, LLC*, Case No. 3:06-cv-07372-MHP (N.D. Cal.), Rohit Singla sought and obtained his customary hourly rate (in 2008) of $525 per hour, which Judge Patel determined was reasonable. *Id.*, Ex. J.

1    sharing.) Additionally, Plaintiffs' decision to seek historical rates as opposed to current rates,

2    which the Court has wide discretion to award, *Gates*, 987 F.2d at 1406-08; *Theme Promotions,*

3    *Inc.*, 731 F. Supp. 2d at 948-49, reflects the conservative nature of this fee, costs, and expenses

4    application.

5         The reasonableness of Plaintiffs' counsel's hourly rates is likewise demonstrated by

6    decisions from federal courts nationwide considering and approving these very same rates in

7    other antitrust matters. For example, Hausfeld LLP was Interim Co-Lead Counsel in *In re*

8    *Processed Egg Products Antitrust Litigation*, MDL No. 2002, 2012 WL 5467530 (E.D. Pa. Nov.

9    9, 2012). There, the court granted the direct purchaser plaintiffs' request for attorney fees in its

10   entirety, conducting a "lodestar cross-check' to confirm that percentage fee was appropriate. *Id*. at

11   6. In performing its analysis, the court determined that Hausfeld LLP's hourly rates were

12   reasonable given the efficiency of the litigation; the division of labor among partners, associates,

13   and staff; and "the complexity of this litigation and the corresponding appropriate need for and

14   use of heavy involvement by experienced attorneys." *Id*. Ultimately, the court approved billing

15   rates ranging from $470 to $950 for Hausfeld LLP partners and rates ranging from $200 to $340

16   for Hausfeld LLP associates. *See* Hausfeld Decl. at ¶25.

17        Likewise, in *In re Vitamin C Antitrust Litigation* (E.D.N.Y.), in the wake of another

18   groundbreaking antitrust price-fixing trial last year, the court approved plaintiffs' fees and costs

19   application, identifying as reasonable the hourly rates of co-lead counsel Hausfeld LLP and Boies

20   Schiller & Flexner LLP (again, some of the very same hourly rates included here). *In re Vitamin*

21   *C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2013 WL 6858853, at *1-4 (E.D.N.Y. Dec. 30,

22   2013). Those approved hourly rates ranged from "a low of $375 per hour for junior associates to

23   $980 per hour for senior partners." *Id*. at *1. The court noted further that "[t]he rates charged by

24   plaintiffs' counsel are thoroughly reasonable based not only on the market, but on the uniqueness

25   of the case and the high quality of their work. Significantly lower rates would be unreasonable."

26   *Id*. at *4; Hausfeld Decl. at ¶26.

27        Other recent cases in which courts have approved fees after determining Hausfeld LLP's

28   standard hourly rates to be reasonable include *In re Air Cargo Shipping Services Antitrust*

PLAINTIFFS' AMENDED  MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

*Litigation*, No.06-md-1775 (E.D.N.Y.); *In re Municipal Derivatives Antitrust Litigation*, No. 08-2516 (S.D.N.Y.); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal.); *In re Flat Glass Antitrust Litigation II*, MDL No. 1942 (W.D. Pa.); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, No. 03-md-1542 (D. Conn.); and *In re Endosurgical Products Direct Purchaser Antitrust Litig*ation, No. 05-cv-08809 (C.D. Cal.). Hausfeld Decl. at ¶27. Similar examples concerning rates from other Plaintiffs' firms abound in the declarations supporting this amended motion.[8]

Perhaps the most instructive example, though, is *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal.), in which Judge Illston evaluated and approved a fee petition from more than 100 law firms, including numerous Plaintiffs' counsel here (reflecting the very same rates), with hourly attorney rates ranging from $350 to $1000. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2013 WL 1365900, at *1, *9 (N.D. Cal. Apr. 3, 2013); *see also LCD*, Dkt. 6662 (petition), 7127 (report and recommendation of special master), both of which are attached as Exhibit K to the Declaration of Michael D. Hausfeld. Plaintiffs' counsel's rates are directly in line with the rates approved in *LCD*—indeed, identical in many instances—and lower in some cases. If that were not evidence enough of prevailing rates in the Northern District of California, a comprehensive inventory of prevailing local rates for complex antitrust matters, as of 2012, can be found in the Declaration of Richard M. Pearl (a noted fees expert) filed in *In re TFT-LCD (Flat Panel) Antitrust Litig*., MDL 1827 (N.D. Cal.), Dkt. 6662-6, which is also included in Exhibit K to the declaration of Michael D. Hausfeld. Mr. Pearl's declaration provides a wealth of information about typical local rates for attorneys of reasonably comparable experience, skill, and reputation—*i.e.*, leading antitrust specialists with decades of experience in complex litigation. Pertinent to this Court's analysis, Mr. Pearl identifies recent Northern California federal and state court orders that determined rates ranging from $275 to $975 to be reasonable (Ex. K, Dkt. 6662-6 at 6-7)—and he also attaches surveys of legal rates offered by law

---

[8] *See* Isaacson Decl. at ¶22; Steiner Decl. at ¶19; Kralowec Decl. at ¶10; Himes Decl. at ¶9; Greenfogel Decl. (Lite DePalma) at ¶¶9-10; Greenfogel Decl. (Meredith Cohen Greenfogel & Skirnick) at ¶¶9-10; Sund Decl. at ¶6; Blanchfield Decl. at ¶12; Mason Decl. at ¶16.

PLAINTIFFS' AMENDED MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

firms with offices in the Northern District of California (*id*. at 7-9), which are among the highest in the nation.

> **b. Plaintiffs' counsel's historical hourly rates are all the more reasonable in light of the novelty and complexity of the issues, the special skill and experience of counsel and quality of their representation, the results obtained, and the high risk of non-recovery.**

Turning to the remaining factors in evaluating Plaintiffs' counsel's historical hourly rates, this litigation is one of the most complex antitrust matters in recent years, as the Court knows well. The substantive and procedural legal arguments alone were dizzying, with issues ranging from (1) First Amendment doctrine to (2) monopsony to (3) appropriate modes of antitrust analysis to (4) rights of publicity among the fifty states to (5) writs of mandamus, and culminating in a very rare rule of reason antitrust trial, which was closely watched by antitrust scholars. A brief inventory of the case illuminates its complexity:

- Plaintiffs deposed approximately 40 NCAA executives, conference commissioners, expert witnesses (a Nobel Prize winner among them, whom the NCAA paid $2300 per hour (Trial Tr. 1550)), athletic directors, university presidents, videogame engineers, and other witnesses. Plaintiffs likewise defended 36 depositions of named plaintiffs, unpaid consultants, and expert witnesses.

- The defendants ultimately produced 1,161,043 pages of documentary evidence (235,656 documents), which Plaintiffs' counsel diligently reviewed over the course of more than three years.

- Class certification spanned 15 months; 5 briefs (not including myriad briefs on the Defendants' motion to strike); 11 expert reports; and 25 substantive declarations.

- Summary judgment spanned 5 months; 4 briefs; 17 expert reports; 32 substantive declarations; and 3 amicus briefs (including an opposition).

- The defendants filed ten motions to dismiss, all of which Plaintiffs opposed, arguing many of them before the Court.

- Plaintiffs received 46,346 pages of third-party productions, many of which were obtained through open-records requests of state universities, and which Plaintiffs' counsel

diligently reviewed over the course of two and a half years.

- Defendants served—and Plaintiffs responded to—100 interrogatories and over 300 requests to admit, frequently supplementing or providing further clarification at the request of Defendants.

- Court hearings, client meetings, depositions, and interviews required frequent travel to dozens of cities throughout the United States.

As for the special skill and experience of Plaintiffs' counsel, the attached declarations attest to the collective talents of this group, comprising many of the top antitrust law firms in the country. As detailed above, dozens of federal courts nationwide have recognized Class Counsel Hausfeld LLP's considerable antitrust expertise in determining its rates to be reasonable. The same is true of virtually every law firm that contributed to this litigation, as laid out more fully in the attached declarations. Moreover, Plaintiffs respectfully submit that the quality of the representation was of the highest order. Each law firm brought its unique skill set to bear in providing counsel to the named plaintiffs and the class and shuttling this case to victory.

Finally, Plaintiffs' counsel obtained a stellar result for the injunctive class in this litigation. As noted earlier, Plaintiffs ultimately withstood ten motions to dismiss; prevailed at class certification (admittedly a partial victory); sought and obtained partial summary judgment; and won a three-week bench trial. The resulting injunction will have considerable financial benefits for the class, as it may well amount to tens of millions of dollars for college athletes *each season*, as Class Counsel noted in closing arguments at trial. (Trial Tr. 3360-61.) Moreover, and of critical importance, this is pioneering litigation—without any precedent and lacking any preceding public enforcement. This case stands in stark contrast to civil antitrust litigation that follows on the heels of criminal indictments or a Department of Justice investigation. Here, the public/private ordering is reversed: federal and state legislatures have become attuned to these issues—and are launching inquiries—in no small part *because* of this litigation. So too have Plaintiffs' counsel's successes here prompted other litigants to come forward with antitrust grievances against the NCAA and file suit in other actions.

**c.  Plaintiffs' counsel's total hours are reasonable.**

PLAINTIFFS' AMENDED  MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

The hours expended by counsel in this case are reasonable in light of the work required to prove the claims and defeat the defenses asserted. Class Counsel directed the litigation and delegated assignments among co-counsel firms. At the risk of repetition, Plaintiffs note just a few of the many significant projects required to prosecute this litigation successfully:

- Lengthy investigation prior to filing the complaint;
- Preparing and filing initial and subsequent pleadings;
- Ultimately defeating ten motions to dismiss;
- Taking and defending 76 party and non-party depositions across the country;
- Reviewing and organizing hundreds of thousands of pages of documents;
- Expert class and merits discovery involving nearly a dozen testifying experts for all parties (and many more reports);
- Working with numerous expert witnesses and consultants to prepare lengthy reports on liability and class certification;
- Numerous open-records requests to public universities;
- Extensive discovery motion practice, frequently initiated by Defendants or third parties— or necessitated by their intransigence;
- Traveling to and making dozens of appearances before Judges Wilken and Cousins;
- Briefing, arguing, and obtaining injunctive-class certification, a 15-month process;
- Briefing, arguing, and obtaining partial summary judgment, including responding to commensurate *amici curiae* briefing on First Amendment issues;
- Fending off numerous attempts at interlocutory appeal to the Ninth Circuit, as well as various pre-trial motions;
- Three-week bench trial and related preparation; and
- Post-trial briefing.

Plaintiffs have excised from this application, to the extent separable, time concerning damages claims; the pursuit of a damages class under Rule 23(b)(3); draft jury instructions, voir dire, and questionnaires; time spent preparing this fees application; and even most time related to press releases, interviews, and the like, even though the Northern District of California recognizes that

12

1   time as compensable. *See Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101

2   (N.D. Cal. 2008). As with the decision to forego current rates in favor of historical rates, these

3   time reductions again reflect the conservative nature of this fees application.

4        For the Court's convenience, each accompanying declaration segregates time spent

5   principally litigating against, and obtaining discovery from, EA and CLC (to the extent

6   possible).[9] Those efforts were highly productive, as they yielded critical evidence later deployed

7   against the NCAA at class certification, at summary judgment, and at trial through live witness

8   testimony, trial exhibits, and deposition designations. Any argument otherwise cannot be squared

9   with the NCAA's unsuccessful effort to sever the "videogame allegations" on the eve of trial, *see*

10  Case No. 09-1967, Dkt. 1029, which the Court rejected, *see* Case No. 09-1967, Dkt. 1092. It

11  bears noting too that EA and CLC did not exit this litigation until its fifth year, and only after

12  substantial discovery (including substantial discovery-related disputes) and a vigorous joint

13  defense in concert with the NCAA. To the extent that the NCAA argues that this time belongs

14  only in a future fees application concerning that settlement, it is mistaken. The benefits to the

15  classes flowing from the settlement (payment for past alleged injury) and the trial (injunctive

16  relief moving forward) are manifold—and distinct. It cannot be that the NCAA, adjudged to have

17  violated the antitrust laws, can pass *its* legal bill to the settlement class.

18       The NCAA will undoubtedly contend that the number of hours expended here suggests

19  inefficiency—yet, over the course of the past five years, its counsel threw up roadblocks to

20  Plaintiffs at every opportunity and, time and time again, asked for separate briefing and motions

21  for each defendant. Class Counsel exercised sound judgment in allocating resources as needed

22  given the daunting tasks required to litigate the class claims to resolution. In opting for scorched-

23  earth litigation, the NCAA was well aware of the consequences for any fee petition in the event

24  that it did not prevail. The Court will recall the NCAA's frequent and unsuccessful deployment of

25  motions to strike, *see* Case No. 09-1967, Dkt. Nos. 673 (denying Defendants' motion to strike

26  Plaintiffs' motion for class certification) and 756 (denying Defendants' motion to strike

27

28

---

[9] Again, Class Counsel's settlement of claims against EA and CLC, and subsequent related work, are not included in this fees application.

1   Plaintiffs' expert rebuttal reports in support of class certification), and the Defendants' insistence

2   that each of them could move to dismiss the Third Consolidated Amended Complaint last fall,

3   only to repeat previously unsuccessful arguments. *See* Case No. 09-1967, Dkt. No. 876 (denying

4   EA and CLC's separately briefed motions to dismiss as moot and denying the NCAA's motion to

5   dismiss). The attached Declaration of Renae D. Steiner details some of the many obstacles to

6   discovery posed by the NCAA, necessitating some twenty joint statements and numerous other

7   related briefs in this Court alone (while other discovery disputes raged across the country).

8   Steiner Decl., at ¶¶6-13. Most notably, the NCAA refused, early in the litigation, to play any role

9   in facilitating discovery from its member schools and conferences, knowing well that this would

10  prove a Herculean task for Plaintiffs absent any assistance. Much of the resulting lodestar flows

11  from that refusal—and Plaintiffs' prodigious efforts to amass the evidence required to obtain

12  partial summary judgment and try this case to victory.

13          **d.  Plaintiffs' costs and expenses are reasonable and of the type that are typically
14              billed to clients.**

15          Plaintiffs' Clayton Act costs and out-of-pocket litigation expenses are reasonable as well.

16  15 U.S.C. § 26 requires the Court to award the "cost of suit," including a reasonable attorney's

17  fee, to any injured plaintiff who "substantially prevails" in an action for injunctive relief under the

18  Clayton Act.

19          For many years, courts in the Ninth Circuit interpreted the Clayton Act strictly to permit

20  recovery of only those costs taxable under 28 U.S.C. §§ 1821, 1920 and Federal Rule of Civil

21  Procedure 54(d). *See, e.g*., *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 (9th

22  Cir. 1964). In recent years, however, courts in the Ninth Circuit have softened that approach,

23  recognizing the need to recompense successful private antitrust litigants for reasonable litigation

24  expenditures, whether characterized as costs or expenses. *See Auto. Prods. PLC v. Tilton Eng'g,

25  Inc.*, 855 F. Supp. 1101, 1106-08 (C.D. Cal. 1994); *Auto. Prods. PLC v. Tilton Eng'g, Inc.*, CV

26  90-5500 KN (EX), 1993 WL 660146, at *2 (C.D. Cal. Nov. 18, 1993); *Hasbrouck v. Texaco, Inc.*,

27  631 F. Supp. 258, 268 (E.D. Wash. 1986), *aff'd in part, rev'd in part,* 879 F.2d 632 (9th Cir.

28  1989); *cf. Seven Gables Corp. v. Sterling Recreation Org. Co.*, 686 F. Supp. 1418, 1420 (W.D.

1  Wash. 1988). *But see In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 2014 WL

2  1991269, at *1-3 (N.D. Cal. May 12, 2014) (upholding without analyzing special master's

3  recommendation that the Clayton Act does not permit recovery of expert witness fees or certain

4  other non-taxable costs). That evolution is consistent with decisions from other circuits. *E.g.*, *U.S.*

5  *Football League v. Nat'l Football League*, 887 F.2d 408, 416-17 (2d Cir. 1989). And in

6  determining which expenditures are reasonable, courts have looked to whether they are of the

7  type normally billed to clients. *E.g.*, *id.*; *Auto. Prods. PLC*, CV 90-5500 KN (EX), 1993 WL

8  660146, at *2.

9  As numerous courts have acknowledged, and as the attached declarations attest to, fee-

10  paying clients typically bear the costs of computerized legal research; attorney travel;

11  photocopying; printing; overnight mail and messengers; document database hosting; expert

12  witness fees; and mock trial expenses, among other charges. *Trs. of the Constr. Indus. &*

13  *Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006);

14  *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1080 (N.D. Cal. 2010); *Auto. Prods. PLC*, 855 F. Supp.

15  at 1106-08. Accordingly, Class Counsel's amended motion includes $5,295,062.20 in costs and

16  expenses, which are compensable under the Clayton Act because they were vital to the

17  prosecution of this case and are of the type typically billed to clients.

18  So too are Plaintiffs' taxable costs (subsumed with the larger figure compensable under

19  the Clayton Act) appropriate. Civil Local Rule 54-3 details the standards for taxing costs in any

20  litigation, specifying the taxable costs of fees for filing and service of process; reporters'

21  transcripts; depositions; reproduction and exemplification; witness expenses; fees for masters and

22  receivers; costs on appeal; and costs of bonds and security. Class Counsel has submitted

23  accounting records and invoices attesting to certain of these cost items, joined with Plaintiffs' Bill

24  of Costs. These taxable costs are included in the costs and expenses recoverable under the

25  Clayton Act fee-shifting statute.

26  **e.   This case is exceptional, and Plaintiffs request consideration of an upward**
        **adjustment.**

27

28  Finally, for all of the reasons expressed above, Plaintiffs submit that this is the

PLAINTIFFS' AMENDED  MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES AND
MEMORANDUM IN SUPPORT THEREOF

1  extraordinary case contemplated by *Morales*, 96 F.3d at 363-64, *Chalmers*, 796 F.2d at 1212, and

2  *Campbell*, 718 F. Supp. 2d at 1103, because it carried an exceptional risk of defeat and required a

3  tremendous amount of time and labor that in turn precluded other employment. The rule-of-

4  reason criterion alone distinguishes this case from nearly every other class action antitrust trial.

5  Plaintiffs do not presume to know the precise amount of an appropriate upward adjustment to the

6  lodestar amount, which will ultimately reflect the Court's appraisal of the risks faced in this case.

7  Accordingly, Plaintiffs simply request that the Court consider the possibility in light of the

8  circumstances.

9  **III.    CONCLUSION**

10         For the foregoing reasons, the Court should grant Plaintiffs' amended motion for

11  attorneys' fees, costs, and expenses.

12

13  Dated: November 19, 2014                    Respectfully submitted,

14                                              By:  */s/ Michael Hausfeld*
                                                Michael D. Hausfeld (*pro hac vice*)
15                                              Hilary K. Scherrer (Cal. Bar No. 209451)
                                                Sathya S. Gosselin (Cal. Bar No. 269171)
16                                              Swathi Bojedla (*pro hac vice*)
                                                HAUSFELD LLP
17                                              1700 K Street, NW, Suite 650
                                                Washington, DC 20006
18                                              Telephone:  (202) 540-7200
                                                Facsimile:  (202) 540-7201
19                                              E-mail: mhausfeld@hausfeldllp.com
                                                       hscherrer@hausfeldllp.com
20                                                     sgosselin@hausfeldllp.com
                                                       sbojedla@hausfeldllp.com
21
                                                Michael P. Lehmann (Cal. Bar No. 77152)
22                                              Bruce J. Wecker (Cal. Bar No. 78530)
                                                HAUSFELD LLP
23                                              44 Montgomery St., 34th Floor
                                                San Francisco, CA 94104
24                                              Telephone:  (415) 633-1908
                                                Facsimile:  (415) 358-4980
25                                              E-mail: mlehmann@hausfeldllp.com
                                                       bwecker@hausfeldllp.com
26
                                                *Plaintiffs' Class Counsel*
27

28

1

## CERTIFICATE OF SERVICE

2

I, Swathi Bojedla, declare that I am over the age of eighteen (18) and not a party to the
entitled action.  I am an associate in the law firm of HAUSFELD LLP, and my office is located at
1700 K Street NW, Suite 650, Washington, DC 20006.

3

4

On November 19, 2014, I caused to be filed the following

5

6

**PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF**

7

8

with the Clerk of Court using the Official Court Electronic Document Filing System, which
served copies on all interested parties registered for electronic filing.

9

I declare under penalty of perjury that the foregoing is true and correct.

10

*/s/ Swathi Bojedla*
Swathi Bojedla

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28