Gregory L. Curtner (*pro hac vice*)
Robert J. Wierenga (SBN183687)
Kimberly K. Kefalas (*pro hac vice*)
Suzanne L. Wahl (*pro hac vice*)
Schiff Hardin LLP
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
Facsimile: (734) 222-1501
Email: gcurtner@schiffhardin.com
        rwierenga@schiffhardin.com
        kkefalas@schiffhardin.com
        swahl@schiffhardin.com

Attorneys for Defendant
National Collegiate Athletic Association

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR., on behalf of himself and all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (a/k/a the "NCAA"), and COLLEGIATE LICENSING COMPANY, (a/k/a "CLC").<br>Defendants. | Case No. :09-cv-3329 CW<br><br>**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>Dept:        Courtroom A; 15th floor<br>Judge:      Hon. Nathanael Cousins<br>Complaint filed: July 21, 2009 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .............................................................................................................................. 2
I.      PLAINTIFFS HAVE SUBMITTED INSUFFICIENT EVIDENCE ON FEES ................. 3
        A.      Plaintiffs' hours must be reduced for block billing ................................................ 4
        B.      Plaintiffs' hours must be reduced for vague entries ............................................... 5
        C.      Plaintiffs' hours must be reduced for entries obscured by redaction ..................... 6
        D.      Plaintiffs have recorded time in improper increments ........................................... 6
II.     PLAINTIFFS SEEK TO RECOVER IMPERMISSIBLE FEES ....................................... 6
        A.      Plaintiffs failed to remove all fees that they concede are not recoverable ............. 7
        B.      Plaintiffs may only recover fees related to their successful claim ......................... 8
                1.      Time related to unsuccessful and unrelated claims must be
                        deducted .................................................................................................... 8
                2.      Plaintiffs' hours must be reduced for unsuccessful related claims .......... 11
                3.      Plaintiffs cannot recover hours related to state law claims ..................... 13
        C.      Plaintiffs' hours must be reduced for work done against EA or CLC ................. 13
        D.      Plaintiffs cannot recover hours spent soliciting plaintiffs or competing
                for lead counsel .................................................................................................... 15
        E.      Plaintiffs cannot recover hours for clerical work ................................................ 15
        F.      Plaintiffs cannot recover hours generated by inefficient practices ...................... 16
                1.      Plaintiffs assigned work inefficiently ..................................................... 16
                2.      Plaintiffs cannot recover hours from overstaffing .................................. 17
                3.      Plaintiffs' hours should be reduced for conferencing time ..................... 18
                4.      Plaintiffs' hours should be reduced for excessive time entries ............... 18
                5.      Plaintiffs' hours should be reduced for work that took too
                        long or did not add value to the case ...................................................... 19
        G.      Plaintiffs cannot recover hours for timekeepers who did not contribute ............. 20
        H.      Plaintiffs have failed to exercise billing judgment .............................................. 20
III.    THE COURT SHOULD APPLY A NEGATIVE MULTIPLIER ................................... 20
IV.     PLAINTIFFS SEEK IMPERMISSIBLE COSTS AND EXPENSES ............................ 21
        A.      Plaintiffs seek non-taxable costs to which they are expressly not entitled .......... 22
                1.      Plaintiffs cannot recover expert fees ....................................................... 22
                2.      Plaintiffs cannot recover witness fees for named plaintiffs .................... 23
                3.      Plaintiffs cannot recover pro hac vice application fees ........................... 23
        B.      Plaintiffs have failed to carry their burden with regard to expenses ................... 23
        C.      Expenses should be limited for the same reasons as stated above ....................... 25
CONCLUSION .......................................................................................................................... 25

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

i

# INDEX OF AUTHORITIES

## CASES

*Aceves v. Allstate Ins. Co.,*
68 F.3d 1160 (9th Cir. 1995)......................................................................... 22

*Adderly v. National Football League Player's Ass'n,*
No. C 07-00943 WHA, 2009 WL 4250792 (N.D. Cal. Nov. 23, 2009) ................. 24

*Am. Civil Liberties Union of Georgia v. Barnes,*
168 F.3d 423 (11th Cir. 1999).......................................................................... 15

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
548 U.S. 291 (2006)........................................................................................ 22

*Armstrong v. Davis,*
318 F.3d 965 (9th Cir. 2003)............................................................................. 20

*Automotive Products PLC v. Tilton Engineering, Inc.,*
855 F. Supp. 1101 (C.D. Cal. 1994).................................................................. 23

*Automotive Products PLC v. Tilton Engineering, Inc.,*
No. CV 90-5500 KN(EX), 1993 WL 660146 (C.D. Cal. Nov. 18, 1993) ............... 23

*Banas v. Volcano Corp.,*
No. 12-cv-01535-WHO, 2014 WL 7051682 (N.D. Cal. Dec. 12, 2014)........................ 3, 4, 24

*Barfield v. New York City Health & Hosp. Corp.,*
537 F.3d 132 (2d Cir. 2008)............................................................................. 13

*Baughman v. Wilson Freight Forwarding Co.,*
583 F.2d 1208 (3d Cir. 1978)........................................................................ 13, 14

*Blackwell v. Foley,*
724 F.Supp.2d 1068 (N.D. Cal. 2010) ............................................................... 23

*Bonner v. Fuji Photo Film,*
No. C-06-04374 CRB, 2008 WL 410260 (N.D. Cal. Feb. 12, 2008) ...................... 4

*Camacho v. Bridgeport Fin., Inc.,*
523 F.3d 973 (9th Cir. 2008)............................................................................. 6

*Campbell v. National Passenger Railroad Corp.,*
718 F. Supp. 2d 1093 (N.D. Cal. 2010) .............................................................. 21

*Caplan v. CNA Fin. Corp.,*
573 F. Supp. 2d 1244 (N.D. Cal. 2008) .............................................................. 12

*Chalmers v. City of Los Angeles,*
796 F.2d 1205 (9th Cir. 1986)........................................................................... 3

*Cognizant Tech. Solutions U.S. Corp. v. McAfee,*
No. 14-CV-01146-WHO, 2014 WL 3885868 (N.D. Cal. Aug. 7, 2014)................. 5, 6, 16, 19

*Competitive Techs. v. Fujitsu Ltd.,*
No. C-02-1673 JCS, 2006 WL 6338914 (N.D. Cal. Aug. 23, 2006) ...................... 23

*Corder v. Gates,*
947 F.2d 374 (9th Cir. 1991)............................................................................. 12

*Cotton v. City of Eureka, Cal.,*
889 F. Supp. 2d 1154 (N.D. Cal. 2012) .......................................................... 3, 15

*Crawford Fitting Co. v. J.T. Gibbons, Inc.,*
482 U.S. 437 (1987)........................................................................................ 22

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

ii

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
  601 F. Supp. 2d 1183 (C.D. Cal. 2009) .................................................................... 17, 18, 19

*Cruz v. Starbucks Corp.*,
  No. C-10-01868 JCS, 2013 WL 2447862 (N.D. Cal. June 5, 2013) ................................ 24, 25

*Cunningham v. Cnty. of Los Angeles*,
  879 F.2d 481 (9th Cir. 1988) ............................................................................................. 14

*Davis v. City and County of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) ............................................................................................ 15

*Davis v. Prison Health Servs.*,
  No. C 09-2629 SI, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ............................... 5, 14, 17

*De Amaral v. Goldsmith & Hull*,
  No. 12-cv-03580-WHO, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) .............................. 8, 13

*Democratic Party of Wash. State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004) ............................................................................................ 17

*Dkt. 341 at 16. In Morales v. City of San Raphael*,
  96 F.3d 359 (9th Cir. 1996) ............................................................................................... 21

*Evanow v. M/V Neptune*,
  163 F.3d 1108 (9th Cir. 1998) ............................................................................................ 23

*F.T.C. v. Nat'l Bus. Consultants, Inc.*,
  No. 89-1740, 2007 WL 4532203 (E.D. La. Nov. 16, 2007) ...................................................... 6

*Fortson v. Marriott Int'l, Inc.*,
  No. CV 11-01454 LB, 2013 WL 183241111 (N.D. Cal. May, 1, 2013) ................................ 23

*Gracie v. Gracie*,
  217 F.3d 1060 (9th Cir. 2000) ............................................................................................ 12

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
  789 F. Supp. 1288 (D.N.J. 1992) ........................................................................................ 14

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................................................................. 21

*Hasbrouck v. Texaco, Inc.*,
  631 F. Supp. 258 (W.D. Wash. 1986) *aff'd in part, rev'd in part*
  879 F.2d 632 (9th Cir. 1988) .............................................................................................. 23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................................... 3, 6, 7, 8, 11, 21

*Hernandez v. Grullense*,
  No. 12-CV-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ............................ 18

*Herrington v. Cnty. of Sonoma*,
  883 F.2d 739 (9th Cir. 1989) .............................................................................................. 19

*HRPT Properties Trust v. Lingle*,
  755 F. Supp. 2d 1225 (D. Haw. 2011) ................................................................................ 24

*Iguacu v. Filho*,
  No. C 09-0380 RS, 2014 WL 3668574 (N.D. Cal. July 23, 2014) ......................................... 13

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) .............................................................................................. 21

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

iii

*In re Cendent Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................................................. 19

*In re Music Merchants, Inc.*,
208 B.R. 944 (B.A.P. 9th Cir. 1997) ..................................................................................... 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2014 WL 1991269 (N.D. Cal. May 12, 2014) ........................................ 21

*In re Tut Systems, Inc. Sec. Litig.*,
No. C 01-2659 CW, 2007 WL 1722420 (N.D. Cal. June 13, 2007) ...................................... 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................................... 3

*Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*,
741 F.3d 955 (9th Cir. 2013) ................................................................................................. 23

*LaGarde v. Support.com, Inc.*,
No. C12-0609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ...................................... 24

*Lahiri v. Univ. Music and Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) ............................................................................................ 3, 4

*McCown v. City of Fontana*,
565 F.3d 1097 (9th Cir. 2008) ......................................................................................... 11, 12

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................................... 22

*Moralez v. Whole Foods Market, Inc.*,
No. C 12-01072, 2013 WL 3967639 (N.D. Cal. July 31, 2013) ............................................ 21

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ............................................................................................... 17

*Muniz v. United Parcel Serv., Inc.*,
738 F.3d 214 (9th Cir. 2013) ................................................................................................... 8

*Muniz v. United Parcel Serv., Inc.*,
No. C 09-01987 CW, 2011 WL 3740808 (N.D. Cal. Aug. 23, 2011) .................................... 12

*Navarro v. Gen. Nutrition Corp.*,
No. C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ....................... 5, 7, 15, 16

*New York v. Microsoft*,
297 F. Supp. 2d 15 (D.D.C. 2003) ................................................................................... 10, 13

*Norris v. Sysco Corp.*,
191 F.3d 1043 (9th Cir. 1999) ................................................................................................. 5

*Parks v. Eastwood Ins. Servs., Inc.*,
No. SACV02-507GLTMLGX, 2005 WL 6007833 (C.D. Cal. June 28, 2005) ...................... 15

*Pierce v. Cnty. of Orange*,
905 F. Supp. 2d 1017 (C.D. Cal. 2012) ................................................................................. 25

*Prison Legal News v. Schwarzenegger*,
561 F. Supp. 2d 1095 (N.D. Cal. 2008) ................................................................................. 16

*Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*,
899 F.2d 951 (10th Cir. 1990) ............................................................................................... 22

*Robinson v. Plourde*,
717 F. Supp. 2d 1092 (D. Haw. 2010) ................................................................................... 16

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

iv

*Rodriguez v. Barrita,*
   No. C 09-04057 RS, 2014 WL 2967925 (N.D. Cal. July 1, 2014) ......................................... 12

*Rose v. Bank of Am. Corp.,*
   No. 5:11-CV-02390-EJD, 5:12-cv-04009-EJD, 2014 WL 4273358 (N.D. Cal. Aug.
   29, 2014) ....................................................................................................................................... 16

*Rosenfeld v. U.S. Dept. of Justice,*
   904 F. Supp. 2d 988 (N.D. Cal. 2012) ................................................................................... 20

*Schwarz v. Sec'y of Health & Human Servs.,*
   73 F.3d 895 (9th Cir. 1995).............................................................................................. 8, 10

*Simmonds v. New York City Dept. of Corr.,*
   No. 06 Civ. 5289(NRB), 2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008) ................... 14, 16, 19

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist,*
   489 U.S. 782 (1989)............................................................................................................ 21

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.,*
   460 F.3d 1253 (9th Cir. 2006)..................................................................................... 22, 23, 25

*Tuttle v. Sky Bell Asset Mgmt., LLC,*
   No. C 10-03588 WHA, 2012 WL 3257799 (N.D. Cal. Aug. 8, 2012) ............................. 17, 24

*Twentieth Century Fox Film Corp. v. Goldwyn,*
   328 F.2d 190 (9th Cir. 1964)................................................................................................ 21

*U.S. Football League v. Nat'l Football League,*
   704 F. Supp. 474 (S.D.N.Y.)................................................................................................ 12

*W. Va. Univ. Hosp., Inc. v. Casey,*
   499 U.S. 83 (1991)............................................................................................................... 22

*Wang v. Chinese Daily News, Inc.,*
   737 F.3d 538 at 545 (9th Cir. 2013).................................................................................... 11

*Webb v. Sloan,*
   330 F.3d 1158 (9th Cir. 2003)............................................................................................... 8

*Welch v. Metro. Life Ins. Co.,*
   480 F.3d 942 (9th Cir. 2007)....................................................................................... 4, 6, 18

*Wolph v. Acer Am. Corp.,*
   No. C 09-01314 JSW, 2013 WL 5718440 (N.D. Cal. Oct. 21, 2013) .................................. 18

*Yamada v. Weaver,*
   No. 10-00497, 2012 WL 6019121 (D. Haw. Nov. 30, 2012) ............................................... 15

**STATUTES**

15 U.S.C. § 26........................................................................................................................ 23

28 U.S.C. § 1821.................................................................................................................... 22

28 U.S.C. § 1920............................................................................................................... 21, 22

**RULES**

Fed.R.Civ.P. 23(b)(3)............................................................................................................... 7

Fed.R.Civ.P. 54(d) ............................................................................................................. 21, 22

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

v

1

## INTRODUCTION

2      The tale of *O'Bannon* is a tale of two lawsuits. The first was filed in July 2009 to

3 vindicate former student-athletes who had allegedly been foreclosed from licensing their name,

4 image or likeness **after** they stopped playing NCAA sports. That case promised not to challenge

5 any amateurism rule or claim any right to be compensated for live broadcast appearances. Indeed,

6 as late as February 2012 plaintiffs promised this Court "[w]e don't claim rights to be

7 compensated for appearing in live broadcasts or playing on the field, the amateur principles that

8 have been so hallowed." *See SAL* Dkt. 639 at 1.[1]

9      That case was unequivocally a failure, and was abandoned by September 2012. Although

10 the original plaintiffs spent the first three years of this case litigating their claim that the NCAA,

11 EA and CLC used "Form 08-3a" and other alleged "perpetual release" forms to exclude plaintiffs

12 from a post-graduation "collegiate licensing" market, none of those plaintiffs received damages or

13 injunctive relief based on those claims. Nor did those plaintiffs receive **any** benefit from the

14 injunction actually issued by this Court. Plaintiffs' counsel have nothing to show for the work

15 they did on behalf of the plaintiffs who sued the NCAA in 2009. Those named plaintiffs,

16 including O'Bannon, were not prevailing parties and that work is not compensable.

17      The second *O'Bannon* case began on August 31, 2012, when plaintiffs filed a motion for

18 class certification premised on the allegation that NCAA amateurism rules violate the Sherman

19 Act because they prevent current student-athletes from being paid to appear in live broadcasts.

20 That new theory required a new set of plaintiffs, all current student-athletes, since the original

21 plaintiffs lacked standing to challenge NCAA rules that no longer applied to them.  Those new

22 plaintiffs did not join until July 2013, more than **four years** after the initial complaint and long

23 after plaintiffs' counsel supposedly incurred most of the fees they now demand.  Even then,

24 plaintiffs were only partially successful: they failed to certify their damages class; the original

25 named plaintiffs abandoned their individual claims; and the new, post-2012 plaintiffs and class

26 received prospective injunctive relief that was only a fraction of that requested.

27

28

---

[1] "*SAL* Dkt." refer to *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 3:09-cv-01967-CW. "Exhibit _" or "Ex. _" refer to Exhibits to the Declaration of Robert J. Wierenga.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

1   Plaintiffs' requested fees and costs are far beyond what is permissible given this limited

2   success. Plaintiffs should recover nothing for the unsuccessful claims pursued on behalf of the

3   original named plaintiffs, and the fees and costs they incurred while pursuing injunctive relief on

4   behalf of the post-2012 class must be reduced to reflect their limited success.

5   Class counsel also impermissibly syndicated the case for its own financial gain with an

6   unwieldy network of at least 34 firms. Many of them did very little work and added very little of

7   substance, but padded the lodestar by billing thousands of hours of useless time. This is precisely

8   what the Court prohibited in appointing lead counsel. *SAL* Dkt. 146 at ¶ 1 (class counsel is "[t]o

9   coordinate and make work assignments among themselves and other plaintiffs' counsel to

10  promote efficient prosecution of this action and to avoid duplication of work"). Class counsel

11  flouted this Court's directive. Jon King, a former partner at Hausfeld LLP and the lead attorney

12  during the first four years, publicly admitted that Hausfeld LLP engaged in a "scheme" of

13  "overstaffing" this case, "resulting in massive inefficiency and a stunning amount of attorney

14  time being spent." *King v. Hausfeld*, No. 13-0237 (N.D. Cal.), Dkt. 1 at ¶ 55. The billing records

15  confirm King's admission – counsel padded the file with duplicative and unproductive work to

16  inflate their fees.

17  Finally, counsel failed to keep records sufficient to support their motion for fees and costs,

18  and their requests must be reduced because of this lack of support.  For all of these reasons, the

19  NCAA respectfully requests that the Court reduce the requested fees by at least $36,864,238.59,

20  *see* Ex. 1, and the requested costs by at least $4,916,282.68, Ex. 2.

21  The NCAA submits this brief without any waiver or concession of its appellate

22  arguments.  If it prevails on appeal, the present motion will have no basis.

23                                  **ARGUMENT**

24  Plaintiffs' request for fees and costs must be significantly reduced for many independent

25  and overlapping reasons. First, plaintiffs have failed to submit the evidence needed to justify their

26  extraordinary fee request. Second, plaintiffs are demanding fees for work that is clearly not

27  recoverable, including time spent entirely on claims that the plaintiffs abandoned or lost. Third,

28  plaintiffs' lodestar should be reduced by an appropriate multiplier to reflect their limited success

---

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

in this case. Finally, plaintiffs are demanding costs that are unrecoverable as a matter of law. We explain each of these failings in plaintiffs' request in further detail below.

Because of plaintiffs' counsel's choice to block bill half of all time requested, *see* Section I.A., and because an entry may be impermissible for multiple reasons, the reductions requested in the brief cannot simply be added together. The NCAA has therefore compiled all the requested reductions in Exhibit 1 and totaled the following numbers to reach the overall requested reduction: (1) 100% of time before August 31, 2012; (2) 80% from September 1, 2012 to November 8, 2013; (3) after November 8, 2013, the highest percentage requested in the brief for each line-billed entry, (4) at least 30% of block-billed entries that were not otherwise problematic, and (5) at least 30% for the remaining block-billed entries, plus an additional 10% for the additional issues in the entry.[2]

## I.        PLAINTIFFS HAVE SUBMITTED INSUFFICIENT EVIDENCE ON FEES

Plaintiffs "bear[] the burden of submitting detailed time records justifying the hours claimed to have been expended." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986)). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Id.* (citing *Hensley*, 461 U.S. at 433).[3]

---

[2] Block-billed entries may appropriately be reduced both for block billing and for any other problem. Here, block-billed entries that are otherwise problematic are reduced 30% for block billing and an additional 10% if they have been identified as being additionally problematic. *Lahiri v. Univ. Music and Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (30% reduction for block-billed entries and an additional 10% across-the-board reduction for excessive and redundant work); *see also Banas v. Volcano Corp.*, No. 12-cv-01535-WHO, 2014 WL 7051682, at *7-8 (N.D. Cal. Dec. 12, 2014) (reducing for block billing, then making additional reductions for other issues). Moreover, as it is plaintiffs' counsel's burden to maintain adequate time records, to the extent their records do not permit an exact reduction, the consequences of that uncertainty should fall on them. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The requested reduction in fees is conservative. It does not take into account, for example, impermissible entries in the September 1, 2012 to November 8, 2013 time period that may be entitled to a 100% reduction, instead of the 80% requested. Similarly, the requested reduction calculates only a 10% reduction for impermissible entries that are also block billed. It is highly likely that, had these entries been correctly line billed, many would be appropriately reduced by 100% because they were clerical, related to EA or CLC, or for some other issues.

[3] "Even if the opposing party has not objected to the time billed, the district court may not uncritically accept a fee request but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Cotton v. City of Eureka,*

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

3

Here, plaintiffs' counsel has failed to submit adequate time records. Their declarations are conclusory and self-serving.[4] The time records do not support the declarations and were not kept in a uniform fashion or with the detail required. Their records feature block billing, vague entries, entries obscured entirely or partially by redaction, and billing by improper time increments.

### A.  Plaintiffs' hours must be reduced for block billing

Plaintiffs' time records reveal 13,670 entries with impermissible block billing, constituting 49% of all hours and $22,913,777.59 in requested fees. Ex. 3.[5] The Ninth Circuit has held that "block billing makes it more difficult to determine how much time was spent on particular activities" and that block billing can inflate bills by 10% to 30%. *Welch*, 480 F.3d at 948 (9th Cir. 2007). This district has similarly held that block billing makes it "impossible to determine whether the time requested for any one task was reasonable." *Banas*, 2014 WL 7051682 at *6-7 (20% across-the-board reduction); *see also Lahiri*, 606 F.3d at 1222-23 (30% reduction of block-billed time); *Bonner v. Fuji Photo Film*, No. C-06-04374 CRB, 2008 WL 410260, at *3-4 (N.D. Cal. Feb. 12, 2008) (30% reduction to all bills) (applying California law). Plaintiffs' block billing is especially egregious here, where there has been well-settled case law forbidding block billing since before the case was even filed. *See Banas*, 2014 WL 7051682 at *6 n. 11 (collecting "repeated criticism [of block billing] by courts throughout the country, *including in this District*") (emphasis in original). Analysis of plaintiffs' time records would always be a substantial undertaking, but plaintiffs' counsel's failure to submit proper bills makes the court's

---

*Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). In fulfilling this responsibility, the court has broad discretion to reduce the number of billable hours awarded. *Id.*

[4] As an example of the mismatch between plaintiffs' counsel's declarations and their time records, see Stanley Chesley's declaration on behalf of the WBSC law firm. Dkt. 341-32. The declaration states that (1) WSBC was counsel in this matter until May 2013, *id.* at ¶1, yet WBSC submitted bills through December 2013; (2) that WBSC "worked on all phases" of the action, *id.* at ¶ 4, yet WBSC did not join the case until July 2012 and apparently ended its involvement by December 2013; (3) he understands that only time and costs spent on common matters will be considered, *id.* at ¶ 3, yet WBSC billed over $12,000 ███████████████████████ ████████████████████.

[5] "'Block billing' is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 945 n. 2 (9th Cir. 2007). We do not exclude entries that were block billed but also allocated time to the individual tasks within the entry.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

4

Case4:09-cv-03329-CW   Document355   Filed02/06/15   Page11 of 32

1  duty extremely burdensome.[6]

2      Exhibit 3 lists 13,670 block-billed entries. These entries represent $22,913,843.59 and

3  should be reduced by a minimum of 30%, for a total reduction of at least $6,874,133.28.

4      **B.      Plaintiffs' hours must be reduced for vague entries**

5      Plaintiffs' time records contain a substantial number of vague entries. For example,

6  plaintiffs request ███████████████████████████████████████████████████

7  ███████████████████████████████████ Ex. 4. Bare and unhelpful descriptions of attorney

8  time do not meet a fee-seeker's burden of showing how the fee request is reasonable. *Cognizant*

9  *Tech. Solutions U.S. Corp. v. McAfee*, No. 14-CV-01146-WHO, 2014 WL 3885868, at *2-3

10  (N.D. Cal. Aug. 7, 2014) (50% reduction for vague entries, such as those that stated that

11  "attention was given to some subject without further description").[7] This is true when, as here,

12  plaintiffs' counsel conducted work on both recoverable and unrecoverable subjects. *See Navarro*

13  *v. Gen. Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, at *15 (N.D. Cal. Sept. 22,

14  2005) (10% reduction when vagueness prevented identification of unrecoverable hours). And it is

15  especially true here, where adequate records would likely reveal that many of the vague entries

16  could be reduced in their entirety for one of the other reasons set forth.

17      Exhibit 4 lists 4292 entries that have "bare and unhelpful explanations." These include

18  entries that are simply unintelligible, entries that are vague as to what was done, and entries that

19  are vague as to whether the time was regarding the NCAA or its co-defendants. Of these, the

20  3066 line-billed entries total 7275.20 hours and $3,745,348.10 and should be reduced by at least

21  50%, for a reduction of $1,872,674.05. *Cognizant Tech.*, 2014 WL 3885868 at *2 (50%

22  reduction). The remaining 1226 block-billed entries represent 4335.80 hours and $2,338,819.05

23  and should be reduced per footnote 2.

24  ─────────────

25  [6] For these reasons, the NCAA proposes that a 100% reduction in block-billed entries would be appropriate in this extraordinary case, even though prior cases have not gone that far.

26  [7] *See also Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *11-12 (N.D. Cal. Sept. 25, 2012) (10% reduction for time entries that included entries like "review e-mail chain" or "legal research") (citing *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999)); *Navarro v. Gen. Nutrition Corp.*, No. C-03-0603 SBA, 2005 WL 2333803, at *15-16 (N.D. Cal. Sept. 22, 2005) (10% reduction of all bills for vague entries like "legal research").

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

5

### C.      Plaintiffs' hours must be reduced for entries obscured by redaction

Plaintiffs cannot recover fees for time entries obscured by redaction. A party "is not allowed to petition the Court for fees but hide from the public the basis for its request." *Cognizant Tech.*, 2014 WL 3885868 at *3 (deducting 100% of redacted fees).

Exhibit 5 lists 95 entries that cannot be evaluated for reasonableness because the entire narrative was redacted, and Exhibit 6 lists 536 entries that cannot be evaluated because the narrative was redacted in substantial part. Of these, the 474 line-billed entries total $474,927.25 and should be reduced by 100%. The remaining 157 block-billed entries total $268,781.50 and should be reduced per footnote 2.

### D.      Plaintiffs have recorded time in improper increments

Some firms chose to record their time in quarter-hour increments rather than in six-minute increments. This type of billing inflates time records because counsel bill a minimum of 15 minutes for every task, even those that likely took much less time. *Welch*, 480 F.3d at 949.

Exhibit 7 lists 5191 entries where firms have recorded their time in quarter-hour increments. These entries represent 13,539 hours and $6,652,883.75. These entries should be reduced by 20%, for a reduction of $1,330,576.75. *Welch*, 480 F.3d at 948-49.

This issue is likely more pervasive than indicated by Exhibit 7. Exhibit 8 identifies the 12 timekeepers whose time entries always end in .0, .3, .5 or .8, suggesting that they may have rounded up their time entries from .25 and .75 to .3 and .8 to avoid a penalty for quarter-hour billing. These 2310 entries constitute 1882.60 hours and $802,228.25 and should similarly be reduced by at least 20%, for a reduction of $160,445.65.[8]

## II.      PLAINTIFFS SEEK TO RECOVER IMPERMISSIBLE FEES

The starting point for determining the amount of reasonable fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, also known as the lodestar.[9] *See Hensley*, 461 U.S. at 433; *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

---

[8] *See F.T.C. v. Nat'l Bus. Consultants, Inc.*, No. 89-1740, 2007 WL 4532203, at *3 (E.D. La. Nov. 16, 2007) ("If rounding up to quarter-hour segments is not authorized, it is equally inappropriate to round up to segments of three-tenths or half of an hour.").

[9] The NCAA does not challenge plaintiffs' counsel's hourly rates, which the exception of the

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

6

978 (9th Cir. 2008). In most cases, a properly calculated lodestar figure is presumptively a reasonable fee award, but the court may adjust the lodestar to account for other factors that are not subsumed within it. *Camacho*, 523 F.3d at 978.

Plaintiffs' counsel is required to exercise "billing judgment" and may only recover hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 (counsel must exclude "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours"); *Navarro*, 2005 WL 2333803 at *11. They cannot recover for hours for time spent on damages, the jury trial or press relations; for unrelated and unsuccessful claims; for related and unsuccessful claims that are disproportionate to the success of the litigation; for hours related to the dismissed defendants Electronic Arts and Collegiate Licensing Company; for hours spent soliciting the court or moving to be appointed lead counsel; for clerical work; for hours inflated by inefficient practices; for overstaffing; or for timekeepers who did not contribute to the success of the case.

A.    **Plaintiffs failed to remove all fees that they concede are not recoverable**

Plaintiffs concede that they cannot recover certain categories of activities and claim that they have excised "time concerning damages claims; the pursuit of a damages class under Rule 23(b)(3); draft jury instructions, voir dire, and questionnaires; time spent preparing this fees application; and even most time related to press releases, interviews and the like." Dkt. 341 at 12. Their brief does not explain how they segregated these entries from their fee request nor the total amount removed, and a review of the submitted time shows that plaintiffs failed to completely remove these impermissible time entries, as well as other impermissible entries, including those for time with focus groups or mock trials. This demonstrates a failure of billing judgment.

Exhibit 9 has 329 entries related to the jury trial that should have been removed. Exhibit 10 has 243 entries for media interactions. Exhibit 11 has 108 entries for damages. Of these, 285 line-billed entries cannot be recovered, as plaintiffs have conceded, for a reduction of $555,561.50. The remaining 345 block-billed entries total $1,041,394.25 and must be reduced per

inefficient staffing argument stated in Section II.F.1.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

7

footnote 2.[10]

### B.   Plaintiffs may only recover fees related to their successful claim

Plaintiffs may only recover fees related to their successful claim. *Hensley*, 461 U.S. at 434-35. Where, as here, a plaintiff has requested fees unrelated to its successful claims, the court must ask two questions. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley,* 461 U.S. at 434. "The limited success determination has two components: first, the court must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 224 (9th Cir. 2013).

Achieving "an excellent result on one successful claim doesn't work to resurrect the hours her lawyers spent on unsuccessful claims; under *Hensley*, the fee awarded cannot include those hours." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

### 1.   Time related to unsuccessful and unrelated claims must be deducted

Plaintiffs may not recover for time related to claims that are both unsuccessful and unrelated to successful claims. *Hensley*, 461 U.S. at 435. Unsuccessful claims include both claims that the court or jury rejected and those the plaintiffs abandoned. *De Amaral v. Goldsmith & Hull*, No. 12-cv-03580-WHO, 2014 WL 1309954, at *4 (N.D. Cal. Apr. 1, 2014) (applying same standard to abandoned claims as to unsuccessful claims). To determine relatedness, courts consider whether there is a common core of facts or whether the claims are based on related legal theories. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). The focus is whether the unsuccessful and successful claims arose out of the same course of conduct. *Id.* at 1169 (citing *Schwarz*, 73 F.3d at 902-03).

Plaintiffs' only successful claim was for restraint of trade in violation of Section 1 of the

---

[10] By identifying these entries, the NCAA does not concede that these are the only entries related to these unrecoverable issues. Rather, these only are the entries most easily identified. As discussed below in Section II.B., plaintiffs have requested a substantial amount of fees related to their unsuccessful claims that would likely fit in these categories.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

8

Sherman Act. The Court found that:

> [T]he association's rule prohibiting student-athletes from receiving any compensation for the use of their name, images, and likenesses restrains price competition among FBS football and Division I basketball schools as suppliers of the unique combination of educational and athletic opportunities that elite football and basketball recruits seek. Alternatively, the rules restrain trade in the market where these schools compete to acquire recruits' athletic services and licensing rights.

Dkt. 291 at 94. In the successful claim, the Court found that the market participants are prospective and current student-athletes, that the transaction at issue is between prospective and current student-athletes and their schools, and that the market is one in which athletics services and licensing rights are exchanged for educational services.[11] This claim first appeared in the plaintiffs' August 31, 2012 class certification motion, *SAL* Dkt. 530; *SAL* Dkt. 639 at 1-10 (outlining changes in case theory), and was first pled in the Third Consolidated Amended Complaint ("TAC") on July 19, 2013. *SAL* Dkt. 832.

For the first three years of this litigation, plaintiffs pursued an entirely different case. They falsely claimed that the NCAA forced student-athletes to sign a "perpetual release" form; that the NCAA engaged in a series of vertical conspiracies with companies like EA and CLC to use that release to "boycott" former student-athletes; that the conspiracy resulted in multimedia revenue streams featuring the name, image and likeness of former student-athletes; and that these revenue streams did not include revenues earned in live broadcast. *See SAL* Dkt. 639 at 1-10 (outlining changes in case theory); *SAL* Dkt. 827 at 4:17-20 (Court stating that "starting with the sort of dispute about whether the plaintiffs changed their theory and whether anything needs to be done about that, the answer is yes, plaintiffs did change their theory, to some degree at least.").

It could not be clearer that the claims pursued for the first three years of this litigation are not related to the single claim on which plaintiffs were successful. The original claims did not arise out of the same course of conduct – the prohibition of compensation for name, image and licensing rights of *current* student-athletes versus a group boycott of *former* student-athletes – and indeed plaintiffs' counsel spent the first three years of this litigation specifically and

---

[11] By reciting the Court's findings here, the NCAA does not agree with or endorse them.

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

9

1  repeatedly disavowing any challenge to rules affecting current student-athletes. *See SAL* Dkt. 639

2  at 1 ("We don't claim rights to be compensated for appearing in live broadcasts or playing on the

3  field, the amateur principles that have been so hallowed") (quoting plaintiffs' counsel on

4  February 8, 2012). This is especially obvious when one considers the pre-TAC named plaintiffs.

5  Before July 2013, every named plaintiff was a former student-athlete. None of them was a current

6  participant in the "college education market" ultimately identified by the court, nor subject to

7  NCAA bylaws, when they filed their claims. And none of them would have received any relief

8  under the injunction ultimately proposed by the plaintiffs, Dkt. 252-1, or did receive any relief

9  under the permanent injunction granted by the court. Dkt. 292.[12]

10       In *New York v. Microsoft*, the D.C. District Court had the task of determining whether the

11  successful and unsuccessful antitrust claims were related. 297 F. Supp. 2d 15, 34 (D.D.C. 2003).

12  The court found that where the claims involved different products, markets and anticompetitive

13  conduct from the claims upon which the plaintiff established liability, those claims were separate

14  and severable claims from the ones in which it prevailed. *Id. See also Schwarz*, 73 F.3d at 903-04

15  (finding claims unrelated when plaintiff's claims had different legal theories, complained of

16  different course of conduct and sought different relief).

17       The same is true here. The claim unsuccessfully pursued by the original plaintiffs accused

18  the NCAA and third parties like CLC and EA of using NCAA "perpetual release" forms to

19  "boycott" *former* student-athletes from participating in a post-graduation "collegiate licensing"

20  market.[13] Dkt. 639 at 1-10. The claim successfully pursued by the post-2012 plaintiffs, in

21  contrast, accused NCAA members of using NCAA rules to illegally restrain *current* student-

22  athletes from selling their "licensing rights" to their schools in a pre-graduation "college

23  education" market. These two theories of liability involved different plaintiffs; different markets;

24

---

25  [12] While the proposed injunction and the permanent injunction both make reference to former student-athletes, the Court found that "former student-athletes are already permitted to receive

26  compensation for the use of their names, images, and likenesses." Dkt. 291 at 46. Nothing has changed for former student-athletes as a result of this lawsuit.

27  [13] Indeed, the Court specifically found that "no current or former student-athletes are actually deprived of any compensation for game rebroadcasts or other archival footage," Dkt. 291 at 77,

28  two of the products that were central to plaintiffs' first theory of the case.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

10

1  different alleged wrongdoing; and different defendants. The only thing they had in common was

2  the NCAA as a defendant. That is not nearly enough to justify the plaintiffs' demand for fees

3  related to the unsuccessful and abandoned post-graduation "perpetual release" claims they

4  pursued on behalf of the original named plaintiffs. Nor are they entitled to any fees related to any

5  work done on the original plaintiffs' behalf that was supposedly related to claims that plaintiffs

6  pursued at trial, since those plaintiffs abandoned their damages claims before trial and, as former

7  student-athletes, neither had standing to seek, nor any ability to benefit from, the injunctive relief

8  entered by the Court. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 at 545 (9th Cir. 2013).

9       As these claims are unrelated, plaintiffs cannot recover hours related to the unsuccessful

10  claim. Accordingly, plaintiffs may not recover for any time billed prior to the filing of the class

11  certification motion on August 31, 2012. Exhibit 12 lists the 22,490 pre-August 31, 2012 entries,

12  totaling 46,464.06 hours and $23,084,122.89.

13       In the alternative, plaintiffs were required to affirmatively demonstrate how work done on

14  the disparate pre-class certification claims had any relation to their sole successful claim, which

15  they have not done.

16          **2.**      **Plaintiffs' hours must be reduced for unsuccessful related claims**

17       Plaintiffs' recovery must also be reduced to reflect plaintiffs' limited success. "'[A]

18  reduced fee award is appropriate if the relief, however significant, is limited in comparison to the

19  scope of the litigation as a whole.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir.

20  2008) (quoting *Hensley*, 461 U.S. at 440).

21       Plaintiffs' goals in this lawsuit far exceeded their actual success. Plaintiffs sought

22  unsuccessfully to certify a damages class that their expert claimed would have been entitled to

23  between                . Ex. 13 at ¶ 8. Their requested injunction would have

24  covered issues like group licensing, unlimited compensation for use of name, image or likeness,

25  third-party endorsement deals, the term of scholarships, medical insurance, coverage of expenses,

26  family travel, and the NCAA definition of pay. Dkt. 252-1 at ¶ 1(a), (d)-(f). Instead, they were

27  able only to certify an injunctive class and to get injunctive relief that was far less than they

28  requested. Dkt. 292. No former student-athlete received any relief as a result of this lawsuit. Even

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

11

1   the class representatives who were current student-athletes at the time of filing the TAC received

2   no benefit, as they were all former student-athletes by the time of the August 8, 2014 injunction.

3   *See* Dkt. 832 at ¶¶ 212-233 (stating each was a rising senior in 2013-14). Given that plaintiffs

4   "'victory clearly fell short of [their] goal … it is unreasonable to grant [their] attorneys more than

5   a comparable portion of the fees and costs they requested." *McCown*, 565 F.3d at 1104-05.

6          The Ninth Circuit has criticized percentage adjustments for limited success, concluding

7   that limited success should be addressed by deducting specific hours. *Muniz*, 738 F.3d at 225

8   (citing *Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991)).[14] But "the impossibility of making an

9   *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust

10  the fee award in an effort to reflect such an apportionment." *Gracie v. Gracie*, 217 F.3d 1060,

11  1070 (9th Cir. 2000) (emphasis in original).

12         The NCAA requests that the following hours be deducted for plaintiffs' limited success:

13  •   all hours before the August 31, 2012 class certification motion, Ex. 12 (46,464.06

14      hours and $23,084,122.89);

15  •   80% of hours between September 1, 2012 and November 8, 2013[15], Ex. 14; and

16  •   all hours after November 8, 2013 related to damages, group licensing or live

17      broadcast, products like jersey or trading cards, monitoring the *Keller* litigation,

18

19  ---

[14] *But see Rodriguez v. Barrita*, No. C 09-04057 RS, 2014 WL 2967925, at *11-12 (N.D. Cal.
July 1, 2014) (20%); *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 486

20  (S.D.N.Y.) *aff'd*, 887 F.2d 408 (2d Cir. 1989) (20%); *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d
1244, 1251-52 (N.D. Cal. 2008) (Wilken, J.) (8%); *Muniz v. United Parcel Serv., Inc.*, No. C 09-

21  01987 CW, 2011 WL 3740808, at *14 (N.D. Cal. Aug. 23, 2011) *aff'd in part, vacated in part*,
738 F.3d 214 (9th Cir. 2013) (Wilken, J.) (10%).

22
[15] During this time – from the filing of the class certification motion until the Court's decision

23  denying the damages class – Plaintiffs' counsel was focused almost exclusively on its class
damages theory. Plaintiffs' 25 page class certification brief included a mere 17 lines of argument

24  related to the injunctive relief class, which cited no expert analysis or document evidence. *SAL*
Dkt. 530 at 24-25. At the class certification hearing, only 6 pages of the 68 page hearing

25  transcript discussed the injunctive class, almost entirely regarding EA and CLC's lack of
participation in plaintiffs' new theory and the fact that no plaintiff could represent an injunctive

26  class of current student-athletes. *SAL* Dkt. 827 at 58:10-63:20 (discussing EA and CLC at 59:21-
61:24 and discussing lack of current student-athlete class representative at 62:2-63:20). Given this

27  focus on damages issues, it is reasonable to conclude that the vast majority of plaintiffs' counsel's
work between September 1, 2012 and November 8, 2013 was devoted to their failed class

28  damages theory. A substantial reduction in these hours is therefore appropriate.

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

12

time related to any specific plaintiff,[16] or other unsuccessful claims, Ex. 15.[17] Totaling Exhibit 12, Exhibit 14 and the post-November 8, 2013 portion of Exhibit 15, the reduction for plaintiff's limited success is $32,835,828.85.

Alternatively, the NCAA requests at least an overall 50% reduction of requested fees because of plaintiffs' limited success.[18]

### 3.    Plaintiffs cannot recover hours related to state law claims

Plaintiffs request fees related to their unsuccessful state law claims for unjust enrichment and accounting. Ex. 16. They have stated no basis for doing so, as the Clayton Act does not provide for fees for state law causes of action. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1216 (3d Cir. 1978) ("There is no authority to include within the fee under the Clayton Act compensation for work done in connection with the plaintiff's separate state law claim.").

Moreover, plaintiffs were clearly unsuccessful on these claims, as they abandoned them before trial. *See De Amaral*, 2014 WL 1309954 at *4; *Microsoft*, 297 F. Supp. 2d at 35. These claims were not related to the successful claims. To the extent that they were sufficiently developed for there to be any understanding of their bases, they were related to the original unrelated and unsuccessful claim.

Exhibit 16 lists 97 entries with time related to the state law claims. Of these, the 43 line-billed entries cannot be recovered, for a reduction of $63,959.50. The remaining 54 block-billed entries total $119,416.50 and should be reduced per footnote 2.

### C.    Plaintiffs' hours must be reduced for work done against EA or CLC

---

[16] As discussed above, no class representative received any relief from this litigation and no time related to them should be recovered. However, Exhibit 15 excludes time related to the testimony of named plaintiffs at trial.

[17] Exhibit 15 also lists time entries before August 31, 2012 and between September 1, 2012 and November 8, 2013 that fall into this category.

[18] *Iguacu v. Filho*, No. C 09-0380 RS, 2014 WL 3668574, at *6-7 (N.D. Cal. July 23, 2014) (reducing lodestar by 50% where plaintiff recovered less than $500,000 on alleged $10 million claim) (applying California law); *Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 152-53 (2d Cir. 2008) (affirming 50% reduction when plaintiff failed to achieve her primary aim); *see also Microsoft*, 297 F. Supp. 2d at 36 (ordering a 30% reduction in fees where plaintiffs' "efforts were obviously aimed at a more robust result" but the case was "unprecedented," "involved novel and complex legal issues and a vast factual record," and "Microsoft was a formidable adversary").

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

13

1    Plaintiffs cannot recover fees for hours spent litigating against EA or CLC. A non-settling

2    defendant cannot be liable for the litigation fees and expenses of a plaintiff pursuing claims

3    settled against a settling defendant when those settled claims did not contribute to the plaintiff's

4    success against another non-settling defendant.[19]

5    Plaintiffs implicitly agree that they should not be compensated for time spent litigating

6    against EA and CLC as they claim that "each accompanying declaration segregates time spent

7    principally litigating against, and obtaining discovery from, EA and CLC." Dkt. 341 at 13. But

8    plaintiffs provide no information about how this segregation was done and they did not actually

9    reduce their lodestar by the $3,554,108.15 that they admit was spent against EA and CLC.[20] Ex.

10   17. Moreover, plaintiffs failed to segregate many other entries that relate to EA or CLC. Ex. 18.

11   Hours related to EA and CLC are not related to plaintiffs' successful claim. EA and CLC

12   have nothing to do with the college education market the court identified or the relationship

13   between the NCAA, its member institutions and student-athletes. Indeed, in the Court's Findings

14   of Facts and Conclusions of Law, EA is mentioned only in connection with the failed "group

15   licensing" claim, and CLC is barely mentioned at all. Dkt. 291 at 16-17, 75 (EA), 6 (CLC).

16   Exhibit 19 lists 5654 submitted entries related to EA or CLC.[21] Of these, 2744 line-billed

17

18   ───────────────

[19] *See Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988) (approving district
court's reduction in fees to account for unsuccessful claims against other defendants); *see also*
19   *Baughman* , 583 F.2d at 1214 (reducing lodestar by removing litigation fees expended in pursuit
of antitrust claims against a settling defendant that were unrelated to successful claim against
20   non-settling defendant); *Davis*, 2012 WL 4462520 at *16 (reducing pre-settlement hours by 50%
to reflect time attributable to settling defendant); *Gulfstream III Assocs., Inc. v. Gulfstream*
21   *Aerospace Corp.*, 789 F. Supp. 1288, 1297 (D.N.J. 1992).

22   [20] Plaintiffs' argument that the NCAA should pay more than its fair share of the attorney fees
because EA and CLC have settled is mistaken. Dkt. 341 at 13. The fact that plaintiffs' counsel
23   fear they will not be able to adequately recover their fees from their negotiated settlement does
not give them leave to request additional fees from the NCAA or ask the NCAA to pay fees
24   properly attributed to work against EA or CLC. *Baughman*, 583 F.2d at 1214 ("We do not believe
that a defendant may be required to compensate a plaintiff for attorney hours devoted to a case
25   against other defendants who settle … To require such compensation would be to allow a fee to a
plaintiff for hours expended in an unsuccessful quest to establish liability, which of course must
26   be established before a fee may be awarded."); *Gulfstream,* 789 F. Supp. at 1297.

[21] This is certainly an understatement, as many entries are too vague to make a determination as
27   to which defendant the work was directed. *See Simmonds v. New York City Dept. of Corr.*, No. 06
Civ. 5289 (NRB), 2008 WL 4303474, at *8-9 (S.D.N.Y. Sept. 16, 2008) (15% reduction when
28   time was too vague to be ascribed to one defendant).

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

14

entries cannot be recovered, for a reduction of $2,196,549.65. The remaining 2910 block-billed entries total $3,885,905.10 and should be reduced per footnote 2.[22]

### D.   Plaintiffs cannot recover hours spent soliciting plaintiffs or competing for lead counsel

Plaintiffs cannot recover time spent soliciting new plaintiffs for this case. A private client would not pay for his own solicitation, so a prevailing plaintiff may not recover attorneys' fees for such activities from his adversary. *Navarro*, 2005 WL 2333803 at *11 ("Hours not properly billed to one's client are not properly billed to one's adversary").[23]

Exhibit 20 lists 391 entries related to soliciting clients. Of these, 210 line-billed entries cannot be recovered, for a reduction of $184,358.50. The remaining 181 block-billed entries total $212,468.75 and must be reduced per footnote 2.

Time spent sparring with other firms over the lead counsel role or motion practice regarding the same should not be recoverable. Law firms do not bill their clients when they pitch their services; plaintiffs should not recover hours when they pitch the court. Similarly, time spent contesting whether this case was properly consolidated with the *Keller* case should also not be recovered, nor should time related to the task of managing the financial or time contributions of the 33 firms involved in the litigation. Exhibit 21 shows 763 entries spent on such work. Of these, 433 line-billed entries cannot be recovered, for a reduction of $116,576.25. The remaining 330 block-billed entries total $349,482.55 and should be reduced as stated in footnote 2.

### E.   Plaintiffs cannot recover hours for clerical work

Plaintiff cannot recover time for clerical or secretarial work when performed by an attorney or a paralegal. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir.

---

[22] Even if the claims against EA and CLC were related to the successful claims, plaintiffs are still not entitled to time specific to EA and CLC as defendants. *Cotton*, 889 F. Supp. 2d at 1178 (finding that even when claims are related, plaintiff cannot recover for work related to other defendants' initial disclosures, exhibit lists, and experts).

[23] *See Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 435 (11th Cir. 1999) ("time spent procuring potential plaintiffs is obviously not expended on the litigation because until the attorney has a client, there is no case to litigate"); *Yamada v. Weaver*, No. 10-00497, 2012 WL 6019121, at *4 n.5 (D. Haw. Nov. 30, 2012) (soliciting potential plaintiffs was "time not spent in this litigation"); *Parks v. Eastwood Ins. Servs., Inc.*, No. SACV02-507GLTMLGX, 2005 WL 6007833, at *5 (C.D. Cal. June 28, 2005) *aff'd in part, rev'd in part on other grounds and remanded*, 240 F. App'x 172 (9th Cir. 2007).

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

15

1  1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Tasks that cannot be

2  recovered include creating indices, filing documents with the court, organizing documents within

3  an office, updating a calendar, copying, printing, and mailing, or notifying client of hearings,

4  scheduling or communications with court staff, or saving PDF files.[24]

5      Exhibit 22 lists the 6086 entries related to clerical tasks. Of these, 3571 line-billed entries

6  cannot be recovered, for a reduction of $1,179,696.50. The remaining 2516 block-billed entries

7  total $1,459,067.15 and must be reduced per footnote 2.

8      **F.    Plaintiffs cannot recover hours generated by inefficient practices**

9      Plaintiffs' counsel had an obligation to assign work in an efficient manner. *SAL* Dkt. 146

10  at ¶ 1 (instructing class counsel to "promote efficient prosecution of this litigation and to avoid

11  duplication of work"). Their time records reveal a disregard for this order, as expensive partners

12  and other senior attorneys did associate-level work, duplicated work across offices, spent

13  thousands of hours conferencing among themselves, and billed excessive hours on simple tasks.

14  *See Simmonds*, 2008 WL 4303474 at *7-8 (40% reduction for inefficient work between firms).

15      **1.    Plaintiffs assigned work inefficiently**

16      Plaintiffs' records show that plaintiffs impermissibly chose to assign associate-level work,

17  like document review, legal research and draft writing, to more expensive partners and other

18  senior attorneys. *See Cognizant Tech.*, 2014 WL 3885868 at *4.[25] Indeed, partners and senior

19  attorneys billed 18,986.75 hours more than associates.

20      Exhibit 23 identifies 3491 billing entries in which senior lawyers did work that could have

21  more properly been assigned to associates. Of these, 1795 line-billed entries total $3,767,062.95

22  and should be reduced by 36%, for a total reduction of $1,356,142.66.[26] The remaining 1696

23  _____

24  [24] *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101-02 (N.D. Cal. 2008)
(Wilken, J.); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099-100 (D. Haw. 2010); *Navarro*,
2005 WL 2333803 at *16.

25  [25] *See also Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 5:12-cv-04009-EJD, 2014 WL
26  4273358, at *10 (N.D. Cal. Aug. 29, 2014) (nothing that "[f]ew clients would stand for such an
inefficient allocation of time" where roughly two-thirds of time was billed by attorneys with rates
27  over $500 per hour because of class counsel's choice to involve 10 separate law firms).

28  [26] The district court may properly use the simplicity of a given task as justification for the
reduction in rate for the hours spent performing that task or as justification for a reduction in the

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

16

block-billed entries total $4,398,390.59 and should be reduced as stated in footnote 2.

In addition to the entries in Exhibit 23, plaintiffs' counsel requests fees for document review. Ex. 24. Looking at the line-billed entries only, plaintiffs request a rate of $385 per hour for a task generally completed by contract attorneys and paralegals. The hourly rate should be reduced by 74%, to reflect a more appropriate $100 per hour rate. *Moreno*, 534 F.3d at 1116 (approving of $75 per hour rate for work that should have been done by paralegals). The 1321 line-billed entries total $2,651,177.35 and should be reduced by $1,961,871.24. The 648 block-billed entries total $1,065,358.50 and should be reduced per footnote 2.[27]

### 2. Plaintiffs cannot recover hours from overstaffing

Plaintiffs have submitted time requests that reveal rampant overstaffing without any explanation for this practice. For example, 16 timekeepers traveled from across the country to attend the class certification hearing, at which only one plaintiffs' attorney spoke. Ex. 26. At trial, 11 timekeepers billed time for attendance without recording any substantive trial work. Ex. 27. The Ninth Circuit states that "courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (internal citations omitted).[28] General allegations that "Class Counsel exercised sound judgment in allocating resources" are insufficient. *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1191-92 (C.D. Cal. 2009).

For overstaffing at depositions, hearing and trial, Exhibits 25, 26 and 27 list a total

---

overall rate. *Moreno v. City of Sacramento*, 534 F.3d 1106 1116 (9th Cir. 2008). In *Moreno*, the Ninth Circuit held that it was appropriate to reduce an hourly rate from $300 to $75 (paralegal's rate) to reflect the simplicity of a task. *Id.* Here, the rate should be reduced from the median partner or senior attorney's rate of $665 to the median associate rate of $420, for a reduction of 36%. *See In re Music Merchants, Inc.*, 208 B.R. 944, 948 (B.A.P. 9th Cir. 1997) (affirming 35% reduction of partner rate for associate work).

[27] Exhibit 24 is a conservative estimate as it does not include review of "hot documents."

[28] *See also Tuttle*, 2012 WL 3257799 at *2 ("Ordinarily, no more than one attorney and one paralegal need be present at a deposition; more will normally be deemed excessive. Ordinarily, no more than one attorney need attend a law-and-motion hearing; more will normally be deemed excessive."); *Davis*, 2012 WL 4462520 at *12-13 (reducing trial time by 15% when three senior attorneys attended every day of trial).

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

17

1  requested reduction of $1,228,792.00, which is calculated per footnote 2.  *Id.*

2  **3.    Plaintiffs' hours should be reduced for conferencing time**

3  Over a quarter of the time requested by plaintiffs is related to conferencing, both within

4  and between firms. Ex. 28. Plaintiffs cannot recover fees for unnecessary and duplicative

5  conferencing and meetings between lawyers or law firms, *Welch*, 480 F.3d at 949, and blanket

6  assertions that hours spent conferencing were necessary are insufficient. *Cruz*, 601 F. Supp. 2d at

7  1192-93. This excessive conferencing is clearly a result of plaintiffs' inefficient decision to

8  imprudently staff this case with nearly 400 individuals from 33 firms.[29]

9  Exhibit 28 identifies 9799 conferencing entries .[30] Of these, 3933 line-billed entries total

10 $2,983,105.15 and should be reduced by 50%, for a reduction of $1,491,552.58. *Hernandez v.

11 Grullense*, No. 12-CV-03257-WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) (50%

12 reduction); *see Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 WL 5718440, at *4 (N.D.

13 Cal. Oct. 21, 2013) (reducing conferencing time billed by three firms, including Hausfeld, by

14 72.6%). The remaining 5866 block-billed entries total $11,378,088.30 and should be reduced per

15 footnote 2.

16 **4.    Plaintiffs' hours should be reduced for excessive time entries**

17 Plaintiffs have requested time for work that was duplicated at multiple firms. For example,

18 every time a new entry was filed in the court's docket, multiple timekeepers at multiple firms

19 downloaded the ECF notice and circulated it, duplicating each other's work. Ex. 29 (also

20 identifying duplicative review of news articles). Counsel excessively prepared for depositions and

21 prepared redundant deposition and hearing summaries. Ex. 30.[31] Duplication of effort by co-

---

22 [29] This impractical decision is consistent with former Hausfeld partner King's allegations, *King*,
23 No. 13-0237, Dkt. 1 at ¶ 55 (Hausfeld "personally invited a truly staggering number of firms to
   join the case as his co-counsel, always as some form of political deal relating to other matters. …
24 This overstaffing resulting in massive inefficiency and a stunning amount of attorney time being
   spent on the case."), as well as the claims of the *Keller* lead counsel, *SAL* Dkt. 244 at 4
25 (complaining that Hausfeld had overstaffed, calling it "an extraordinarily inclusive approach,
   involving over a dozen firms in meetings and conference calls").

26 [30] This includes unnecessary time for travel to meetings that others participated in by phone.

27 [31] As an example, counsel billed 861.5 hours and $389,392.75 to have attorneys at least four
   different firms prepare for the deposition of Greg Shaheen. Four separate timekeepers at four
28 different firms then collectively billed $28,181.50 to separately summarize the deposition. Ex. 31.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

18

counsel necessitates a reduction of the hours claimed. *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989); *Cruz*, 601 F. Supp. 2d at 1191-92.

Exhibits 29 and 30 identify the redundant billing entries. The 2315 line-billed entries should be reduced by 40%, a reduction of $661,812.96. *See Simmonds*, 2008 WL 4303474, at *8 (reducing by 40% for "inefficiencies resulting from the co-counsel arrangement and from the apparent willingness to conduct the litigation in an undisciplined manner"). The 1723 block-billed entries total $3,693,202.55 and should be reduced as stated in footnote 2.

> ### 5. Plaintiffs' hours should be reduced for work that took too long or did not add value to the case

Plaintiffs' hours should be reduced for work that took too long to complete. For example, plaintiffs recorded 269 entries related to filing pro hac applications with this court. Ex. 32. The court has held that .1 hour of paralegal time is the correct amount of time to spend on two pro hac applications. *Cognizant Tech.*, 2014 WL 3885868 at *3-4 (finding .1 hour of paralegal time to be the correct amount to bill for two pro hac vice applications in this court). The 150 line-billed entries total 98.80 hours. Ex. 32. This should be reduced to 12.75, for a reduction of 87% and a corresponding reduction of $36,070.13.[32] The 119 block-billed entries total $95,685.25 and should be reduced per footnote 2.

Plaintiffs also recorded 750 entries for preparing and filing "copycat" complaints. Ex. 33. These complaints added no value and are for the most part nearly identical to the *O'Bannon* complaint.[33] The 399 line-billed entries cannot be recovered, for a reduction of $228,250.50. The remaining 351 block-billed entries total $413,672.00 and should be reduced per footnote 2.

Additionally, plaintiffs billed hundreds of hours that did nothing to move the case forward. They request hundreds of hours related to challenges to confidentiality designations and privilege determinations, work that had no impact on the outcome of this case. Ex. 34 and 35. Exhibit 36 further identifies thousands of entries that can only be described as "churning" – work

---

[32] There are 255 attorney timekeepers in this case. Even if all of them had filed for pro hac vice admission, they would be entitled to only 12.75 hours under *Cognizant*.

[33] *See, e.g., In re Cendent Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) ( "such copycat complaints do not benefit the class"); *see also In re Tut Systems, Inc. Sec. Litig.*, No. C 01-2659 CW, 2007 WL 1722420, at *3 (N.D. Cal. June 13, 2007).

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

19

that did nothing to advance the case but for which plaintiffs' counsel now claims fees. *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (attorneys' work must be "both useful and of a type ordinarily necessary to advance the litigation"). The 3132 line-billed entries from these exhibits total $1,526,098.20 and should be reduced in their entirety. The remaining 864 block-billed entries total $1,260,207.95 and should be reduced per footnote 2.

### G.       Plaintiffs cannot recover hours for timekeepers who did not contribute

Plaintiffs cannot recover hours spent by timekeepers whose work did not contribute to plaintiffs' success. *Armstrong*, 318 F.3d at 971. Plaintiffs' time records show at least 62 attorneys whose time records do not show any contribution of actual work. Ex. 37. For example, these individuals billed for training on litigation software or for time "getting up to speed" on a case they never worked on. Exhibit 37 totals $411,633.00 and should be reduced in its entirety.

### H.       Plaintiffs have failed to exercise billing judgment

As demonstrated conclusively through this section, plaintiffs' counsel failed to exercise billing judgment. Plaintiffs' fee requests should therefore be subject to an additional 10% reduction to account for any additional "excessive, redundant, or otherwise unnecessary" hours. *Rosenfeld v. U.S. Dept. of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012) (10% reduction after all other deductions to account for "inefficiency, waste, and duplication").

## III.   THE COURT SHOULD APPLY A NEGATIVE MULTIPLIER

Plaintiffs weakly argue that their lodestar should receive a positive multiplier because the case "carried an exception risk of defeat and required a tremendous amount of time and labor that in turn precluded other employment."[34] Dkt. 341 at 16. They are wrong. Plaintiffs are not entitled to an increase in their fees; rather, if anything, a negative multiplier should be applied to reflect plaintiffs' limited success.

"[T]he court may adjust the lodestar upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including … the benefit obtained

---

[34] In reality, only four of the 396 timekeepers billed more than 3000 hours over the five years of the case. About 75% of the timekeepers billed less than 100 hours over the course of the case, and 88.1% billed fewer than 500 hours, hardly precluding them from taking on additional work. Ex.38.

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

20

for the class." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). The Ninth Circuit has held that foremost among these considerations is the benefit to the class. *Id.* at 942; *Hensley*, 461 U.S. at 436 ("Again, the most critical factor is the degree of success obtained."); *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist*, 489 U.S. 782, 790 (1989) ("the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee") (emphasis in original).

As explained above, plaintiffs achieved only a limited victory for their clients. No damages were awarded, and no former student-athlete will receive any additional benefit as a result of the court's injunction. In similar cases, courts have chosen to apply substantial reductions to the lodestar.[35] The Court should apply a negative multiplier.

## IV.   PLAINTIFFS SEEK IMPERMISSIBLE COSTS AND EXPENSES

Plaintiffs have submitted a request for $5,295,062.20 in "Clayton Act recoverable costs and expenses." Dkt. 341 at 1. This must be reduced by at least $4,916,282.68. Ex. 2

The Ninth Circuit has held that that the "only costs recoverable by a successful plaintiff in a private antitrust suit are those which are normally allowable under 28 U.S.C. § 1920 and Rule 54(d)." *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 (9th Cir. 1964). And this district has stated that in antitrust cases "federal law limits recovery of expert witness fees to $40 per witness per day, and does not permit courts any discretion to award non-taxable costs." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2014 WL 1991269, at *2 (N.D. Cal.

---

[35] *See Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (50% reduction for $25,000 judgment on $5 million claim); *Moralez v. Whole Foods Market, Inc.*, No. C 12-01072, 2013 WL 3967639, at *6 (N.D. Cal. July 31, 2013) (80% reduction for modest damages and no injunctive relief). Plaintiffs' cited cases do not support a different outcome. Dkt. 341 at 16. In *Morales v. City of San Raphael*, 96 F.3d 359, 363-64 (9th Cir. 1996), the Ninth Circuit merely raised the question of whether what it termed "significant nonmonetary results" obtained by a civil rights plaintiff might warrant an adjustment of the lodestar; here, plaintiffs' results do not constitute such a result. In *Chalmers*, 796 F.2d at 1212-13, the Ninth Circuit said that the risk of not prevailing or not recovering fees would only justify an upward adjustment in "rare cases" and that "recent Supreme Court authority strongly suggests than an enhanced award is justified only in the extraordinary case"; plaintiffs have given no reason this is such a case. And in *Campbell v. National Passenger Railroad Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010), only recites the "extraordinary case" language from *Chalmers* and did not find that the plaintiff was entitled to any multiplier.

DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES
Case No. 09-cv-3329-CW

21

1    May 12, 2014) (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995)).[36]

2        In some cases, courts have expanded the definition of "reasonable attorney's fees" to

3    include "reasonable out-of-pocket litigation expenses that would normally be charged to a fee

4    paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trs.*

5    *of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253,

6    1257 (9th Cir. 2006). But these expenses cannot include costs, like expert fees, that are a category

7    of expense distinct from attorney's fees. *Id.* at 1258. These expenses can only be sought when it is

8    the "'prevailing practice in a given community' for lawyers to bill those costs separately from

9    their hourly rates." *Id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 286-87 (1989)).

10       Finally, plaintiffs' taxable costs are limited to those permitted by the Clerk. Dkt. 342.

11       **A.      Plaintiffs seek non-taxable costs to which they are expressly not entitled**

12       Under well-settled law, plaintiffs cannot recover non-taxable costs related to expert fees,

13   witness fees for named plaintiffs or pro hac vice applications. These requested costs cannot be

14   awarded, and their requested costs and expenses must be reduced by $3,711,553.37.

15       **1.      Plaintiffs cannot recover expert fees**

16       Plaintiffs seek $3,655,696.39 in expert fees that they claim they are entitled to under the

17   Clayton Act. Ex. 39. This is clearly wrong. In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482

18   U.S. 437, 445 (1987)the Supreme Court held that "absent explicit statutory or contractual

19   authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are

20   bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." (finding court had no authority

21   to award expert witness fees beyond those permitted by § 1821 absent statutory or contractual

22   authority).[37] The Clayton Act does not give this authority, merely allowing for recovery of "cost

---

[36] *See also W. Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 85-87 (1991) (stating that § 1821 and § 1920 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further"); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300-301 (2006) (finding "costs" limited to categories in § 1920).

[37] *Crawford* goes on to state: "We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees." *Id. See also Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 899 F.2d 951, 981-82 (10th Cir. 1990) (collecting cases stating expert fees are not recoverable in excess of 28 U.S.C. § 1920 and Rule 54(d) in private antitrust cases).

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

22

1   of suit, including a reasonable attorney's fee." 15 U.S.C. § 26. And the Ninth Circuit has followed

2   the Supreme Court in holding that "'reasonable attorney's fees' do not include costs that, *like*

3   *expert fees*, have by tradition and statute been treated as a category of expenses distinct from

4   attorney's fees" that therefore cannot be awarded as out-of-pocket expenses. *Redland Ins. Co.*,

5   460 F.3d at 1258 (citing *W. Va. Univ. Hosp.*, 499 U.S. at 99-100). For these reasons, plaintiffs

6   may not recover any of these fees, either as costs or expenses.[38]

7                    **2.      Plaintiffs cannot recover witness fees for named plaintiffs**

8            Plaintiffs claim $50,221.38 in trial and pre-trial witness fees related to the testimony of the

9   named plaintiffs in this case. Ex. 40. But these costs are not recoverable – "the expenses of

10  witnesses who are themselves parties are not taxable." *Evanow v. M/V Neptune*, 163 F.3d 1108,

11  1118 (9th Cir. 1998); *see also Fortson v. Marriott Int'l, Inc.*, No. CV 11-01454 LB, 2013 WL

12  1832411, at *11 (N.D. Cal. May, 1, 2013) (same). Additionally, since witness fees are a cost

13  separate from attorneys' fees, they cannot be recovered as expenses. *See Redland Ins.*, 460 F.3d at

14  1258. Plaintiffs cannot recover any of these costs.

15                   **3.      Plaintiffs cannot recover pro hac vice application fees**

16           Plaintiffs seek $5635.60 in pro hac vice application fees. Ex. 41. These costs are not

17  recoverable. The Ninth Circuit has held that pro hac vice fees are not recoverable as taxable costs,

18  *Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013), and this

19  district has held that they are not out-of-pocket expenses. *Competitive Techs. v. Fujitsu Ltd.*, No.

20  C-02-1673 JCS, 2006 WL 6338914, at *4 (N.D. Cal. Aug. 23, 2006).

21           **B.      Plaintiffs have failed to carry their burden with regard to expenses**

22

23  [38] Plaintiffs' cases are distinguishable. As discussed above, they are contrary to Supreme Court,
    Ninth Circuit and Northern District of California law. Additionally, the district court opinion in

24  *Hasbrouck v. Texaco, Inc.*, 631 F. Supp. 258 (W.D. Wash. 1986) *aff'd in part, rev'd in part* 879
    F.2d 632 (9th Cir. 1988) preceded the Supreme Court's 1987 decision in *Crawford*, and neither

25  the district court nor the appellate court addressed the key question of whether the plaintiff was
    entitled to expert witness fees as non-taxable costs. The court in *Automotive Products PLC v.*

26  *Tilton Engineering, Inc.*, No. CV 90-5500 KN (EX), 1993 WL 660146 (C.D. Cal. Nov. 18, 1993)
    and *Automotive Products PLC v. Tilton Engineering, Inc.*, 855 F. Supp. 1101 (C.D. Cal. 1994)

27  unadvisedly relied on *Hasbrouck*. The remaining cases cited in support did not reach the question
    of expert fees (*Redland Ins.*, 460 F.3d at 1259) and permitted recovery of expert fees by express

28  statutory language (*Blackwell v. Foley*, 724 F.Supp.2d 1068, 1084 (N.D. Cal. 2010)).

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

23

Plaintiffs have failed to provide sufficient support for many of the out-of-pocket expenses they have requested. Their requested expenses must therefore be reduced by $869,702.77.

*Copying and printing expenses.* Plaintiffs request $143,542.49 for copying and printing. Ex. 42. Their submission is insufficient because plaintiffs failed to "provide the cost billed per page, the number of pages, [and] any information about the documents that were copied." *See Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *10 (N.D. Cal. June 5, 2013) (no printing expenses because court could not determine whether the costs were "allowable or reasonable"); *see also Banas*, 2014 WL 7051682 at *16 (50% reduction for failure to provide a breakdown or to explain why copying was necessary). Plaintiffs cannot recover this expense.

*Long Distance Travel Expenses.* Plaintiffs request long distance travel expenses. The bulk of these expenses have not been properly documented because plaintiffs failed to provide an itemized accounting, including the date, description, and cost of each expense. *Tuttle v. Sky Bell Asset Mgmt*, No. C 10-03588 WHA, 2012 WL 3257799, at *1 (N.D. Cal. Aug. 8, 2012) (information necessary for travel expenses). Without such proper documentation, the court cannot determine whether the expense is reasonable. *Id.* Additionally, plaintiffs request expenses that are unreasonable or excessive.[39] Plaintiffs may not recover $334,929.59 because of improper documentation, Ex. 43, and they may not recover an additional $156,703.13 because of the excessive or unreasonable nature of the expense, Ex. 44.

*Legal Research Expenses.* Plaintiffs request $173,629.51 for legal research expenses. Ex. 45. Plaintiffs should not be able to recover these expenses at all, as they have failed to provide "the amount of time devoted to legal research, or any break-down of the tasks that would require legal research," which would allow the court to determine whether these expenses were allowable or reasonable. *Cruz*, 2013 WL 2447862 at *10.

In the alternative, while reasonable charges for computerized research may be recovered as separate billing fees, such recovery is permitted only if separate billing for this expense is the

---

[39] *See LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, at *13 (N.D. Cal. Mar. 26, 2013); *HRPT Properties Trust v. Lingle*, 755 F. Supp. 2d 1225, 1242 (D. Haw. 2011); *Adderly v. National Football League Player's Ass'n*, No. C 07-00943 WHA, 2009 WL 4250792 (N.D. Cal. Nov. 23, 2009).

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

24

prevailing practice in the legal community. *Redland Ins.*, 460 F.3d at 1258-59. Plaintiffs have made no such showing via their conclusory statements, Dkt. 341-2 at 3, and their legal research costs should be reduced by 25%, for a reduction of $43,407.38. *See Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1046-47 (C.D. Cal. 2012) (25% reduction where there was no evidence of prevailing practice to charge the client for research without a reduction for overhead).

*Local Travel Expenses.* Plaintiffs request $4,148.02 in local travel expenses, Ex. 46, but have cited no authority that such expenses are allowable. *See Cruz*, 2013 WL 2447862 at *11 These expenses should not be permitted.

*Miscellaneous Expenses.* Plaintiffs request $56,750.03 for vague expenses, Ex. 47, that are not adequately identified in the documentation. *See Cruz*, 2013 WL 2447862 at *11. These expenses should not be permitted.

## C.   Expenses should be limited for the same reasons as stated above

Plaintiffs' expenses should be limited before August 31, 20012 and between September 1, 2012 and November 8, 2013 for the same reasons that their fees should be limited. *See Redland Ins. Co.*, 460 F.3d at 1257 (stating that expenses are part of attorney's fees). Exhibit 2 lists the necessary additional reductions to plaintiffs' expenses for the same reasons as stated above in Section II.B.1 and 2, which total $272,595.79.

## CONCLUSION

For the reasons stated above, the NCAA respectfully requests that plaintiffs' counsel's fees be reduced by $36,864,238.59 and their costs and expenses be reduced by $4,916,282.68.

Respectfully submitted,
SCHIFF HARDIN LLP
By: */s/ Robert J. Wierenga*
Robert J. Wierenga (SBN183687)
Dated: February 6, 2015          Attorneys for Defendant NCAA

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

25

**CERTIFICATE OF SERVICE**

I hereby certify that on _____, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the e-mail addresses registered.

By: */s/ Robert J. Wierenga*
      Robert J. Wierenga (SBN 183687)
      Attorneys for Defendant NCAA

40984-0012
AA\200117133.1

**DEFENDANT NCAA'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**
Case No. 09-cv-3329-CW

26