MICHAEL D. HAUSFELD (*pro hac vice*)
mhausfeld@hausfeld.com
SATHYA S. GOSSELIN (SBN 269171)
sgosselin@hausfeld.com
SWATHI BOJEDLA (*pro hac vice*)
sbojedla@hausfeld.com
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone:     (202) 540-7200
Facsimile:     (202) 540-7201

MICHAEL P. LEHMANN (SBN 77152)
mlehmann@hausfeld.com
BONNY E. SWEENEY (SBN 176174)
bsweeney@hausfeld.com
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104
Telephone:     (415) 633-1908
Facsimile:     (415) 358-4980

*Plaintiffs' Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR. on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (NCAA); ELECTRONIC ARTS, INC.; and COLLEGIATE LICENSING COMPANY,<br><br>Defendants. | Case No. 4:09-cv-3329 CW (NC)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>Judge:       Hon. Nathanael Cousins<br>Courtroom:   Courtroom A, 15th Floor<br>Trial:       June 9-27, 2014 |

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     ARGUMENT ......................................................................................................1

        A.    Plaintiffs' Reasonable Time Expenditures in Securing a Historic Victory .................1

              1.    State Law ........................................................................................3

              2.    EA and CLC ....................................................................................4

              3.    Case Administration.........................................................................5

              4.    "Secretarial" Matters .......................................................................5

              5.    Contributions of Co-Counsel ............................................................6

              6.    Mock Trial and Press Contact ..........................................................6

        B.    Plaintiffs' Sound Billing Practices, Detailed Documentation, and Exercise of
              Billing Judgment .........................................................................................7

        C.    Appropriate Staffing ................................................................................. 11

        D.    Reasonable Costs and Expenses................................................................. 13

III.    CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ACLU of Georgia v. Barnes*,
168 F.3d 423 (11th Cir. 1999) ................................................................................. 5

*Ansoumana v. Gristede's Operating Corp.*,
No. 00 Civ. 253, 2004 WL 504319 (S.D.N.Y. Jan. 7, 2004) ................................... 7

*Assembly of State of Cal. v. U.S. Dep't of Commerce*,
No. Civ. S-91-990, 1993 WL 188328 (E.D. Cal. May 28, 1993) ............................. 1

*Auto. Prods. PLC v. Tilton Eng'g, Inc*
855 F. Supp. 1101 (C.D. Cal. 1994) ....................................................................... 14

*Auto. Prods. PLC v. Tilton*,
No. CV 90-5500, 1993 WL 660146 (C.D. Cal. Nov. 18, 1993) ....................... 13, 14

*Awad v. Ziriax*,
No. CIV-10-1186, 2014 WL 1572804 (W.D. Okla. Apr. 17, 2014) ....................... 13

*Baughman v. Wilson Freight Forwarding Co.*,
583 F.2d 1208 (3d Cir. 1978) ................................................................................... 4

*Bobol v. HP Pavilion Mgmt.*,
No. C 04 00082 JW, 2006 WL 927332 (N.D. Cal. Apr. 10, 2006) .......................... 9

*Cabrales v. Cnty. of L.A.*,
935 F.2d 1050 (9th Cir. 1991) ................................................................................. 3

*Campbell v. Nat'l Passenger R.R. Corp.*,
718 F. Supp. 2d 1093 (N.D. Cal. 2010) ............................................................... 3, 8

*Chaid v. Glickman*,
No. C98-1004, 1999 WL 33292940 (N.D. Cal. Nov. 17, 1999) ............................ 11

*Cognizant Tech. Solutions v. McAfee*,
No. 14-01146, 2014 WL 3885868 (N.D. Cal. Aug. 7, 2014) ................................... 6

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
482 U.S. 437 (1987) .......................................................................................... 13, 14

*Cruz v. Starbucks Corp.*,
No. C-10-01868, 2013 WL 2447862 (N.D. Cal. June 5, 2013) ........................... 7, 8

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
No. C 06-4884, 2012 WL 273604 (N.D. Cal. Jan. 30, 2012) ................................ 10

*Cunningham v. Cnty. of L. A.*,
   879 F.2d 481 (9th Cir. 1988)................................................................... 4

*Darling Int'l, Inc. v. Baywood Partners, Inc.*,
   No. C-05-3758, 2007 WL 4532233 (N.D. Cal. Dec. 19, 2007)............................................. 10

*Davis v. City and Cnty. of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992).............................................................. 5, 7

*Davis v. Prison Health Servs.*,
   No. C 09-2629, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) .................................... 4, 8, 9

*De Amaral v. Goldsmith & Hull*,
   No. 12-CV-03580, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) ............................................ 3

*Democratic Party of Washington State v. Reed*,
   388 F.3d 1281 (9th Cir. 2004)............................................................ 10, 12

*Dixon v. City of Oakland*,
   No. C-12-05207, 2014 WL 6951260 (N.D. Cal. Dec. 8, 2014) ............................................. 7

*Fortson v. Marriott Int'l, Inc.*,
   No. CV 11-01454, 2013 WL 1832411 (N.D. Cal. May 1, 2013) ........................................... 8

*Found. v. Office of Dir. of Nat'l Intelligence*,
   No. C 07-05278, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ............................................ 9

*Fox v. Vice*,
   131 S. Ct. 2205 (2011) ................................................................... 14

*Friedrich v. City of Chicago*,
   888 F.2d 511 (7th Cir. 1989)................................................................ 14

*Garcia v. Resurgent Capital Servs.*,
   L.P., No. C-11-1253 EMC, 2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ........................... 8

*Graham-Sult v. Clainos*,
   No. CV 10-4877, 2012 WL 994754 (N.D. Cal. Mar. 23, 2012) ............................................ 5

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   789 F. Supp. 1288 (D.N.J. 1992) ........................................................... 4

*Hasbrouck v. Texaco, Inc.*,
   631 F. Supp. 258 (E.D. Wash. 1986) .......................................................... 14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................ 2, 3, 10, 11

*Hutton v. Colvin*,
   No. CV 09-5388, 2013 WL 3490626 (N.D. Cal. July 11, 2013) ............................................ 9

iii

*in Lota by Lota v. Home Depot U.S.A., Inc.*,
   No. 11-CV-05777, 2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ........................................... 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827, 2014 WL 1991269 (N.D. Cal. May 12, 2014) ................................................. 14

*In re Toys R Us-Delaware, Inc.-FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 11

*In re Vitamin C Antitrust Litig.*,
   No. 05-CV-453, 2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) ............................................ 8

*Knauff v. Dorel Juvenile Grp., Inc.*,
   No. SA-08-CV-336, 2010 WL 2545424 (W.D. Tex. June 21, 2010) ...................................... 13

*Lemus v. Timberland Apartments, L.L.C.*,
   876 F. Supp. 2d 1169 (D. Or. 2012) ..................................................................... 7

*Mendez v. Cnty. of San Bernardino*,
   540 F.3d 1109 (9th Cir. 2008) ........................................................................... 7

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..................................................................................... 14

*Moore v. Verizon Commc'ns Inc.*,
   No. C 09-1823, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014) ............................................. 11

*Moralez v. Whole Foods Mkt., Inc.*,
   No. C 12-01072, 2013 WL 3967639 (N.D. Cal. July 31, 2013) ........................................... 2

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ................................................................. 6, 11, 12, 13

*Morgan v. Chicago Title Ins. Co.*,
   No. Civ. 00-00145, 2008 WL 763759 (D. Haw. Mar. 20, 2008) ........................................... 9

*Navarro v. Gen. Nutrition Corp.*,
   No. C 03-0603, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ........................................... 9

*New York v. Microsoft Corp.*,
   297 F. Supp. 2d 15 (D.D.C. 2003) ....................................................................... 4

*O'Neal v. City of Seattle*,
   66 F.3d 1064 (9th Cir. 1995) ............................................................................ 3

*O'Toole v. Kalmar*,
   No. 85 C 7380, 1990 WL 141431 (N.D. Ill. Sept. 21, 1990) ............................................. 14

*Oberfelder v. City of Petaluma*,
   No. C-98-1470, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002) ............................................. 12

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,
No. 3:08-CV-05278, 2014 WL 2621202 (N.D. Cal. June 12, 2014) ..................................... 15

*Parks v. Eastwood Ins. Servs., Inc.*,
No. SA CV 02-507, 2005 WL 6007833 (C.D. Cal. June 28, 2005) ....................................... 5

*Pension Plan for Pension Trust Fund for Operating Engineers v. J & K Sweeping*,
No. C 14-1179, 2014 WL 4626008 (N.D. Cal. Sept. 15, 2014) ............................................. 15

*Pierce v. Cnty. of Orange*,
905 F. Supp. 2d 1017 (C.D. Cal. 2012)...................................................................................... 9

*Postier v. Louisiana-Pac. Corp*,
No. 09-CV-03290, 2014 WL 1760010 (N.D. Cal. Apr. 29, 2014) ......................................... 8

*PQ Labs, Inc. v. Qi*,
No. 12-0450, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ..................................................... 7

*Prison Legal News v. Schwarzenegger*,
561 F. Supp. 2d 1095 (N.D. Cal. 2008) ................................................................... 5, 7, 10, 15

*Robinson v. Plourde*,
717 F. Supp. 2d 1092 (D. Haw. 2010) ...................................................................................... 5

*Rodriguez v. Barrita, Inc.*,
No. C 09-04057, 2014 WL 2967925 (N.D. Cal. July 1, 2014) ............................................. 13

*Seven Gables Corp. v. Sterling Recreation Org. Co.*,
686 F. Supp. 1418 (W.D. Wash. 1988)................................................................................... 14

*Smith v. Citifinancial Retail Servs.*,
No. C06 2966, 2007 WL 2221072 (N.D. Cal. Aug. 2, 2007) ................................................. 9

*Sterling Fed. Sys., Inc. v. Goldin*,
16 F.3d 1177 (Fed. Cir. 1994)................................................................................................. 13

*Stonebrae, L.P. v. Toll Bros.*,
No. C-08-0221, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ................................................. 8

*Straitshot Commc'ns, Inc. v. Telekenex, Inc.*,
No. C10-268, 2012 WL 5880293 (W.D. Wash. Nov. 20, 2012) ............................................. 9

*Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*,
No. C 09-04932, 2013 WL 843036 (N.D. Cal. Mar. 6, 2013) ........................................... 7, 10

*Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
460 F.3d 1253 (9th Cir. 2006)................................................................................................. 13

*United States v. Yonkers Bd. of Educ.*,
118 F.R.D. 326 (S.D.N.Y. 1987) ............................................................................................ 14

*United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc.*,
    512 F.3d 555 (9th Cir. 2008)............................................................................................ 10

*Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk*,
    No. F-04-6393, 2006 WL 988628 (E.D. Cal. Apr. 13, 2006) ................................................ 10

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007)............................................................................................. 8

*White v. McKinley*,
    No. 05-0203-CV-W-NKL, 2009 WL 813372 (W.D. Mo. Mar. 26, 2009) ............................... 4

*World Triathalon Corp. v. Dunbar*,
    539 F.Supp.2d 1270 (D. Haw. 2008) ................................................................................. 9

*Xu v. Yamanaka*,
    No. 13-CV-3240, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014) ........................................... 15

*Yamada v. Weaver*,
    No. 10-00497, 2012 WL 6019121 (D. Haw. Nov. 30, 2012) ............................................... 5

*Yeager v. Bowlin*,
    495 F. App'x 780 (9th Cir. 2012) ...................................................................................... 9

*Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*,
    No. CIV. 2:11-1787, 2012 WL 538263 (E.D. Cal. Feb. 17, 2012)........................................ 12

**RULES**

F.R.C.P. 23(b)(3)............................................................................................................. 11

F.R.C.P. 26(f) .................................................................................................................. 10

**OTHER AUTHORITIES**

H.R. REP. 102-40, 77, 1991 U.S.C.C.A.N. 549 .......................................................... 14

1

## I. INTRODUCTION

2          Having lost what many regard as the most significant Rule of Reason antitrust case in

3   recent history,[1] the NCAA again demonstrates its preference for scorched-earth litigation by

4   engaging in an elaborate but dubious accounting exercise that flouts the Supreme Court's

5   guidance on fees and is riddled with errors. In its quest to slash its legal bill for violating the

6   antitrust laws by an extraordinary 82%, the NCAA denigrates Plaintiffs' landmark victory as an

7   "unequivocal[] . . . failure," disparages productive activities of counsel, incorrectly characterizes

8   various tasks as warranting drastic reduction, and mistakenly argues that vital costs and expenses

9   (of the sort that *it* incurred) are not recoverable under the Clayton Act. It seeks to re-litigate a case

10  that concluded in the district court seven months ago, after more than five years of vigorous

11  advocacy on all sides spanning more than 1,500 docket entries and culminating in a three-week

12  bench trial.[2] The Court should reject this tactic, particularly given the NCAA's repeated refusals

13  to produce *any* information about its own legal expenditures or time records in this case.

14          Notably, much of Plaintiffs' fee motion is not in dispute. The NCAA concedes the

15  reasonableness of Plaintiffs' counsel's historical hourly rates,[3] Plaintiffs' status as a prevailing

16  party, the novelty and complexity of the issues, the special skill and experience of Plaintiffs'

17  counsel and quality of their representation, the high risk of non-recovery, the contingent nature of

18  the fee agreement, the preclusion of other employment, and the strong presumption that the

19  lodestar represents a reasonable fee—for what can only be viewed as a stellar result.

20

## II. ARGUMENT

21   **A.      Plaintiffs' Reasonable Time Expenditures in Securing a Historic Victory**

22  (NCAA Opp'n Br., Dkt. 355, ("OBR") at 1-2, 7-16, 19-21; Exs. 9-12, 14-22, 32-37). The NCAA

---

23  [1] *See* accompanying Declaration of Swathi Bojedla ("Decl.") ¶56.

24  [2] *See Assembly of State of Cal. v. U.S. Dep't of Commerce*, No. Civ. S-91-990, 1993 WL 188328,

25  at *17 (E.D. Cal. May 28, 1993) ("What defendant neglects to acknowledge, however, is that
     plaintiffs' fees reached this sum because of defendant's unyielding opposition at each and every

26  stage of this case—including plaintiffs' request for fees. Recognizing that it may be forced to pick
     up the check at the end of the day, defendant may want to rethink its fight-to-the-death litigation

27  strategy in the future—for the public benefit.").

28  [3] For brevity, Plaintiffs will use the term "Plaintiffs" to refer to the class and its counsel.

1  urges the Court to eliminate *every single time entry* between the filing of the first complaint in

2  2009 and August 31, 2012 and *80% of hours* between September 1, 2012 and November 8, 2013,

3  and seeks the same temporal eliminations of costs and expenses—leaving just eight months of

4  time, costs, and expenses (which would then be subject to the NCAA's numerous other

5  overlapping suggested cuts).[4] But the NCAA cannot dispute that Plaintiffs' diligence during that

6  period laid the groundwork for their summary-judgment opposition and trial victory. Between

7  2009 and 2013, Plaintiffs defeated ten motions to dismiss; obtained through discovery almost

8  every trial exhibit;[5] conducted the depositions used at trial; attained certification of an injunctive

9  class; and obtained $40 million in settlements from the NCAA's two co-defendants (Electronic

10 Arts, Inc. ("EA") and Collegiate Licensing Company ("CLC")). Unsurprisingly, the NCAA

11 musters no authority that would support its unprecedented reduction requests, conceding that this

12 Court has typically reduced fee awards in instances of truly modest success by 8-20%. OBR at

13 12.

14      The crux of the NCAA's argument is that the Court's decision not to certify a damages

15 class and the Supreme Court's guidance in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), compel

16 this result.[6] But Plaintiffs *already* removed, to the extent separable, time expended pursuing a

17 _____

[4] The NCAA also proposes eliminating all time contained in Ex. 15, which spans any work
18 tethered to named plaintiffs (including satisfying the NCAA's discovery requests); any work
concerning live broadcasts, which is obviously central to the trial victory; any work examining
19 group licensing, which remains relevant even now on appeal given the NCAA's arguments that
there is no mechanism to aggregate valid consent to the commercial use of student-athletes'
20 names, images and likenesses ("NILs"); and numerous other tasks that the NCAA refuses to pay
for after its loss. It offers no supporting authority for its sweeping reductions. In addition, the
21 NCAA urges a negative multiplier on top of its myriad reductions, making a tortured comparison
to cases in which the prevailing party achieved virtually nothing. *See, e.g., Moralez v. Whole
22 Foods Mkt., Inc.*, No. C 12-01072, 2013 WL 3967639, at *6 (N.D. Cal. July 31, 2013)
("Moralez's judgment 'did not have any broad public impact or result in significant benefit to
23 anyone' other than herself"), *distinguished in Lota by Lota v. Home Depot U.S.A., Inc.*, No. 11-
CV-05777, 2013 WL 6870006, at *8 (N.D. Cal. Dec. 31, 2013) ("[T]his situation is markedly
24 different than *Moralez,* where Judge Breyer found that plaintiff achieved limited success largely
due to the fact that a judgment in a prior state court action had already provided much of the relief
sought.").

25 [5] The trial exhibits include the "release" forms the NCAA touts as emblematic of a "failed" case.

26 [6] The NCAA also disparages the Court-ordered injunction as "far less than . . . requested,"
pointing to alternative language offered by Plaintiffs. But the Court specifically requested a range
27 of options for its choice of permanent injunction (Trial Tr. 2169-70, 3393), and Plaintiffs
emphasized in closing arguments that an injunction of precisely the type that the Court ultimately
28 entered could yield as much as $75 million to college athletes *each year* (Trial Tr. 3360-61).

damages class, which distinguishes this case from those cited by the NCAA. Decl. ¶4. *Hensley*, meanwhile, supports Plaintiffs' position—*even noting that full recovery may be appropriate where significant injunctive relief, but not damages, is achieved*.[7] As the Ninth Circuit has held:

> We read *Hensley* as establishing the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims.[8]

The NCAA also belittles the significance of this watershed victory for former college athletes, as if that divisive effort might bear on fees. Former college athletes and the named plaintiffs representing them relish their win, which opens commercial avenues for licensing their collegiate likenesses; acknowledges their rights under federal law; reforms the intractable NCAA and yields benefits for a future generation (including their sons, in many cases); and brings with it a $40 million settlement—all consonant with their goals in this litigation from the outset.

        **1.**    **State Law**. The NCAA condemns the inclusion of any time concerning state-law claims, including the right of publicity. Yet those claims arose from the same "common core of facts," and Plaintiffs obtained an excellent result, which makes that time fully compensable.[9] *Hensley* to one side, the NCAA neglects to note that the NCAA and third-party broadcasters frequently injected state-law issues into this case, arguing (unsuccessfully) that Plaintiffs must possess a separate cause of action *under state law* in order to demonstrate antitrust injury. The NCAA cannot now argue that this work is divorced from Plaintiffs' Clayton Act claim, or that Plaintiffs were unsuccessful in this respect when they have prevailed on this argument at every juncture.[10]

---

[7] 461 U.S. at 435 n.11.

[8] *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991); *see O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995) (fees for unsuccessful class-certification motion warranted where claims were ultimately successful); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010) (Wilken, J.) (awarding fees for time concerning unsuccessful claim).

[9] *See Hensley*, 461 U.S. at 435 n.11; *Campbell*, 718 F. Supp. 2d at 1103. As even the NCAA's cases make clear, where unsuccessful claims relate to successful claims through "a common core of facts" or "legal theories," and an excellent result is achieved, full compensation is warranted. *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580, 2014 WL 1309954, at *4 (N.D. Cal. Apr. 1,

*Footnote continued on next page*

PLAINTIFFS' REPLY ISO PLAINTIFFS' AMENDED MOT. FOR ATTYS' FEES, COSTS, AND EXPENSES

**2.**      ***EA and CLC***. Likewise absurd is the NCAA's argument that Plaintiffs cannot recover for a single minute litigating against EA and CLC in this antitrust *conspiracy* case. The NCAA's insistence that any such time "did not contribute to the plaintiff's success" is flatly contradicted by the evidence, including various trial exhibits and deposition designations that Plaintiffs obtained through discovery from EA and CLC—and the trial testimony elicited from EA Senior Vice President Joel Linzner. Instead, the NCAA resorts to counting the number of times the *settling defendants* EA and CLC feature in the Court's opinion (14 instances, including a lengthy discussion of Linzner's testimony). Elsewhere, the NCAA suggests, without any support, that EA and CLC "have nothing to do with the . . . relationship between the NCAA, its member institutions and student-athletes," which is plainly belied by the trial record, as described above.

The NCAA's citations do not aid its argument either. In *Cunningham v. Cnty. of L. A.*, 879 F.2d 481, 486 (9th Cir. 1988), the Ninth Circuit upheld a reduction of fees after a settlement at trial with some defendants for *unsuccessful* claims against other defendants. The NCAA cannot, and does not, suggest that the $40 million settlement was a defeat. Similarly, *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214-15 (3d Cir. 1978), was concerned with any requirement that a losing defendant pay for hours (1) expended against other *prevailing* defendants (2) that did not contribute to a plaintiff's victory. That is doubly inapposite here. The NCAA's remaining authorities merely support apportionment of fees among settling and losing defendants where the monetary relief—or "success"—obtained from both is fundamentally the same.[11] Here, Plaintiffs secured a substantial cash settlement from two defendants and then used the evidence obtained from EA and CLC against the NCAA at trial, culminating in injunctive

---

*Footnote continued from previous page*
2014); *New York v. Microsoft Corp.*, 297 F. Supp. 2d 15, 35-36 (D.D.C. 2003).

[10] Dkt. 291 at 68, 75; Case No. 09-1967, Dkt. 1025, at 15-23; Case No. 09-1967, Dkt. 1091, at 3-5.

[11] *See Davis v. Prison Health Servs.*, No. C 09-2629, 2012 WL 4462520, at *16 (N.D. Cal. Sept. 25, 2012) ("*PHS*"); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 789 F. Supp. 1288, 1297 (D.N.J. 1992); *see also White v. McKinley*, No. 05-0203-CV-W-NKL, 2009 WL 813372, at *9 (W.D. Mo. Mar. 26, 2009) (collecting cases rejecting apportionment for successful claims based on joint conduct).

relief that will yield altogether distinct benefits for the class each year.

**3.**   ***Case Administration***. The NCAA challenges, without a single supporting authority, vital case-management efforts, including consolidation with *Keller*; motions for lead counsel; and keeping the litigation funded to pay millions of dollars of expenses out of pocket (again without any promise of reimbursement). That effort must fail.[12] The NCAA similarly insists that contact with prospective additional plaintiffs, including updating class members on the litigation and responding to inquiries in the wake of the Court's invitation to add a current student-athlete in July 2013 (Case No. 09-1967, Dkt. 830), is not recoverable. But the NCAA's cited authorities hold only that attorneys cannot recover for introductory meetings with potential clients *before filing*.[13] Nearly all of the challenged entries concern time *after* the complaint was filed. Ex. 20.

**4.**   ***"Secretarial" Matters***. The NCAA derides as "clerical or secretarial work"[14]: (1) substantive trial preparation; (2) document review; (3) conversations with expert witnesses; (4) witness preparation and meetings with clients; (5) discovery responses; (6) financial management of the litigation; (7) legal, procedural, and factual research; (8) deposition preparation and travel; and (9) brief writing. Decl. ¶20. Those tasks—and the numerous others identified by the NCAA that were part and parcel of this victory—are a far cry from those at issue in *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *reh'g denied and opinion vacated in non-relevant part,* 984 F.2d 345 (9th Cir.1993); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101-02 (N.D. Cal. 2008) ("*PLN*"); and *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099-100 (D. Haw. 2010).

---

[12] *See, e.g., Yamada v. Weaver*, No. 10-00497, 2012 WL 6019121, at *6 (D. Haw. Nov. 30, 2012); *see also Graham-Sult v. Clainos*, No. CV 10-4877, 2012 WL 994754, at *4 (N.D. Cal. Mar. 23, 2012) (Wilken, J.) (subsequent history omitted).

[13] *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 435-36 (11th Cir. 1999) ("[U]ntil the attorney has a client, there is no case to litigate. . . . [But] [i]nterviews, correspondence, and meetings with a potential plaintiff may yield factual information which will be utilized in pursuing the litigation so that the time billed for those activities can be considered time expended on the litigation."); *Parks v. Eastwood Ins. Servs., Inc*., No. SA CV 02-507, 2005 WL 6007833, at *5 (C.D. Cal. June 28, 2005) (relying on *Barnes*). The NCAA's casual accusations of "solicitation" are unfounded and inappropriate. Decl. ¶18; Ex. 20.

[14] OBR at 15-16.

**5.**     ***Contributions of Co-Counsel***. Nor should this Court reward the NCAA's subjective and self-serving attempt to disparage work as "not add[ing] value to the case" or "mov[ing] the case forward." OBR at 19-20. Confidentiality and privilege challenges are bedrock litigation activities and helped reduce the Court's burden in resolving sealing motions and determining what was to be sealed at trial (almost nothing, despite initial blanket designations). Decl. ¶¶41-43. *Pro hac vice* motions are likewise common on all sides in complex antitrust class actions.[15] And the NCAA does not even attempt to substantiate its accusations of "copycat" complaints and cases, much less tether specific time entries to particular pleadings.[16] Finally, the NCAA's undeveloped assertions of "churning" or no "contribution" are at odds with the actual entries, Decl. ¶¶46, 47, its insistence that this litigation was faltering, and the practical experience of courts:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (Kosinski, C.J.). Law firms tasked with substantive projects and asked to contribute significant financial resources are expected to stay abreast of the litigation and report to their clients. Decl. ¶¶46, 47.

**6.**     ***Mock Trial and Press Contact***. The NCAA next attacks time expended on a mock trial and any time spent engaging the press in this closely watched case, asserting incorrectly that Plaintiffs have conceded this time is not recoverable. Plaintiffs' lone mock trial

---

[15] *Cognizant Tech. Solutions v. McAfee*, No. 14-01146, 2014 WL 3885868, at *3 (N.D. Cal. Aug. 7, 2014) involved an unusual request for 3.6 hours of lodestar for drafting and executing two *pro hac vice* motions, which the Court reduced to .7 hours. The NCAA miscalculates this at .1 hours, but Plaintiffs will honor the reduction request outlined in the NCAA's Ex. 32 in a further exercise of reasonableness. Decl. ¶41.

[16] Ex. 33 evidences investigative work, research, client contact, and diligence from various attorneys who contributed mightily to the success of this litigation—and the strength of three consolidated amended complaints—over five years. Decl. ¶42.

1    provided invaluable insights that informed Plaintiffs' successful strategy at trial just six weeks

2    later. The NCAA does not propose that this exercise is unusual or indefensible, nor could it; mock

3    trials are the norm in complex litigation.[17] Instead, it baldly insists that this time is "not

4    permissible" and "should have been removed," with little elaboration. OBR at 14. Plaintiffs'

5    subtraction of time on draft jury instructions, which conversely did not inform the bench trial, is

6    no reason to penalize them for an enormously productive mock trial that sharpened their

7    presentation to the Court.

8         And, as Plaintiffs noted in their opening brief, this Court and the Ninth Circuit have

9    recognized that interviews and press outreach can be critical to the successful representation of

10   clients in matters of public interest.[18] This case is no exception. Here, news articles were

11   invaluable in communicating case progress and developments to class members, future *amici*, and

12   NCAA member schools. Indeed, the NCAA's lawyers seized the same opportunities. Moreover,

13   Plaintiffs *already* culled the bulk of time spent engaging the press in an exercise of billing

14   judgment. The NCAA complains only of the slight fraction that remains.

15        **B.      Plaintiffs' Sound Billing Practices, Detailed Documentation, and Exercise of**

16   **Billing Judgment** (OBR at 3-7; Exs. 3-8). Another centerpiece of the NCAA's effort is its

17   denunciation of "block billing" purportedly warranting *a 100% reduction*—although the NCAA

18   concedes that no authority supports its radical position.[19] OBR at 5 n.6. Despite the NCAA's

19   suggestions otherwise, this Court's concerns with block billing are limited to instances where the

20   practice obscures an assessment of reasonableness or yields insufficient detail.[20] That is not the

---

21   [17] *See Lemus v. Timberland Apartments, L.L.C.*, 876 F. Supp. 2d 1169, 1180 (D. Or. 2012)
22   (collecting cases).

     [18] *See Davis*, 976 F.2d at 1545; *PLN*, 561 F. Supp. 2d at 1101; *see also Ansoumana v. Gristede's*
23   *Operating Corp.,* No. 00 Civ. 253, 2004 WL 504319, at *3 (S.D.N.Y. Jan. 7, 2004).

24   [19] Indeed, the Ninth Circuit has made clear that block billing can never be grounds for denying
     fees altogether. *See Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1128-29 (9th Cir. 2008),
25   *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

     [20] *See PQ Labs, Inc. v. Qi*, No. 12-0450, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015)
26   ("block billing has been accepted in this district"); *Dixon v. City of Oakland*, No. C-12-05207,
     2014 WL 6951260, at *11 (N.D. Cal. Dec. 8, 2014); *Cruz v. Starbucks Corp.*, No. C-10-01868,
27   2013 WL 2447862, at *7 (N.D. Cal. June 5, 2013) ("[T]he Court . . . finds that the billing
     practices with respect to block-billing are adequate to allow the Court to determine whether the
28   time spent on particular tasks is reasonable."); *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*,

*Footnote continued on next page*

1   case here.

2          More problematic still is the profound disconnect between the definition of "block billing"

3   found in the case law and the NCAA's generous categorizations. In *Welch v. Metro. Life Ins. Co.*,

4   480 F.3d 942, 945 (9th Cir. 2007), the Ninth Circuit defined "block billing" as the "'the time-

5   keeping method by which each lawyer and legal assistant enters *the total daily time* spent working

6   on a case, rather than itemizing the time expended on specific tasks.'" (emphasis added). Yet the

7   NCAA challenges thousands of time entries that amount to far less than a day (on days that the

8   timekeeper had other entries) simply because they contain a period, a comma, or a semicolon in

9   the description. Of the 13,670 entries that the NCAA contends demonstrate "impermissible block

10   billing," 9,942 (or 73%) are entries of four hours or less; 4,654 (or 34%) are entries of an hour or

11   less; and 749 (or 5.5%) *are entries of .2 hours or less*. By the NCAA's logic, no attorney could

12   ever record in a single entry: (1) two related conversations with co-counsel; (2) reading and

13   discussing a brief; or (3) leaving a detailed voicemail for a client and then speaking minutes later.

14   If that were true, every attorney and paralegal would have to record up to 100 entries every day,

15   which would severely hamper the practice of law.[21] At bottom, the NCAA would have this Court

16   penalize Plaintiffs for the level of detail supplied in their time entries, which is not the law.[22]

17          On the rare occasions that timekeepers did "block bill" all tasks for the day as defined in

18   *Welch*, they nevertheless provided significant detail to facilitate the Court's review. *See* Ex. 3.

19   Should the Court disagree, the appropriate remedy would be to request further information about

20   *Footnote continued from previous page*
    No. C 09-04932, 2013 WL 843036, at *6 (N.D. Cal. Mar. 6, 2013) (noting that block billing "is

21   permissible"); *Garcia v. Resurgent Capital Servs.*, L.P., No. C-11-1253 EMC, 2012 WL
    3778852, at *8 (N.D. Cal. Aug. 30, 2012); *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221, 2011

22   WL 1334444, at *9 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013).

23   [21] *In re Vitamin C Antitrust Litig.*, No. 05-CV-453, 2013 WL 6858853, at *5 (E.D.N.Y. Dec. 30,
    2013) (noting hazard of "gross inefficiencies" in favoring timekeeping over actual legal work).

24   [22] *See Postier v. Louisiana-Pac. Corp*, No. 09-CV-03290, 2014 WL 1760010, at *6 (N.D. Cal.

25   Apr. 29, 2014) (prevailing party's fee award "will not be reduced because its attorneys provided
    detailed explanations of all the tasks they performed within one time entry"); *PHS*, 2012 WL

26   4462520, at *11 (noting the acceptability of "multiple tasks within a single time entry" and
    "several such billing entries per day"); *Fortson v. Marriott Int'l, Inc.*, No. CV 11-01454, 2013

27   WL 1832411, at *7 (N.D. Cal. May 1, 2013); *see also Cruz*, 2013 WL 2447862, at *3 (rejecting
    simplistic searches for use of semicolons to suggest impermissible block billing); *Campbell*, 718

28   F. Supp. 2d at 1103 (same); *see also* Decl. ¶9.

specific entries[23] or assess a modest reduction of 5% or 10%.[24]

The NCAA also insists that any time billed in quarter-hours, which represents a small fraction of the time entries, must be reduced by at least 20% because of the prospect of imprecise measurements. OBR at 6. But courts in this Circuit have not adopted a uniform approach to quarter-hour billing, often reducing instances by as little as 5% or 10%—or not at all, where there are doubts about the likelihood of any inflating effect or where the practice is not widespread.[25] Here, the NCAA's own exhibits demonstrate that any quarter-hour billing was limited, and the threat of imprecision is slight, warranting no reduction. Even if the Court were to disagree, a reduction of 5% or 10% is the more common and appropriate measure, if any is to be imposed.

Moreover, Plaintiffs excised from their fee petition, "*to the extent separable*, time concerning damages claims," Dkt. 341("Br.") at 12 (emphasis added). The NCAA ignores this description and insists that any time entry that happens to include the word "damage" must be discarded, even where, for example, Plaintiffs' counsel discussed with prospective clients the nature of their claims and the range of potential relief. *See* Ex. 11 at 2. Equally baffling, the NCAA seeks to exclude time related to the deposition of Daniel Rascher, an economic expert *who testified at trial and was cross-examined by NCAA counsel on aspects of his damage analysis*. *Id*. at 4-5. Other entries included in Exhibit 11 inexplicably do not even reference damages. Decl. ¶15. In any event, the NCAA furnishes no authority in support of these proposed exclusions.

The NCAA also seeks to reduce by 50% entries that it deems "vague."[26] OBR at 5. Most

---

[23] *See Yeager v. Bowlin*, 495 F. App'x 780, 783 (9th Cir. 2012).

[24] *See, e.g., Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (5%); *Hutton v. Colvin*, No. CV 09-5388, 2013 WL 3490626, at *5 (N.D. Cal. July 11, 2013) (10%).

[25] *See, e.g., Found. v. Office of Dir. of Nat'l Intelligence*, No. C 07-05278, 2008 WL 2331959, at *6 (N.D. Cal. June 4, 2008) ("[T]here is no evidence that plaintiff's use of quarter-hour increments posed a threat of over-billing.") (no reduction); *Bobol v. HP Pavilion Mgmt.*, No. C 04 00082 JW, 2006 WL 927332, at *5 (N.D. Cal. Apr. 10, 2006) (no reduction); *Straitshot Commc'ns, Inc. v. Telekenex, Inc.*, No. C10-268, 2012 WL 5880293, at *4 (W.D. Wash. Nov. 20, 2012) (5% reduction); *Smith v. Citifinancial Retail Servs.*, No. C06 2966, 2007 WL 2221072, at *2 (N.D. Cal. Aug. 2, 2007) (5% reduction); *Morgan v. Chicago Title Ins. Co.*, No. Civ. 00-00145, 2008 WL 763759, at *6 (D. Haw. Mar. 20, 2008) (10% reduction); *World Triathalon Corp. v. Dunbar*, 539 F.Supp.2d 1270, 1286 (D. Haw. 2008) (10% reduction).

[26] The proper reduction for truly vague entries that significantly hamper the Court's evaluation is 10%, not the NCAA's preferred 50%. *See PHS*, 2012 WL 4462520, at *17; *Navarro v. Gen. Nutrition Corp.*, No. C 03-0603, 2005 WL 2333803, at *16 (N.D. Cal. Sept. 22, 2005).

---

of these entries are lucid. The NCAA claims, for example, not to understand what is meant by "work on Rule 26(f) statement" or "Edit and finalize . . . opposition to motion to dismiss." Decl. ¶10. And for the few entries that lack significant detail, the NCAA ignores surrounding contemporaneous entries that provide ample context.[27]

Furthermore, the NCAA ignores the controlling standard. "[A]ttorneys are 'not required to record in great detail how each minute of [their] time as expended.'… They need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'"[28] Courts in this district have concluded that entries such as "Research, [speak with attorney]," "telephone w/ [attorneys] on PI strategy," "pretrial materials," and "trial preparation" are sufficiently descriptive in context.[29] Here, nearly all of the challenged entries are plainly adequate. Ex. 4; Decl. ¶¶10-11.

Equally unavailing is the NCAA's argument that Plaintiffs' sparing redactions warrant a 100% time reduction. OBR at 6; Exs. 5-6. The Ninth Circuit has held that parties are "entitled for good reason to considerable secrecy about what went on between client and counsel, and among counsel."[30] And here, unlike in the NCAA's cases, Plaintiffs provided unredacted entries to the Court (but not the NCAA) for *in camera* review.[31]

Finally, in demanding a further 10% reduction (OBR at 20), the NCAA neglects to acknowledge Plaintiffs' exercise of considerable billing judgment to account for any

---

[27] *See PLN*, 561 F. Supp. 2d at 1103 (Wilken, J.) (no time reduction where entries were "readily understood when viewed in the context of the surrounding entries").

[28] *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quoting *Hensley*, 461 U.S. at 441); *see Hensley*, 461 U.S. at 437 n.12 (identifying "general subject matter" of time expenditure sufficient).

[29] *Transbay Auto Serv.*, 2013 WL 843036, at *4; *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. C 06-4884, 2012 WL 273604, at *3 (N.D. Cal. Jan. 30, 2012); *Darling Int'l, Inc. v. Baywood Partners, Inc.*, No. C-05-3758, 2007 WL 4532233, at *8 (N.D. Cal. Dec. 19, 2007).

[30] *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (finding descriptions such as "Counsel call to discuss [REDACTED]" sufficient to allow court to determine reasonableness); *see Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk*, No. F-04-6393, 2006 WL 988628, at *3 (E.D. Cal. Apr. 13, 2006).

[31] *See Darling Int'l*, 2007 WL 4532233, at *8 (modest redactions immaterial to assessing reasonableness).

inefficiencies, *see Hensley*, 461 U.S. at 434, 437, by requesting conservative historical hourly rates in a six-year-old case (which likely represents a 10-20% reduction) and eliminating: "time concerning damages claims; the pursuit of a damages class under Rule 23(b)(3); draft jury instructions, *voir dire*, and questionnaires; time spent preparing this fees application [which the NCAA has transformed into a nine-month odyssey]; and even most time related to press releases, interviews, and the like." Br. at 12-13. Plaintiffs complement that billing judgment with a further 1.8% reduction to fees, costs, and expenses—in light of the NCAA's few reasonable observations and certain identified entries—which reduces the earlier total by an additional $911,980.45 in fees, costs, and expenses.  Decl. ¶8.

    **C.**    **Appropriate Staffing** (OBR at 16-20; Exs. 23-31). The NCAA criticizes Plaintiffs' staffing, noting that partners negotiated discovery, outlined depositions, prepared trial witnesses, drafted certain pleadings, and contributed to fact and legal research. Ex. 23; Decl. ¶¶22-23. These are all integral parts of litigation that are appropriately and regularly performed by partners.[32] If the entries the NCAA identified are associate-level work, it is unclear what is left for partners.

    The NCAA's document review challenge is even less tenable. It insists, without support, that Plaintiffs should have used *only* paralegals and contract attorneys to conduct document review in this complex matter, and should be severely penalized—a 74% reduction—for deploying some associates for this project. OBR at 17; Ex. 24. That is not the law.[33]

    In addition, while conceding the reasonableness of some tasks, the NCAA complains of overstaffing—though it does not deny that it sent an army of lawyers to depositions, hearings, and trial. *See* Decl. ¶¶26-38. The Ninth Circuit encourages "defer[ence] to the winning lawyer's

---

[32] *See, e.g.*, *Chaid v. Glickman*, No. C98-1004, 1999 WL 33292940, at *13-17 (N.D. Cal. Nov. 17, 1999); *see also Moreno*, 534 F.3d at 1114-15 (A court should not "impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests."); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823, 2014 WL 588035, at *14 (N.D. Cal. Feb. 14, 2014) (collecting cases regarding courts' reluctance to second-guess staffing decisions in large class actions); Decl. ¶23.

[33] *See, e.g., In re Toys R Us-Delaware, Inc.-FACTA Litig.*, 295 F.R.D. 438, 466 (C.D. Cal. 2014). Ex. 24 includes as "document review" deposition preparation and similar activities; Decl. ¶25

1    professional judgment as to how much time he was required to spend on the case"[34] and

2    consideration of "the circumstances of the individual case" in assessing accusations of

3    unnecessary duplication.[35] As detailed in the time records, the accompanying declarations, and

4    Plaintiffs' opening brief, the particular facts of *this* case demonstrate the need for significant

5    attorney involvement to fend off the NCAA, its member schools and conferences, its broadcast

6    partners, its co-defendants, and various other third parties—and try this novel case to victory.[36]

7        The NCAA's own staffing decisions—what little is known to Plaintiffs—undermine their

8    arguments further. As detailed in the attached declaration, it sent as many *or more* lawyers to

9    dozens of depositions and hearings.[37] Senior partners from Schiff Hardin, the NCAA's longtime

10   counsel, and WilmerHale, the NCAA's appellate counsel, attended trial but did not utter a word,

11   leaving the actual trial work to some eight Munger Tolles lawyers (joined by in-house counsel).

12       Finally, merely highlighting instances in which more than one attorney teleconferenced or

13   reviewed work product, as the NCAA does here, does not satisfy this Court's demanding test for

14   excessive duplication.[38] For example, the NCAA challenges *every* teleconference or meeting

15   among attorneys as "unnecessary and duplicative." OBR at 18; Ex. 28. That unsupported

16   challenge ignores the realities of complex class action antitrust litigation, which requires multiple

---

[34] *Moreno*, 534 F.3d at 1112.

[35] *Reed*, 388 F.3d at 1286-87.

[36] The NCAA misrepresents, *e.g.*, that nearly $400,000 in fees relates to preparing for a single deposition (Greg Shaheen). OBR at 18 n.31; Ex. 31. Much of that time was part of a larger document review or attributable to *other* deponents. *See* Ex. 31; Decl. ¶39. It also complains of excessive conferencing, reaching its colossal estimates only by including thousands of entries that feature brief-writing, research, discovery, and other tasks *joined by a related phone call*. *Id.* ¶34.

[37] *See* Decl. ¶27; Decl. Exs. C, D; Exs. 25-27; *see also Reed*, 388 F.3d at 1287 ("devastating" to claim of overstaffing that both parties used same number of attorneys).

[38] *See Moreno*, 534 F.3d at 1113 ("Findings of duplicative work should not become a shortcut for reducing an award" without identifying exactly why that work was excessive.); *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc*., No. CIV. 2:11-1787, 2012 WL 538263, at *11 (E.D. Cal. Feb. 17, 2012), *aff'd*, 562 F. App'x 560 (9th Cir. 2014); *Reed*, 388 F.3d at 1286-87; *Oberfelder v. City of Petaluma*, No. C-98-1470, 2002 WL 472308, at *7 (N.D. Cal. Jan. 29, 2002) ("Duplicative hours are those where the presence of more than one attorney does not provide benefit to the client."). For example, the NCAA includes in purportedly "Excessive and Duplicative Time Entries" (Ex. 29), trial counsel paralegal time locating and circulating relevant case materials in the weeks before trial, as is to be expected in a complex antitrust class action trial. *Moreno*, 534 F.3d at 1112 (9th Cir. 2008) ("One certainly expects *some* degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free.").

1   attorneys working in tandem to succeed. [39]

2       **D.    Reasonable Costs and Expenses** (OBR at 21-25; Exs. 39-47). The NCAA

3   concedes that it must pay "reasonable out-of-pocket litigation expenses that would normally be

4   charged to a fee paying client," OBR at 22; *Trustees of Constr. Indus. & Laborers Health &*

5   *Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006), but nevertheless insists

6   that the Court reduce Plaintiffs' recoverable costs and expenses by "at least" 93%, forcing

7   Plaintiffs to bear $5 million in unreimbursed expenditures. [40] The NCAA principally challenges

8   Plaintiffs' expert fees. For its refusal, it clings to *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482

9   U.S. 437, 445 (1987). But that decision: (1) holds only that prevailing *defendants* cannot recover

10  expert fees in antitrust cases;[41] (2) was overruled by Congress (at least as to civil rights cases),

11  which cited the need for the testimony of economists and other experts in complex cases where

12  defendants invariably hire experts;[42] (3) has been roundly criticized;[43] and (4) cannot be

13  reconciled with *Missouri v. Jenkins*, 491 U.S. 274 (1989).[44] Accordingly, courts in the Ninth

---

14  [39] *See also Rodriguez v. Barrita, Inc.*, No. C 09-04057, 2014 WL 2967925, at *5 (N.D. Cal. July
15  1, 2014). The NCAA also claims excessive deposition preparation, but again makes no real
    challenge to the reasonableness of the time challenged, instead merely noting the *amount* of
16  time—ignoring, for example, the huge volume of documents in this matter. *See* Exs. 30-31.

17  [40] Despite a split of authority regarding whether *pro hac vice* application fees are recoverable as
    costs or expenses, Plaintiffs will forego the expenditures in Ex. 41 ($5,635.60). *See, e.g.*, *Awad v.*
18  *Ziriax*, No. CIV-10-1186, 2014 WL 1572804, at *1-2 (W.D. Okla. Apr. 17, 2014); *Knauff v.*
    *Dorel Juvenile Grp., Inc.*, No. SA-08-CV-336, 2010 WL 2545424, at *1 (W.D. Tex. June 21,
19  2010); Decl. ¶49. Plaintiffs likewise withdraw their request for expenses identified in Exs. 40
    ($50,221.38) and 46 ($4,148.02), and reduce their travel expenses by $33,490. Decl. ¶¶49, 54, 56;
20  Decl. Ex. B.

21  [41] *Auto. Prods., plc v. Tilton Eng'g, Inc.*, No. CV 90-5500, 1993 WL 660164, at *7 (C.D. Cal.
    Sept. 16, 1993) ("Section 4 of the Clayton Act specifically provides for the 'costs of suit' to be
22  awarded to the plaintiff if he prevails."); *see also O'Toole v. Kalmar*, No. 85 C 7380, 1990 WL
    141431, at *4 (N.D. Ill. Sept. 21, 1990) ("[G]iven . . . *Crawford*, a prevailing defendant is strictly
23  limited as to what costs he is entitled to and in most cases he will be unable to obtain all the costs
    . . . requested."). *But see In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2014 WL
24  1991269, at *2 (N.D. Cal. May 12, 2014) (upholding special master's recommendation without
    analyzing question); *Seven Gables Corp. v. Sterling Recreation Org. Co.*, 686 F. Supp. 1418,
25  1421 (W.D. Wash. 1988) (assuming without analyzing that *Crawford* controls).

    [42] H.R. REP. 102-40, 77, 1991 U.S.C.C.A.N. 549, 615.
26
    [43] *See, e.g., Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1184 (Fed. Cir. 1994); *Friedrich v.*
27  *City of Chicago*, 888 F.2d 511, 514-15 (7th Cir. 1989) (Posner, J.), *judgment vacated*, 499 U.S.
    933 (1991); *United States v. Yonkers Bd. of Educ.*, 118 F.R.D. 326, 330 (S.D.N.Y. 1987).

28  [44] *Id.* at 285 (a "reasonable attorney's fee" is not limited to "work performed personally by
                                                        *Footnote continued on next page*

1    Circuit have awarded expert fees to prevailing plaintiffs in complex antitrust cases, even after

2    *Crawford*.[45]

3        Furthermore, after persuading the Court of the need for nearly four months to assess

4    Plaintiffs' "voluminous" documentation of timekeeping, costs, and expenses (totaling over 4,000

5    pages) (Dkt. 326), the NCAA now complains that various expenses warrant further

6    documentation yet and thus should be eliminated outright. These assertions ignore Plaintiffs'

7    offer to submit additional materials should the Court need them (*e.g.*, Dkt. 341-2 at ¶¶8, 12) and

8    defy the Supreme Court's prohibition on demanding auditing perfection over appropriate

9    documentation.[46] For support, the NCAA plucks a handful of dissimilar instances of inadequate

10   documentation that hardly address the mountainous records provided here.[47]

11       Elsewhere, the NCAA protests "excessive" travel expenses, among them a $16.50 flight-

12   change fee and a $15.00 seat-change fee for a 6' 3" attorney. Decl. ¶¶52-53. The cases it supplies

13   merely emphasize the need for reasonable travel expenses, many of which here involved travel to

14   one of the most expensive areas of the country, some of it with little advance notice. And the

15   NCAA is mistaken in arguing that computerized research costs are not compensable.[48]

16   _____

17   *Footnote continued from previous page*
     members of the bar," and includes the work of "others whose labor contributes to the work
18   product for which an attorney bills her client" provided it is the prevailing local practice).

     [45] *See Auto. Prods. PLC v. Tilton Eng'g, Inc* ("*Tilton*"), 855 F. Supp. 1101, 1106-08 (C.D. Cal.
19   1994) (addressing *Crawford*); *Auto. Prods. PLC v. Tilton,* No. CV 90-5500, 1993 WL 660146, at
     *1-2 (C.D. Cal. Nov. 18, 1993) (same); *Auto. Prods., plc*, 1993 WL 660164, at *7 (same);
20   *Hasbrouck v. Texaco, Inc.*, 631 F. Supp. 258, 268 (E.D. Wash. 1986), *aff'd in part, rev'd in part,*
     879 F.2d 632 (9th Cir. 1989). The NCAA is mistaken in arguing that the *Tilton* decisions turned
21   on *Hasbrouck* alone. *E.g.*, *Tilton*, 1993 WL 660146, at *1-2 (acknowledging *Crawford* but
     observing that "the antitrust statute explicitly provides that other 'costs' are awardable to a
22   prevailing plaintiff in an antitrust suit.").

23   [46] *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("[T]rial courts need not, and indeed should not,
     become green-eyeshade accountants.").
24
     [47] Indeed, the detailed time entries Plaintiffs provided cast significant light on each of these
25   expenses, when paired by firm and timekeeper.

26   [48] *See Pension Plan for Pension Trust Fund for Operating Engineers v. J & K Sweeping*, No. C
     14-1179, 2014 WL 4626008, at *8 (N.D. Cal. Sept. 15, 2014); *Xu v. Yamanaka*, No. 13-CV-3240,
27   2014 WL 3840105, at *5 (N.D. Cal. Aug. 1, 2014); *Oldoerp v. Wells Fargo & Co. Long Term
     Disability Plan*, No. 3:08-CV-05278, 2014 WL 2621202, at *8 (N.D. Cal. June 12, 2014); *PLN*,
28   561 F. Supp. 2d at 1105; *see also* Decl. ¶54-55.

1

## III. CONCLUSION

2         For the foregoing reasons, the Court should grant Plaintiffs' motion for $44,755,500.23 in

3   attorneys' fees and $5,201,566.97 in costs and expenses (which reflects Plaintiffs' further

4   proposed reductions as detailed in ¶8 and Exhibits A and B to the Declaration of Swathi Bojedla),

5   as well as any appropriate upward adjustment.

6

7   Dated: March 9, 2015                          Respectfully submitted,

8                                                 By: _/s/ Michael Hausfeld_____
                                                  Michael D. Hausfeld (*pro hac vice*)
9                                                 Sathya S. Gosselin (Cal. Bar. No. 269171)
                                                  Swathi Bojedla (*pro hac vice*)
10                                                HAUSFELD LLP
                                                  1700 K Street, NW, Suite 650
11                                                Washington, DC 20006
                                                  Telephone:  (202) 540-7200
12                                                Facsimile:  (202) 540-7201
                                                  E-mail: mhausfeld@hausfeld.com
13                                                        sgosselin@hausfeld.com
                                                          sbojedla@hausfeld.com
14
                                                  Michael P. Lehmann (Cal. Bar No. 77152)
15                                                Bonny E. Sweeney (Cal. Bar No. 176174)
                                                  HAUSFELD LLP
16                                                44 Montgomery St., 34th Floor
                                                  San Francisco, CA 94104
17                                                Telephone:  (415) 633-1908
                                                  Facsimile:  (415) 358-4980
18                                                E-mail: mlehmann@hausfeld.com
                                                          bsweeney@hausfeld.com
19
                                                  *Plaintiffs' Class Counsel*
20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Swathi Bojedla, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am an associate in the law firm of HAUSFELD LLP, and my office is located at 1700 K Street NW, Suite 650, Washington, DC 20006.

On March 9, 2015, I caused to be filed the following:

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

and accompanying declaration and exhibits with the Clerk of Court using the Official Court Electronic Document Filing System, which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Swathi Bojedla*
Swathi Bojedla