Gregory L. Curtner (*pro hac vice*)
gcurtner@schiffhardin.com
Robert J. Wierenga (SBN 183687)
rwierenga@schiffhardin.com
Kimberly K. Kefalas (*pro hac vice*)
kkefalas@schiffhardin.com
SCHIFF HARDIN LLP.
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
Facsimile: (734) 222-1501

Attorneys for Defendant
National Collegiate Athletic Association

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR. et. al., on behalf of themselves and all others similarly situated , <br><br>　　　　　　Plaintiff, <br><br>v<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, ELETRONIC ARTS INC., and COLLEGIATE LICENSING COMPANY,<br><br>　　　　　　Defendants. | Case No. 09-cv-3329-CW (NC)<br><br>**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MISCELLANEOUS MOTION TO DEFER HEARING ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge:　　　Hon. Nathanael Cousins<br>Dept:　　　Courtroom 7; 4th Floor |

The National Collegiate Athletic Association ("NCAA") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 54(d)(2)(B) to defer its hearing and subsequent ruling on plaintiffs' Amended Motion for Attorneys' Fees, Costs, and Expenses (Dkt. 341) until after the Ninth Circuit has decided the appeal on the merits. Accordingly, the NCAA respectfully requests this Court to cancel the hearing scheduled for April 29, 2015 (Dkt. 358) and order the hearing—if one is still required—to be rescheduled within 30 days of the Ninth Circuit's decision on the merits.[1]

**BACKGROUND**

On August 8, 2014, Judge Wilken entered judgment in this case. (Dkt. 293). More than three months later, on November 19, 2014, plaintiffs filed their Amended Motion for Attorney's Fees, Costs and Expenses. (Dkt. 341). This submission included 38,974 narrative line entries for 396 timekeepers and 33 law firms. (Dkt. 355-1 at ¶2). Based on the size and complexity of plaintiffs' fee motion, this Court granted the NCAA's Motion to Enlarge Time to Respond. (Dkt. 336). The NCAA filed its Opposition on February 6, 2015. (Dkt. 355). Five days later, in light of Passover, and to accommodate the NCAA's pre-existing scheduling obligations, the parties agreed to reschedule the hearing on plaintiffs' fee motion until April 29, 2015. (Dkt. 358).

In the meantime, the NCAA had appealed on the merits. In September 2014, the NCAA and plaintiffs filed before the Ninth Circuit a joint motion for an expedited briefing and argument schedule. (Appellate Dkt. 7). The NCAA sought oral argument for April or May of 2015 so that the Ninth Circuit could resolve the appeal before the permanent injunction issued by the district court takes effect on August 1, 2015. The Ninth Circuit scheduled argument earlier than expected. On January 26th (just a week and a half before the NCAA's fee Opposition came due) the Ninth

---

[1] This is the second time that the NCAA has asked for the Court to reschedule the fee hearing. The Court granted the first request, after plaintiffs graciously agreed to stipulate to a later date, to accommodate the NCAA's pre-existing scheduling obligations. (Dkt. 358). This request to defer the fee hearing, however, is based solely on prudential considerations. Upon further reflection on the unique procedural posture of the appeal in relation to this fee petition, the NCAA decided to present this Court with the opportunity to decide whether the Court's and the parties' interests would be best served by deferring the fee petition until after the Ninth Circuit's decision, in light of the significant amount of further work required to prepare for and conduct the hearing.

1  Circuit scheduled oral argument for March 17th, and assigned 30 minutes of argument per side,

2  exceeding the amount of time normally allotted under the Court's rules.[2] (Appellate Dkt. 48). The

3  Ninth Circuit has heard oral argument and its decision is pending.

4      Counsel for the NCAA has met and conferred with plaintiffs' counsel and has in good

5  faith attempted to reach an agreement to stipulate to rescheduling the fee hearing until after the

6  Ninth Circuit issues its decision. The NCAA understands plaintiffs' reasons for declining to join

7  the NCAA's request to defer the fee hearing. Nevertheless, the NCAA remains convinced that

8  postponement makes good sense under the circumstances of this case because it will conserve

9  judicial and party resources, and result in no prejudice to the parties.

10 **STANDARD**

11 "If an appeal on the merits of the case is taken," a court "may defer its ruling on the

12 motion" for fees. Fed.R.Civ.P. 54 Advisory Committee's Notes; *Dumas v. New United Motor*

13 *Mfg. Inc.*, No. C 05-4702 PJH, 2007 WL 1880377, at *2 (N.D. Cal. June 29, 2007). Indeed, a new

14 period for filing a motion for fees "will automatically begin if a new judgment is entered

15 following a reversal or remand by the appellate court[.]" *Id*. Moreover, courts have "broad

16 discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v.*

17 *Jones,* 520 U.S. 681, 707-08 (1997). That discretion "extends to the timing of consideration for

18 petitions for attorney's fees while the matter is under appeal." *Karuk Tribe of Cal. v. U.S. Forest*

19 *Serv.*, No. CIV. 04-4275 (SBA), 2006 WL 228943, at *2 (N.D. Cal. Jan. 30, 2006).

20 **ARGUMENT**

21     The NCAA is clearly able to be ready for the April 29th hearing on plaintiffs' motion for

22 fees. Indeed, the NCAA's detailed Opposition (Dkt. 355), which challenged tens of thousands of

23 billing entries with specificity, resulted in plaintiffs conceding an additional **$911,980.45** in fees,

24 costs, and expenses. (Dkt. 361-1 at ¶8). Moreover, plaintiffs failed to dispute thousands of other

25 billing entries that the NCAA identified as deficient, which represent millions of dollars more in

26 fee requests.[3] The NCAA looks forward to its opportunity before this Court to further explain

27

28
[2] 9th Cir. Rules, Court Structure and Procedures.
[3] For example, Exhibit 22 to the NCAA's Opposition identified **6,086** entries for **$2,638,763.55** in

why plaintiffs' $50 million fee request is simply unreasonable. But for this Court's sake, the NCAA's sake, and even the plaintiffs' sake, the NCAA believes that the Court and the parties should only have to prepare for and conduct a fee hearing once, not twice.[4]

The NCAA concedes, however, that under normal circumstances courts should decide fee petitions while the appeal is pending. Fed.R.Civ.P. 54 Advisory Committee's Notes; *e.g.*, *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983). But this is not the normal fee petition. Under the particular circumstances of this case, it makes good sense to defer plaintiffs' fee petition and the fee hearing until after the Ninth Circuit issues its ruling.

**1. Deferring the fee hearing will potentially conserve considerable judicial resources.** Deferring a fee petition is appropriate when it would "promote judicial economy[.]"*Karuk*, 2006 WL 228943, at *2. Here, plaintiffs' fee petition is both complex and massive: 396 timekeepers at 33 different law firms submitted 38,974 non-uniform billing entries (Dkt. 355-1 at ¶2) in support of plaintiffs' request for $50 million in attorneys' fees, costs, and expenses (Dkt. 361 at 15). Moreover, given that the fee petition hearing (April 29th) is scheduled more than six weeks after the appellate argument (March 17th), the Ninth Circuit will almost certainly have issued its ruling before this Court can fulfill its "obligat[ion] to review the time billed and assess" the reasonableness of such a massive fee petition[5], and Judge Wilken can review any possible objections to this Court's Report and Recommendation. And if the Ninth Circuit reverses, then plaintiffs' petition would be mooted altogether. Similarly, if the Ninth Circuit vacates this Court's decision or even just the injunctive relief that it granted, then this fee

---

impermissible fee requests for clerical work performed by attorneys and paralegals. Plaintiffs voluntarily eliminated **347** clerical entries for a reduction of **$118,837.75** (Dkt. 361-1 at ¶22), and challenged only **33** out of **6,086** entries (**.54%**) identified by NCAA in Ex. 22 as being "incorrectly characterize[d] as time spent on secretarial/clerical work." *Id.* at ¶21. Plaintiffs failed to address the remaining **5,706** entries in Ex. 22, for which the NCAA seeks a further reduction of **$1,600,713.60.**

[4] Though the Ninth Circuit's decision could require the Court and the parties to prepare for and conduct two fee hearings, it is also possible that Ninth Circuit's decision could moot the fee petition altogether. It is for this exact reason that the NCAA requests a deferment of the hearing until a Ninth Circuit decision. Neither the NCAA nor plaintiffs can predict the impact on the plaintiffs' fee petition until the Ninth Circuit actually issues its decision. The plaintiffs will claim that the Ninth Circuit's decision will not impact their fee petition, but they cannot be sure of that before the decision. Any impact on the plaintiffs' fee petition will also have an impact on the Court's hearing on the plaintiffs' fee petition.
[5] *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012).

petition would also be mooted because the Court must then re-determine whether plaintiffs are the "prevailing parties in the overall action" after the final "resolution" of all of the claims. *See Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996), *as amended* (Jan. 15, 1997) (internal quotation marks omitted). In addition, if the Ninth Circuit affirmed but somehow reduced the injunctive relief granted to plaintiffs, then the Court would likely require supplemental briefing and another hearing to reassess degree of the success obtained by plaintiffs, which is the "most critical factor" in determining the reasonableness of a fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Court should therefore defer the fee hearing in order to avoid spending considerable judicial resources on a petition and hearing that may need to be redone, or may not need to be done at all.

**2. Deferring the fee hearing will potentially conserve considerable party resources.** The parties have already expended substantial resources in submitting, supporting, and opposing the motion for fees. And both parties will necessarily spend a lot more time and money to prepare for, travel to, and attend the hearing on plaintiffs' motion for fees. For the same reasons discussed above, the Ninth Circuit's ruling in this case could make the April 29th hearing unnecessary or duplicative. Thus, deferring the fee hearing would also avoid the risk of unnecessary costs to the parties.

**3. Policies in favor of pre-appeal fee petitions are inapplicable here.** Under normal circumstances, courts favor pre-appeal fee petitions for two reasons. First, "prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." Fed.R.Civ.P. 54 Advisory Committee's Notes; *e.g.*, *Masalosalo*, 718 F.2d at 957. Second, prompt fee decisions avoid piecemeal appeals because "if a district court decides a fee issue early in the course of a pending appeal on the merits, and the fee order is appealed, the appeals may be consolidated." *Masalosalo,* 718 F.2d at 957. Neither of those policies is implicated here. To start, Judge Wilken entered judgment in this case on August 8, 2014—over eight-and-a-half months before the scheduled fee hearing. Further, this case was filed in 2009 and litigated for five years by 33 law firms and hundreds of attorneys, most of whom never appeared before this Court. Simply put, the services performed in this case could hardly be

1 "fresh[] in the mind." Likewise inapposite are concerns over preserving appellate court resources. The Ninth Circuit has already heard argument in this case, and therefore could not possibly consolidate the merits appeal with a possible appeal for the still-pending fee petition.

**4. Plaintiffs will not be prejudiced.** The NCAA also recognizes that the Court should not defer its ruling on the fee petition if it were to cause plaintiff undue hardship. *See Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1040 (N.D. Cal. 2012) (denying motion to defer fee petition pending appeal because it would deny plaintiffs potential post-judgment interest on the fee award, "especially in light of the amount of time an appeal could take"). But plaintiffs have not represented to the NCAA that they would be prejudiced by delaying the fee petition. Nor does it seem likely that the delay would cause plaintiffs undue harm given the Ninth Circuit's speedy handling of the appeal and the already-delayed schedule of the fee petition.

## CONCLUSION

For the foregoing reasons, the NCAA respectfully requests that the Court grant the NCAA's proposed order to defer the April 29th hearing until after the Ninth Circuit's decision.

Respectfully submitted,

SCHIFF HARDIN LLP

By: */s/ Gregory L. Curtner*
Gregory L. Curtner (*pro hac vice*)
Attorneys for Defendant NCAA
350 S. Main St., Suite 210
Ann Arbor, MI 48104

Dated: April 13, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the e-mail addresses registered.

By:    */s/ Gregory L. Curtner*
Gregory L. Curtner (*pro hac vice*)
SCHIFF HARDIN LLP
Attorneys for Defendant NCAA

40984-0012
AA\200122075.1