Gregory L. Curtner (*pro hac vice*)
Robert J. Wierenga (SBN183687)
Kimberly K. Kefalas (*pro hac vice*)
Suzanne L. Wahl (*pro hac vice*)
Schiff Hardin LLP
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1500
Facsimile: (734) 222-1501
Email: gcurtner@schiffhardin.com
        rwierenga@schiffhardin.com
        kkefalas@schiffhardin.com
        swahl@schiffhardin.com

Attorneys for Defendant
National Collegiate Athletic Association

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EDWARD C. O'BANNON, JR., on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION (a/k/a the "NCAA"), and COLLEGIATE LICENSING COMPANY, (a/k/a "CLC").<br><br>            Defendants. | Case No. :09-cv-3329 CW<br><br>**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Date:                September 10, 2015<br>Time:                2:00 p.m.<br>Dept:                Courtroom 2, 4th Floor<br>Judge:                Hon. Claudia Wilken<br>Complaint filed: July 21, 2009 |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..................................................................................................... iii

NOTICE OF MOTION ............................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION .......................................................................................................... 1

II.     REQUEST FOR RELIEF ............................................................................................... 2

III.    LEGAL STANDARD ..................................................................................................... 2

IV.     OBJECTION TO JULY 13, 2015 ORDER ................................................................... 3

        OBJECTION NO. 1 ........................................................................................................ 3

        OBJECTION NO. 2 ........................................................................................................ 7

        OBJECTION NO. 3 ........................................................................................................ 8

        OBJECTION NO. 4 ........................................................................................................ 9

        OBJECTION NO. 5 ...................................................................................................... 11

        OBJECTION NO. 6 ...................................................................................................... 11

        OBJECTION NO. 7 ...................................................................................................... 12

        OBJECTION NO. 8 ...................................................................................................... 13

        OBJECTION NO. 9 ...................................................................................................... 13

        OBJECTION NO. 10 .................................................................................................... 14

        OBJECTION NO. 11 .................................................................................................... 14

        OBJECTION NO. 12 .................................................................................................... 15

        OBJECTION NO. 13 .................................................................................................... 17

        OBJECTION NO. 14 .................................................................................................... 18

        OBJECTION NO. 15 .................................................................................................... 18

        OBJECTION NO. 16 .................................................................................................... 19

        OBJECTION NO. 17 .................................................................................................... 22

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

i

OBJECTION NO. 18 ................................................................................................. 23

OBJECTION NO. 19 ................................................................................................. 23

OBJECTION NO. 20 ................................................................................................. 24

OBJECTION NO. 21 ................................................................................................. 24

V.      CONCLUSION ......................................................................................................... 25

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

ii

1

2

# INDEX OF AUTHORITIES

## CASES

*ACLU of Georgia v. Barnes,*
  168 F.3d 423 (11th Cir. 1999) .................................................................. 17

*Baughman v. Wilson Freight Forwarding Co.,*
  583 F.2d 1208 (3d Cir. 1978)................................................................. 8, 16

*Bonner v. Fuji Photo Film,*
  No. C 06-04374 CRB, 2008 WL 410260 (N.D. Cal. Feb. 12, 2008) ......................... 24

*Cabrales v. County of Los Angeles,*
  935 F.2d 1050 (9th Cir. 1991) ............................................................... 7, 8

*Cognizant Tech. Solutions v. McAfee,*
  No. 14-CV-01146-WHO, 2014 WL 3885868 (N.D. Cal. Aug. 7, 2014) ....... 12, 13, 20

*Cruz v. Starbucks Corp.,*
  No. C-10-01868 JCS, 2013 WL 2447862 (N.D. Cal. June 5, 2013) .............. 23, 24, 25

*Cunningham v. Cnty. of Los Angeles,*
  879 F.2d 481 (9th Cir. 1988) .................................................................. 16

*Davis v. City of San Francisco,*
  976 F.2d 1536 (9th Cir. 1992) ................................................................ 18

*Dawson v. Marshall,*
  561 F.3d 930 (9th Cir. 2009) ................................................................... 2

*Democratic Party of Wash. State v. Reed,*
  388 F.3d 1281 (9th Cir. 2004) ................................................................ 20

*Estate of Conners by Meredith v. O'Connor,*
  6 F.3d 656 (9th Cir. 1993) ..................................................................... 3

*Gates v. Deukmejian,*
  987 F.2d 1392 (9th Cir. 1992) .................................................................. 3

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994) ..................................................................... 22

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)............................................. 1, 2, 4, 7, 9, 10, 16, 17, 18

*Herrington v. Cnty. of Sonoma,*
  883 F.2d 739 (9th Cir. 1989) .................................................................. 21

*In re Bluetooth Headset Prods. Liability Litig.,*
  654 F.3d 935 (9th Cir. 2011) .................................................................. 22

*Lahiri v. Universal Movie & Video Distribution Corp.,*
  606 F.3d 1216 (9th Cir. 2010) ............................................................ 11, 12

*McCarthy v. R.J. Reynolds Tobacco Co.,*
  No. CIV. 2:09-2495 WBS, 2011 WL 4928623 (E.D. Cal. Oct. 17, 2011) ................ 23

*McCown v. City of Fontana,*
  565 F.3d 1097 (9th Cir. 2008) .............................................................. 9, 10

*Moralez v. Whole Food Market, Inc.,*
  No. C 12-01072, 2013 WL 3967639 (N.D. Cal. July 31, 2013)............................ 22

*Moreno v. City of Sacramento,*

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

iii

534 F.3d 1106 (9th Cir. 2008) ................................................................... 20

*Navarro v. Gen. Nutrition Corp.,*
    No. C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ................... 3, 12

*New York v. Microsoft,*
    297 F. Supp. 2d 15 (D.D.C. 2003) .................................................... 6, 15, 16

*Payne v. Bay Area Rapid Transit Dist.,*
    No. C 08-2098 WDB, 2009 WL 1626588 (N.D. Cal. June 5, 2009).......................... 24

*PQ Labs., Inc. v. Qi,*
    No. 12-cv-00450 CW, 2015 WL 224970 (N.D. Cal. Jan. 16, 2015) .......................... 11

*Prison Legal News v. Schwarzenegger,*
    561 F. Supp. 2d 1095 (N.D. Cal. 2008) .................................................. 11, 15

*Rodriguez v. General Dynamics Armament & Tech. Prods.,*
    775 F.Supp.2d 1217 (D. Haw. 2011) ....................................................... 23

*Rojas v. Zaninovich,*
    No. 1:09-cv-0705, 2015 WL 3657172 (E.D. Cal. June 11, 2015)....................... 14, 23

*Schwarz v. Sec'y of Health & Human Servs.,*
    73 F.3d 895 (9th Cir. 1995) ..................................................... 4, 6, 7, 10, 16

*Tuttle v. Sky Bell Asset Mgmt., LLC,*
    No. C 10-03588 WHA, 2012 WL 3257799 (N.D. Cal. Aug. 8, 2012)....................... 24

*Webb v. Sloan,*
    330 F.3d 1158 (9th Cir. 2003) ......................................................... 4, 6, 10

*Welch v. Metro Life Ins. Co.,*
    480 F.3d 942 (9th Cir. 2007) ................................................. 11, 12, 13, 14, 21

## STATUTES

15 U.S.C. § 26 ................................................................................... 1

28 U.S.C. § 636(b)(1)(B) ......................................................................... 3

Clayton Act....................................................................................... 1, 3

## RULES

Fed. R. Civ. P. 72(b) ............................................................................. 3

N.D. Cal Civil L.R. 72-3 .......................................................................... 2

N.D. Cal. Civil L.R. 7-2(b) ....................................................................... 3

N.D. Cal. Civil L.R. 72-3(a) ................................................................... 2, 3

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

iv

1    **NOTICE OF MOTION**

2        TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE

3    THAT on September 10, 2015 at 2:00 p.m., or as soon as the motion shall be heard, in Courtroom

4    2 of the above-captioned Court, located at 1301 Clay Street, Oakland, California, Defendant

5    National Collegiate Athletic Association ("NCAA") will, and hereby does, move the Court to

6    make a de novo determination of the Order Granting Motion for Attorneys' Fees, Dkt. 405 and to

7    reduce plaintiffs' requested fees to reasonable amounts permitted by law. In support of this

8    motion, the NCAA relies on the points and authorities below and the record in this matter.

9        **MEMORANDUM OF POINTS AND AUTHORITIES**

10   **I.    INTRODUCTION**

11       The NCAA requests that the Court make a de novo determination of plaintiffs' fee

12   petition. The Order Granting Motion for Attorneys' Fees, Dkt. 405, erred in its application of the

13   line of cases under *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) and also in its analysis of the

14   time records submitted by plaintiffs.

15       Section 16 of the Clayton Act states that "[i]n any action under this section in which the

16   plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable

17   attorney's fee, to such plaintiff." 15 U.S.C. § 26. It is important to keep in mind the statutory

18   language: "the plaintiff [who] substantially prevails." It is the ***plaintiff***, not the plaintiffs'

19   attorneys, who may recover reasonable fees and costs. Even then, it is only the plaintiff ***who***

20   ***substantially prevails*** who may recover.

21       Ed O'Bannon, along with his cohort of former student-athlete co-plaintiffs, is

22   unequivocally ***not*** a plaintiff who substantially prevailed in this case. Mr. O'Bannon failed to

23   certify his damages class. *SAL* Dkt. 893 at 22.[1] Mr. O'Bannon abandoned his individual damages

24   claims. *SAL* Dkt. 1071 at 4. And Mr. O'Bannon lost at trial on his injunctive relief claims. Dkt.

25   291 at 66-78 (finding no restraint in alleged group licensing markets). Nothing in this Court's

26   decision or Injunction, Dkt. 292, granted Mr. O'Bannon any relief. There is no sense in which

27

28   _____
     [1] Citations in the form of *SAL* Dkt. are to documents filed in *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 3:09-cv-01967-CW.

1    Mr. O'Bannon or any other former student-athlete plaintiff can be said to have substantially

2    prevailed before this Court, and the fee award must take account of the fact that from July 21,

3    2009 through July 18, 2013 ***there was no plaintiff in this matter who received any benefit as a***

4    ***result of this litigation***. The plain language of the statute precludes recovery for work on behalf

5    of those plaintiffs.

6    In *Hensley*, the Supreme Court set out a framework for awarding fees in a case where

7    "one lawsuit [presents] distinctly different claims for relief that are based on different legal

8    theories," and where plaintiffs achieved much less than they set out to do. 461 U.S. at 433-440.

9    The record in this case shows a clear divide between the case plaintiffs pursued before moving for

10   class certification on August 31, 2012 and the one they pursued afterwards.  Proper application of

11   *Hensley* demands a substantial reduction to account for this division.

12   Moreover, plaintiffs submitted time records that are insufficient to support their request

13   for fees. The records show a disregard for proper billing judgment, and their requests must be

14   reduced accordingly. Judge Cousins failed to adequately account for these dramatic deficiencies.

15   **II.    REQUEST FOR RELIEF**

16   The NCAA requests a total reduction of $36,864,238.59 in fees and $4,916,282.68 in

17   costs.[2] NCAA Opp. Exs. 1 and 2.[3] Because an individual time entry may be improper for multiple

18   reasons, the reductions requested cannot simply be added together. The NCAA's method for

19   totaling the reduction is outlined in its Opposition to Plaintiffs' Amended Motion for Attorneys'

20   Fees, Costs and Expenses, which is incorporated here by reference. Dkt. 355 at 3 & n.2.

21   **III.   LEGAL STANDARD**

22   The NCAA makes these objections pursuant to N.D. Cal Civil L.R. 72-3, and Judge

23   Cousins' determination is subject to de novo review. N.D. Cal. Civil L.R. 72-3(a); *Dawson v.*

24   *Marshall*, 561 F.3d 930, 932 (9th Cir. 2009) (district courts must conduct de novo review of

---

[2] Judge Cousins reduced plaintiffs' fees by $1,151,129.41 and their costs by $3,749,191.62. Dkt. 405 at 27-28. Those reductions were necessary but clearly inadequate.

[3] Citations in the form of "NCAA Opp. Ex. _" are to the exhibits to the Declaration of Kimberly K. Kefalas In Support of the NCAA's Opposition to Plaintiffs' Amended Motion for Attorneys' Fees, Costs and Expenses, Dkt. 355-1 through 355-49.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

2

dispositive decisions by magistrates); *Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656 (9th Cir. 1993) (claims for attorneys' fees are dispositive).[4]

The district court "cannot simply concur in the magistrate's findings ... it must conduct its own review in order to adopt the recommendations. Further, in computing an award, the Court should provide a detailed account of how it arrives at appropriate figures for the number of hours reasonably expended and a reasonable hourly rate." *Navarro v. Gen. Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, at *5 (N.D. Cal. Sept. 22, 2005) (internal citations omitted).

A court must "independently review plaintiffs' fee request even absent defense objections." *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992). Moreover, when a party opposing the fee request submits rebuttal evidence to the fee petition, the Court must review the opposition's objections and the movant's hours. *Id.*

## IV.   OBJECTIONS TO JULY 13, 2015 ORDER[5]

**OBJECTION NO. 1: The NCAA objects to the conclusion that "all of plaintiffs' unsuccessful claims were related to the successful claims." Dkt. 405 at 10.**

**Reason:** Plaintiffs' two theories of liability involved different groups of plaintiffs; different relevant markets; different alleged wrongdoing; different conspiracies; and different defendants. Claims are related only when there is a common core of facts or the claims are based on related legal theories. Plaintiffs have not shown that their pre-August 31, 2012 claims are related to the sole claim on which they ultimately prevailed and cannot recover fees related to those abandoned or rejected claims. *See* NCAA Opp., Dkt. 355 at 8-11.

**Authority:** The Supreme Court has said that, where a plaintiff has succeeded on only

---

[4] Judge Cousins stated that his order was "nondispositive," Dkt. 405 at 26, but a determination of a motion for attorneys' fees is dispositive of such a claim, and a federal magistrate judge lacks authority to issue such an order without the consent of the parties. *O'Connor*, 6 F.3d at 659. Accordingly, the motion must have been referred under 28 U.S.C. § 636(b)(1)(B), and Federal Rule 72(b), Local Rules 72-3(a) and 7-2(b) now apply.

[5] The NCAA does not object to the finding that "the Clayton Act does not provide statutory authority" for the award of expert fees as costs or expenses, Dkt. 405 at 1-2, and refers the Court to the authority in support of those findings at Dkt. 355 at 22-23. The NCAA also does not object to the finding that plaintiffs' voluntary limited reductions in requested fees and costs should be accepted. Dkt. 405 at 5.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

3

some of his claims for relief, two questions must be answered:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley*, 461 U.S. at 434. Here, plaintiffs improperly seek to recover fees for unsuccessful claims that were unrelated to their successful claim, as discussed in Objection 1 and in Objection 2. Additionally, even if these unsuccessful claims were related to the successful claim, plaintiffs' level of success relative to the goals of this litigation demands that the number of hours be reduced, as discussed in Objection 4 below.

Plaintiffs may not recover time related to unsuccessful claims – those rejected by the court or abandoned by the plaintiffs – that are unrelated to their successful claim. *Hensley*, 461 U.S. at 435. Claims are related where there is a common core of facts, or where the claims are based on related legal theories. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). The focus is not whether the successful and unsuccessful claims are similar, but whether they arose out of the same conduct. *Id.* (citing *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 902-03 (9th Cir. 1995)).

There can be no doubt that plaintiffs' legal and factual theories changed radically during the course of the case. Judge Cousins acknowledged that the legal theories had changed, citing this Court's Order. *See* Dkt. 405 at 8 ("To be sure, plaintiffs' legal theories did change.") (citing *SAL* Dkt. No. 876 at 4); *see also SAL* Dkt. 827 at 4:17-20 (Court stating that "starting with the sort of dispute about whether the plaintiffs changed their theory and whether anything needs to be done about that, the answer is yes, plaintiffs did change their theory, to some degree at least.").

It is equally clear that plaintiffs' factual basis for their claims changed as well. *See SAL* Dkt. 639 at 1-10 (outlining changes in case theory). Before the August 31, 2012 class certification motion, plaintiffs sought to bring a damages class solely on behalf of "former student-athletes … whose images, likenesses and/or names may be, or have been, licensed or sold by Defendants … *after the conclusion of the athlete's participation in intercollegiate athletics*." *SAL* Dkt. 327 at ¶ 268. Plaintiffs' putative declaratory injunctive relief class did include current and former student-athletes, but again, it was limited to those whose "images, likenesses and/or names may be, or

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

4

have been, licensed or sold by Defendants … **after the conclusion of the athlete's participation in intercollegiate athletics**." *Id.* (emphasis added). These classes were allegedly harmed by signing a "perpetual release" form that "fixed[ed] the prices at which **former** student-athletes are paid for their commercial licensing rights or foreclosed from exercising any such rights." *Id.* at ¶ 314 (emphasis added). Plaintiffs' alleged relevant market was a post-collegiate licensing market related to the "retail market for products identified with college athletics." *SAL* Dkt. 327 at ¶¶ 306, 319, 320, 324. And plaintiffs repeatedly told this Court and others that they were **not** claiming a right to be paid for appearing in live broadcasts and that they did not challenge the NCAA's definition of amateurism. *SAL* Dkt. 639 at 10-12 (collecting examples).

That was the factual basis on which plaintiffs conducted three years of discovery.[6] It was a class action challenging whether (always non-existent) NCAA rules that allegedly prevented former student-athletes from licensing their names, images or likenesses to third-parties for uses that did not include live television appearances violated the antitrust laws. The NCAA's alleged wrongful "conduct" was directed at former student-athletes and occurred in the post-graduation licensing market.

By contrast, in plaintiffs' only successful claim, the Court found that the market participants are prospective and current student-athletes; that the transaction at issue is between prospective and current student-athletes and their schools; and that the market is one in which athletics services and licensing rights are exchanged for educational services.[7] Dkt. 291 at 94. Not only were these claims not pled before August 2012, plaintiffs specifically denied asserting them. *See SAL* Dkt. 639 at 1 ("We don't claim rights to be compensated for appearing in live broadcasts or playing on the field, the amateur principles that have been so hallowed") (quoting plaintiffs' counsel on February 8, 2012); *SAL* Dkt. 107 at 3 ("Unlike other cases involving the NCAA, this case does not involve questions of the protection of amateur sports, the student athlete experience,

---

[6] Judge Cousins found that plaintiffs' unsuccessful claims contributed to plaintiffs' success in part because plaintiffs "defeated multiple motions to dismiss." Dkt. 405 at 8. But it is difficult to understand how prevailing on a motion to dismiss on different legal theories on behalf of different plaintiffs could have made any helpful contribution to plaintiffs' ultimate success.

[7] By reciting the Court's findings here, the NCAA does not agree with or endorse them.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

5

1   or other goals."). The wrongful conduct found by the Court was directed at prospective and

2   current student-athletes providing "labor" in a pre-enrollment collegiate education market.

3       These original claims and the successful claim clearly were not based on a common core

4   of facts and did not arise out of the same conduct. *Webb*, 330 F.3d at 1168; *New York v.*

5   *Microsoft*, 297 F. Supp. 2d 15, 34 (D.D.C. 2003) (finding claims unrelated where the claims

6   involved different products, markets and anticompetitive conduct). In the original claims, the

7   NCAA was accused of extracting a release from student-athletes and then using that release to bar

8   those student-athletes from participating in a licensing market with third parties like EA and CLC

9   after the student-athletes' eligibility had expired. In the successful claim, the Court found that

10   NCAA bylaws prevented prospective and current student-athletes from extracting live broadcast

11   licensing payments when they were recruited by NCAA member institutions.

12       In finding that all the claims were related, Judge Cousins held "that a common core of

13   facts underlay all of the claims plaintiffs brought against the NCAA during the five years of

14   litigation: the claims are all premised upon defendants' exploitative use of plaintiffs' names,

15   image, and likenesses to generate revenue for defendants." Dkt. 405 at 8. But describing the

16   claims at this level of abstraction nullifies the necessary analysis, making a determination of

17   relatedness impossible. *See, e.g. Schwarz*, 73 F.3d at 902-04 (rejecting plaintiff's argument that

18   claims relied on same facts because "her employer used the identical illegal discriminatory

19   process and decision-making procedures to deny her a job in both Phoenix and Portland" when a

20   closer look revealed a distinct course of conduct and relief sought for each claim).

21       The "plaintiffs" who litigated this suit prior to August 31, 2012 are not the "plaintiffs"

22   who prevailed. No former student-athlete has received or will ever receive any benefit as a result

23   of the Court's injunction.[8] The "exploitative use" the original plaintiffs complained of is not the

24   "exploitative use" that the Court ultimately found. The Court found, as the NCAA had always

25   maintained, that former student-athletes were already free to be compensated for use of their

26   names, images, and likeness. Even the "defendants" in question had changed by the time the

---

[8] *See* Dkt. 291 at 46 (Court finding "former student-athletes are already permitted to receive compensation for use of their names, images, and likenesses"); Dkt. 292.

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

6

1   judgment was entered. The NCAA alone created the bylaws found to be anticompetitive; EA and

2   CLC have no role in that process.

3       Plaintiffs' attorneys essentially litigated two different cases under one caption, and the

4   NCAA can only be expected to pay fees for the successful case. Adversaries can only be expected

5   to be charged for hours that are properly billed to clients. *Hensley*, 461 U.S. at 434. If plaintiffs'

6   attorneys were directly billing their clients, they would not be able to demand that the successful

7   class of current student-athletes pay for litigation on behalf of the unsuccessful former student-

8   athletes – especially when that litigation occurred before the successful plaintiffs and their claim

9   were even part of this case. If plaintiffs' attorneys could not ask their successful clients to pay for

10  the years of work on the unrelated and unsuccessful claims, they cannot ask the NCAA to do so.

11      **Relief Requested:** The NCAA requests that the Court find that plaintiffs may not recover

12  fees for work done before August 31, 2012 on the unrelated and unsuccessful claims and reduce

13  plaintiffs' recovery by $23,084,122.89. *See* NCAA Opp. Ex. 12.

14      **OBJECTION NO. 2: The NCAA objects to the conclusion that there is a "general**

15  **rule" in the Ninth Circuit "even if a specific claim fails, the time spent on that claim may be**

16  **compensable, in full or in part, if it contributes to the success of other claims" with respect**

17  **to claims *unrelated* to the successful claims. Dkt. 405 at 8.**

18      **Reason:** Both the Supreme Court and the Ninth Circuit are quite clear. Plaintiffs may

19  recover no fees for claims unrelated to their successful claims. *See* NCAA Opp., Dkt. 355 at 8-11.

20      **Authority:** Where claims are found to be unrelated, there can be no recovery for the

21  unsuccessful and unrelated claims, even when the plaintiff has achieved overall excellent results.

22  *Hensley*, 461 U.S. at 435 ("no fee may be awarded for services on the unsuccessful claim");

23  *Schwarz*, 73 F.3d at 906 ("the fact that Schwarz achieved an excellent result on her one successful

24  claim doesn't work to resurrect the hours her lawyers spent on the unsuccessful claims; under

25  *Hensley*, the fee award cannot include those hours.").

26      Judge Cousins cites *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir.

27  1991) for the proposition that *Hensley* establishes "the general rule that plaintiffs are to be

28

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

7

1    compensated for attorney's fees incurred for services that contribute to the ultimate victory in the

2    lawsuit" and that "even if a specific claim fails, the time spent on that claim may be compensable,

3    in full or in part, if it contributes to the success of other claims." Dkt. 405 at 8. But this portion of

4    *Cabrales* referred only to **related** claims, not **unrelated** claims. In the paragraph preceding the

5    quoted language, the Ninth Circuit said:

6           The [*Hensley*] Court stated that a prevailing plaintiff was not entitled to
            compensation for attorney's fees for time expended unsuccessfully pursuing

7           claims unrelated to those on which plaintiff ultimately prevailed. However, the
            Court went on to hold that "[w]here a lawsuit consists of **related claims**, a plaintiff

8           who has won substantial relief should not have his attorney's fee reduced simply
            because the district court did not adopt each contention raised."

9

10   *Cabrales*, 935 F.2d at 1052 (internal citations omitted; emphasis added). Regardless of whether

11   plaintiffs' attorneys were able to repurpose some of their pre-August 31, 2012 work product in

12   their successful claims, they may not recover fees for work performed on the unrelated

     unsuccessful claims. Judge Cousins applied an incorrect legal standard.

13

14       **Relief Requested:** The NCAA requests that the Court find that plaintiffs may not recover

15   fees for work done before August 31, 2012 on the unrelated and unsuccessful claims and reduce

16   plaintiffs' recovery by $23,084,122.89. *See* NCAA Opp. Ex. 12.

17       **OBJECTION NO. 3: The NCAA objects to the conclusion that plaintiffs' state law**

18   **claims "share a common core of facts with the successful antitrust claims brought against**

19   **the NCAA" such that plaintiffs are entitled to fees related to those claims. Dkt. 405 at 17.**

20       **Reason:** As discussed above in Objection 1, the abandoned state law claims do not share a

21   common core of facts with the successful claim. Moreover, the Clayton Act awards fees only in

     relation to plaintiff's successful antitrust claim. *See* NCAA Opp., Dkt. 355 at 13.

22

23       **Authority:** "There is no authority to include within the fee under the Clayton Act

24   compensation for work done in connection with the plaintiff's separate state-law claim."

     *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1216 (3d Cir. 1978). Plaintiffs may

25

26   not recover for these fees. *See* Declaration of Paul Bateman ("Bateman Decl.") at ¶ 13.

27       **Relief Requested:** The NCAA requests a $108,143.61 reduction. *See* NCAA Opp. Ex. 16.

28

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

8

1    **OBJECTION NO. 4: The NCAA objects to the conclusion that plaintiffs achieved**

2    **"excellent results" such that fees for related unsuccessful claims should be awarded in full.**

3    **Dkt. 405-9-10.**

4         **Reason:** The Supreme Court and Ninth Circuit have held that a court must compare

5    plaintiffs' results to their goals and reduce the award of attorneys' fees when plaintiffs have fallen

6    short. *See* NCAA Opp., Dkt. 355 at 11-13.

7         **Authority:** Once a court has determined which hours were spent on successful claims or

8    for unsuccessful claims related to the successful claims, the court looks to the degree of success

9    obtained. "A reduced fee award is appropriate if the relief, ***however significant***, is limited in

10   comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440 (emphasis added).

11   The court need not engage in a test of strict proportionality, but "a comparison of damages

12   awarded to damages sought is required." *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th

13   Cir. 2008).

14        While there is no dispute with Judge Cousins' finding that that plaintiffs' success in this

15   case was unprecedented, plaintiffs' goals for this lawsuit far exceeded their actual success. For

16   example:

17   - Plaintiffs sought damages for a class of former student-athletes who were allegedly

18     barred from licensing their own names, images and likenesses to third-parties in a

19     post-graduation licensing market, damages that they claimed were worth millions if

20     not billions of dollars. They failed.

21   - Plaintiffs sought declaratory and injunctive relief for former student-athletes who were

22     allegedly barred from licensing their own names, images and likenesses to third-

23     parties in a post-graduation licensing market. They failed.

24   - Plaintiffs abandoned their claim for unjust enrichment on behalf of the class.

25   - Plaintiffs abandoned their claim for accounting on behalf of the class.

26   - Plaintiffs abandoned their claims for individual damages for their named plaintiffs.

27   - Plaintiffs requested extensive injunctive relief for their class of current student-

28

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF**
**DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

9

athletes, most of which the Court did not grant.

*See* NCAA Opp., Dkt. 355 at 11-12. Plaintiffs succeeded only in securing injunctive relief for prospective and current student-athletes. While significant, plaintiffs' "victory clearly fell short of [their] goal … it is unreasonable to grant [their] attorneys more than a comparable portion of the fees and costs they requested." *McCown*, 565 F.3d at 1104-05.

Judge Cousins erroneously found that the analysis of a fee petition should be all or nothing – that plaintiffs, having avoided total defeat in this case, must be awarded total victory on their fees. Dkt. 405 at 10. But, unlike in *Game of Thrones*, there is a middle ground for fee awards, especially in cases where plaintiffs change their legal theory, factual basis, and even class members midstream. There is substantial precedent in both the Supreme Court and the Ninth Circuit to guide the Court through its analysis, dividing successful claims from unsuccessful, related claims from unrelated, and comparing plaintiffs' results to their goal. *See Hensley*, 461 U.S. at 433-440; *McCown*, 565 F.3d at 1104-05; *Webb*, 330 F.3d at 1168; *Schwarz*, 73 F.3d at 902-04. This precedent demands a substantial reduction in plaintiffs' requested fee award.

**Relief Requested:** The NCAA requests that plaintiffs' hours be reduced by 100% for all fees before August 31, 2012 (to the extent these hours are not already reduced as unrelated pursuant to Objections 1 and 2); by 80% between September 1, 2012 and November 8, 2013[9]; and all hours after November 8, 2013 related to damages, group licensing or live broadcast, products like jerseys or trading cards, monitoring the *Keller* litigation, time related to any specific plaintiffs, or other unsuccessful claims, for a total reduction of $32,835,828.85. NCAA Opp., Dkt. 355 at 12-13; *see* NCAA Opp. Ex. 12, 14 and 15.

The NCAA further requests a corresponding 100% reduction of expenses before August 31, 2012 ($798,994.60) and a 80% reduction of expenses from September 1, 2012 through November 8, 2013 ($1,717,010.86), for a reduction of $2,516,005.46.[10] *See* NCAA Opp. Ex. 2.

---

[9] During this time – from the filing of the class certification motion until the denial of certification for the damages class – plaintiffs' counsel was focused almost entirely on the unsuccessful damages class theory. *See* Dkt. 355 at 12 n.15.

[10] This number was listed incorrectly in the NCAA's opposition brief, Dkt. 355 at 25, but is corrected here.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

10

**OBJECTION NO. 5: The NCAA objects to the conclusion that plaintiffs are entitled to fees related to "damages [and] jury trial preparation." Dkt. 405 at 14-15.**

**Reason:** Fees related to damages and jury trial preparation did not contribute to plaintiffs' receipt of injunctive relief after a bench trial and should not be awarded. *See* NCAA Opp., Dkt. 355 at 7-8.

**Authority:** As the NCAA argues above, plaintiffs should not receive fees for unsuccessful related claims. *See* Objection 4. Plaintiffs abandoned their damages claims and did not have a jury trial. Work related to damages and a jury trial did not contribute to plaintiffs' success at a bench trial for injunctive relief.[11] *See* Bateman Decl. at ¶¶ 10, 12.

**Relief Requested:** The NCAA requests that plaintiffs' award be reduced by $116,348.00 for fees related to damages and $639,305.39 for fees related to jury trial preparation. NCAA Opp. Exs. 9 and 11.

**OBJECTION NO. 6: The NCAA objects to the conclusion that "the block-billed entries are adequately detailed to permit the Court to assess the reasonableness of hours expended." Dkt. 405 at 12.**

**Reason:** The NCAA identified over 13,000 block-billed entries. Block billing "makes it more difficult to determine how much time was spent on particular activities," and a 30% reduction is appropriate. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Lahiri v. Universal Movie & Video Distribution Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010). *See* NCAA Opp., Dkt. 355 at 4-5.

**Authority:** While block-billed entries may provide a sufficient basis for a fee award in some cases, this is not one of them. *See PQ Labs., Inc. v. Qi*, No. 12-cv-00450 CW, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015) (Wilken, J.) (permitting block-billed entries when plaintiffs had already reduced their entire fee award by 18% to account for potential time record issues, where the entries otherwise had enough information, and where defendants had declined to challenge individual entries). The attorneys' choice to block bill has made the review process

---

[11] *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 (N.D. Cal. 2008), cited by plaintiffs and referred to by Judge Cousins, Dkt. 405 at 14, does not address this point.

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

11

more difficult, as "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d at 948. Moreover, block billing may inflate time records by 10-30%. *Id.*; *Lahiri*, 606 F.3d at 1222-23 (affirming 30% reduction). The NCAA individually identified over 13,000 problematic block-billed entries, NCAA Opp. Ex. 3, of which plaintiffs challenged only 20, Dkt. 361-1 at ¶ 9. Judge Cousins discussed only two. Dkt. 405 at 11-12. But this inadequate analysis fails to consider the literally thousands of other problematic entries. *See* Bateman Decl. at ¶¶ 4-5 (providing a selection of insufficient block-billed entries).

**Relief Requested:** The NCAA requests a 30% reduction of all block-billed entries, which is $6,874,133.28. *See* NCAA Opp. Ex. 3.

**OBJECTION NO. 7: The NCAA objects to the conclusion that plaintiffs' time record contained no vague entries. Dkt. 405 at 12.**

**Reason:** The NCAA identified over 4000 entries that contain "bare and unhelpful explanations" for which fees should not be awarded. *See* NCAA Opp., Dkt. 355 at 5.

**Authority:** Bare and unhelpful descriptions of attorney time do not meet a fee-seeker's burden of showing how the fee request is reasonable. *Cognizant Tech. Solutions v. McAfee*, No. 14-CV-01146-WHO, 2014 WL 3885868, at *2-3 (N.D. Cal. Aug. 7, 2014) (50% reduction for "attention to" entries "without further description about what effort was expended or what task was accomplished"). This is especially true here, where plaintiffs' counsel worked on both recoverable and unrecoverable subjects. *Navarro*, 2005 WL 2333803 at *15. The NCAA objects not to short entries, but to entries whose language does not allow the NCAA to determine what claims or which defendant the work was directed to or whether the time expended was reasonable. The NCAA identified 4292 entries with "bare and unhelpful explanations," NCAA Opp. Ex. 4, of which plaintiffs disputed only 24, Dkt. 361-1.[12] Judge Cousins discussed only one entry in determining that all 4292 were reasonable. But, again, this analysis failed to consider thousands of problematic entries. *See* Bateman Decl. at ¶ 6 (selection of unrecoverable vague

---

[12] Plaintiffs additionally conceded that "certain of the entries identified … warrant a modest reduction of 10%," which amounted to $37,690.45, or less than 2% of the reduction requested by the NCAA. Dkt. 361-1 at ¶ 11.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

12

entries). These entries must therefore be reduced.

**Relief Requested:** The NCAA requests a 50% reduction of all vague entries, which is $2,192,858.38. *See* NCAA Opp. Ex. 4.

**OBJECTION NO. 8: The NCAA objects to the conclusion that plaintiffs may recover fees based on time records obscured by redaction. Dkt. 405 at 13.**[13]

**Reason:** The NCAA cannot challenge the accuracy or reasonableness of time entries it cannot actually review. If plaintiffs will not allow the NCAA the opportunity to challenge the content of the time record, plaintiffs cannot recover the fees. *See* NCAA Opp., Dkt. 355 at 6.

**Authority:** This district has held that a party "is not allowed to petition the Court for fees but hide from the public the basis for its request." *Cognizant Tech.*, 2014 WL 3885868 at *3 (deducting 100% of redacted fees). This is precisely what plaintiffs have done.[14] *See* Bateman Decl. at ¶¶ 7-8.

**Relief Requested:** The NCAA requests a $574,376.41 reduction for redacted time records. *See* NCAA Opp. Ex. 5 and 6.

**OBJECTION NO. 9: The NCAA objects to the conclusion that plaintiffs' use of quarter-hour time entries to "describe tasks that likely took a fraction of the time" was not "widespread and excessive" and that therefore only a 5% reduction in these entries is appropriate. Dkt. 405 at 14.**

**Reason:** Plaintiffs' use of quarter-hour time entries was widespread and excessive. The NCAA identified 5191 entries billed in this format, representing 13,539 hours and $6,652,883.75. NCAA Opp., Dkt. 335 at 6. These entries should have been reduced by 20%, as in *Welch*, 480 F.3d at 948-49, not 5%. *See* NCAA Opp., Dkt. 355 at 6.

---

[13] The NCAA further objections to the statement that "plaintiffs did accept some of the NCAA's proposed reductions to certain time entries." Dkt. 405 at 13. Plaintiffs did not concede that redacted time entries should be excluded. Dkt. 361 at 10; *see* Dkt. 405 at 27 (Exhibit 1: Lodestar Reductions shows no reduction for redacted entries). To the extent that some redacted time entries were reduced by plaintiffs, it was because those entries were defective for an additional reason or reasons.

[14] *In camera* review by the court does not address this problem, as the NCAA was still not able to challenge the content of the time records.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

13

**Authority:** The Ninth Circuit found that when time records re "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences," a 20% reduction of all quarter-hour or half-hour billed time entries is appropriate. *Welch*, 480 F.3d at 948-49.[15] That is the case here. These 5191 entries should be reduced by 20%.[16] NCAA Opp. Ex. 7.

**Relief Requested:** The NCAA requests a 20% reduction for quarter-hour billed entries, which is $1,330,576.75. *See* NCAA Opp. Ex. 7.

## OBJECTION NO. 10: The NCAA objects to the lack of ruling or analysis on rounded quarter-hour billing.

**Reason:** The Order does not address rounded quarter-hour time entries. These entries should be reduced by at least 20%. *See* NCAA Opp., Dkt. 355 at 6.

**Authority:** The NCAA identified 12 timekeepers whose time entries always end in .0, .3, .5. or .8, suggesting that they were rounding up quarter-hour entries to avoid detection. *See* Bateman Decl. at ¶ 9. Just as undisguised quarter-hour billing should be reduced, *see supra* at Objection 9, so too should these covert quarter-hour time entries. Plaintiffs did not contest the NCAA's identification of these entries as impermissible.

**Relief Requested:** The NCAA requests a 20% reduction for rounded quarter-hour billed entries, which is $160,445.65. *See* NCAA Opp. Ex. 8.

## OBJECTION NO. 11: The NCAA objects to the conclusion that plaintiffs are entitled to fees related to "media-related activities." Dkt. 405 at 14-15.

**Reason:** Plaintiffs do not assert that their media-related activities contributed to the success of the litigation, and so these fees are not recoverable. *See* NCAA Opp., Dkt. 355 at 7-8.

**Authority:** Media-related fees are recoverable only when "directly and intimately related

---

[15] *See also Rojas v. Zaninovich*, No. 1:09-cv-0705, 2015 WL 3657172, at *27-28 (E.D. Cal. June 11, 2015) (applying 20% reduction to all quarter-hour billed time because existence of some clearly inflated time entries (i.e., reading minute orders) "suggests that the reported time *was* inflated significantly by the quarter-hour billing minimum on other tasks") (emphasis in original).

[16] Note that the entry cited in the Order – "Arrange for delivery of Wednesday LA Times for Jon King" – is clearly a clerical task and should not be recovered for at all. *See* Dkt. 405 at 14.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

14

1  to the successful representation of a client." *Prison Legal News*, 561 F. Supp. 2d at 1101. The

2  NCAA identified 243 media-related entries, NCAA Opp. Ex. 10, of which plaintiffs challenged

3  only 10. Dkt. 361-1 at ¶ 14. But plaintiffs have not shown that these media-related activities were

4  directly related to the successful representation of the client, and so plaintiffs may not recover

5  their fees. *See* Bateman Decl. at ¶ 11.

6      **Relief Requested:** The NCAA requests a reduction of $185,224.00. *See* NCAA Opp. Ex.

7  10.

8      **OBJECTION NO. 12: The NCAA objects to the conclusion that plaintiffs may**

9  **recover fees relating to claims against EA or CLC. Dkt. 405 at 15.**

10     **Reason:** The court erred when it awarded fees for the hours spent by plaintiffs' counsel

11 litigating against EA and CLC in this litigation.[17] *See* Dkt. 405 at 16. The plaintiffs' litigation

12 against EA and CLC was devoted to a group licensing video claim, and the plaintiffs did not

13 show that the EA/CLC- related work contributed to the plaintiffs' success at trial on their college

14 education market claim. Judge Cousins accepted the argument that the EA/CLC work contributed

15 to plaintiffs' trial efforts and found that it was related to the plaintiffs' success at trial. *See* Dkt.

16 405 at 14.[18] But this was wrong, as the EA/CLC claims are unrelated to the successful claim. *See*

17 *infra* at Objection 1; *Microsoft*, 297 F. Supp. 2d at 34 (finding that claims were not related,

18 because the claims "involved different products, markets and anticompetitive conduct from the

19 claim upon which Plaintiff established liability"). Further, the plaintiffs settled with EA and CLC

20 and the plaintiffs' counsel should receive fees from the settlement for their litigation against the

21

22 ─────────────────
[17] The NCAA estimates that the value of the EA/CLC-related work is at least $6,082,454.75. See
23 NCAA Opp. Ex. 19 at 2. In their fee request, the plaintiffs identified for the court "time spent
   principally litigating against, and obtaining discovery from, EA and CLC (to the extent
24 possible)," which represented $3,554,108.15. *See* Dkt. 341 at 13. The NCAA reviewed the
   billing records submitted by the plaintiffs and found additional time entries (valued at
25 $2,528,346.60 in lodestar) recording plaintiffs' counsel's efforts litigating against and obtaining
   discovery from EA and CLC. *See* Dkt. 355 at 14-15; NCAA Opp. Ex. 18 at 2. These billing
26 entries were not identified as EA/CLC-related work by the plaintiffs.

27 [18] *Cf.* Dkt. 341 at 13 (arguing that the plaintiffs' litigation against EA and CLC created "evidence
   ***deployed*** . . . at trial") (emphasis added); Dkt. 341-2 at ¶ 4 ("time spent litigating principally
28 against [EA and CLC] . . . bore significant fruit for purposes of . . . trial ***proceedings*** against the
   NCAA") (emphasis added).

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF**
**DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

15

settling defendants. Plaintiffs may not recover these fees from the NCAA. *See* NCAA Opp., Dkt. 355 at 13-15.

**Authority:** Plaintiffs' work litigating video game claims against EA and CLC was not related to the plaintiffs' successful college education market claim against the NCAA and did not contribute to the success of the claim. Antitrust claims are not related when they involve "different products, markets and anticompetitive conduct from the claim upon which Plaintiff established liability." *See Microsoft*, 297 F. Supp. 2d at 34; *cf. Schwarz,* 73 F.3d at 903 ("the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' If they didn't, they are unrelated under *Hensley*."). The plaintiffs' successful claim at trial involved a different product market (the college education market in which EA and CLC do not participate), a different restraint (restrictions on payments that EA and CLC would not be permitted to make even after the Court's injunction), and a different conspiracy (a horizontal and vertical conspiracy in which EA and CLC could not have participated) than the plaintiffs' video game claims. *See* NCAA Opp., Dkt. 355 at 14 ("EA and CLC have nothing to do with the college education market the court identified or the relationship between the NCAA, its member institutions and student-athletes."). Plaintiffs' claims against EA and CLC only involved the unsuccessful group licensing video game claim and so were both unrelated and unsuccessful. *See* NCAA Opp., Dkt. 355 at 14.

Additionally, plaintiffs can seek their fees related to EA and CLC from the EA Video Game Settlement – and are in the process of doing so. Courts reduce lodestars to account for claims against other defendants. *See* NCAA Opp., Dkt. 355 at 14, 14 n.19; *see also Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988) (approving district court's reduction in fees to account for claims against other defendants); *Baughman*, 583 F.2d at 1214 (reducing lodestar by removing litigation fees expended in pursuit of antitrust claims against settling defendants).

EA and CLC settled with plaintiffs. After the briefing on this fee petition, the plaintiffs' counsel sought $8,000,000 (more than the $6.08 million in EA/CLC-related work identified by

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

16

1    the NCAA in this fee petition, *see* NCAA Opp. Ex. 19 at 2, or the $544,966.52 lodestar the

2    plaintiffs' counsel generated to finalize the EA Video Game Settlement, *see* Dkt. 389-2, at 14, 16)

3    from the settlement fund to compensate themselves for their work litigating against EA and CLC.

4    *See* Dkt. 389-2 at 2. The request shows that the plaintiffs' counsel can and should receive full

5    compensation for their litigation against EA and CLC from the EA Video Game Settlement's

6    settlement fund, and that the NCAA is not the proper defendant to pay these CLC and EA-related

7    fees. *See* Bateman Decl. at ¶ 14; *see id.* at ¶ 15 (entries related to EA-CLC settlement).

8        **Relief Requested:** The NCAA requests a reduction of $3,634,334.54. *See* NCAA Opp.

9    Ex. 19.

10       **OBJECTION NO. 13: The NCAA objects to the conclusion that plaintiffs may**

11   **recover fees for time spent soliciting clients. Dkt. 405 at 17-18.**

12       **Reason:** Plaintiffs may not recover fees from the NCAA that would not be properly billed

13   to their clients, and clients do not pay for their own solicitation. Time entries related to the

14   solicitation of plaintiffs – regardless of when the solicitation occurred – is not recoverable. *See*

15   NCAA Opp., Dkt. 355 at 15.

16       **Authority:** "Hours that are not properly billed to one's ***client*** also are not properly billed

17   to one's ***adversary***." *Hensley*, 461 U.S. at 434 (emphasis in original). In *ACLU of Georgia v.*

18   *Barnes*, 168 F.3d 423, 435-36 (11th Cir. 1999), the Eleventh Circuit held that time spent

19   soliciting potential plaintiffs was certainly not recoverable, and that time spent interviewing

20   potential plaintiffs could only be compensable if the time records were sufficiently detailed to

21   show that the tasks were meant to further the litigation, rather than find clients for the attorneys.

22   *Id.* ("bare entries in the bill records – e.g., "interview with potential plaintiffs," "correspondence

23   with potential plaintiffs," or "meeting with potential plaintiffs" – do not establish that the time

24   was expended on litigation."). As in *Barnes*, the records identified by the NCAA show only

25   solicitation. The NCAA identified 391 entries, NCAA Opp. Ex. 20, of which plaintiffs challenged

26   only 28. Dkt. 361-1 at ¶ 18. But there can be no doubt that plaintiffs did bill for time soliciting

27

28

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF**
**DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

17

clients. *See* Bateman Decl. at ¶¶ 16-34.[19] Plaintiffs may not recover fees for these time entries.

**Relief Requested:** The NCAA requests a reduction of $262,971.94. *See* NCAA. Opp. Ex. 20.

### **OBJECTION NO. 14: The NCAA objects to the conclusion that plaintiffs may recover fees for time spent on motion for lead counsel. Dkt. 405 at 18.**

**Reason:** Plaintiffs may not recover fees from the NCAA that would not be properly billed to their clients, and clients do not pay for counsel to compete among themselves for control of a case or arrange how later fee awards may be divvied up among firms. Time entries related to the counsels' attempts to organize themselves are not recoverable. *See* NCAA Opp., Dkt. 355 at 15.

**Authority:** Once again, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley*, 461 U.S. at 434 (emphasis in original). As a client would not pay for the time that his firm's lawyers spend allocating billable credit amongst themselves, the NCAA should not be made to pay for the time plaintiffs' counsel spent arguing to the court about which of them should take the lead role or otherwise allocating work among themselves. The NCAA identified 763 problematic entries, NCAA Opp. Ex. 21, of which plaintiffs challenged only 30. Dkt. 361-1 at ¶ 19. But there can be no doubt that plaintiffs did bill for time spent competing among themselves. *See* Bateman Decl. at ¶¶ 35-40.

**Relief Requested:** The NCAA requests a $245,884.79 reduction. *See* NCAA Opp. Ex. 21.

### **OBJECTION NO. 15: The NCAA objects to the conclusion that the NCAA has identified no time entries that identify "purely clerical or secretarial tasks." Dkt. 405 at 18.**

**Reason:** Plaintiffs cannot recover time for purely clerical or secretarial work. The NCAA has identified thousands of clerical or secretarial time entries that cannot be recovered. *See* NCAA Opp., Dkt. 355 at 15-16.

**Authority:** Clerical or secretarial work is not recoverable. *Davis v. City of San Francisco*,

---

[19] Solicitation is not limited, as plaintiffs suggest, Dkt. 361 at 5, to entries before July 21, 2009, when a group of firms initially sued on behalf of Ed O'Bannon, though those entries should certainly be excluded. *See* Bateman Decl. at ¶¶ 16-17. For months after the *O'Bannon* complaint was filed, other firms solicited other plaintiffs before filing their own complaints. These firms did not have a "case to litigate" when they solicited their plaintiffs, and their time spent soliciting is not recoverable. *Id.* at ¶¶ 18-26.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

18

976 F.2d 1536, 1543 (9th Cir. 1992); Dkt. 405 at 18. The NCAA has identified over 6000 of such entries, NCAA Opp. Ex. 22, of which plaintiffs argue only 33 are non-clerical. Dkt. 361-1 at ¶ 21.[20]

Judge Cousins rejected the NCAA's characterization of these entries in reliance on plaintiffs' declaration, which identified two disputed entries that plaintiffs argued were not clerical. Dkt. 405 at 18. The NCAA concedes that the first, dated May 11, 2011, was included in the list in error. But the second, dated October 6, 2011, requests fees for filing a motion and "prep service of Russell complaint," tasks that are clerical in nature.[21] This is only one of many clerical entries. *See* Bateman Decl. at ¶¶ 41-48 (selection of time records in which plaintiffs billed for copying, scanning, e-filing, processing ECF notices, creating courtesy copies, calendaring, printing, and organizing). Plaintiffs may not recover fees for these entries.

**Relief Requested:** The NCAA requests a $1,719,551.35 reduction. *See* NCAA Opp. Ex. 22.

**OBJECTION NO. 16: The NCAA objects to the conclusion that plaintiffs are entitled to fees generated as the result of inefficient practices. Dkt. 405 at 19-22.**

**Reason:** Plaintiffs' counsel had an obligation to work in an efficient manner. To the extent plaintiffs chose to work inefficiently, they cannot recover those costs. *See* NCAA Opp., Dkt. 355 at 16-20.

**Authority:** This Court instructed class counsel to "promote efficient prosecution of this litigation and to avoid duplication of work." *SAL* Dkt. 146 at ¶ 1. Yet plaintiffs' time records show a disregard for this instruction, and plaintiffs' counsel have repeatedly ***admitted*** to this Court that this case involved overstaffing and excessive billings.[22] Expensive partners did

---

[20] Plaintiffs conceded that "certain of the entries identified in Exhibit 22 … warrant elimination" and reduced their request by $118,837.75, or less than 7% of the requested reduction.

[21] The court's analysis may have been hampered by plaintiffs' block-billing, which combined the actual filing of a motion and preparation of the complaint for service (clerical work) with drafting a motion (non-clerical work). Dkt. 361-1 at page 18 (October 6, 2011 record). This entry only underscores how block-billing interferes with the proper analysis of billing records.

[22] Jon King, a former partner at Hausfeld LLP and the lead attorney in the case for the first four years, publicly admitted that Hausfeld LLP engaged in a "scheme" of "overstaffing" this case, "resulting in massive inefficiency and a stunning amount of attorney time being spent." *King v.*

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

19

associate or paralegal work, work was duplicated across firms, attorneys spent thousands of hours conferencing among themselves, and timekeepers overbilled for simple tasks.

Plaintiffs had an obligation to assign "certain tasks [that] could have been performed more efficiently or would have been more cost-effectively performed by a junior attorney or a non-attorney" to a junior attorney or non-attorney. *Cognizant Tech.*, 2014 WL 3885868 at *4. Plaintiffs did not. Plaintiffs disputed only 18 entries out of the 3491 inefficiently assigned entries identified by the NCAA, failing to even challenge the vast majority. *See* NCAA Opp. Ex. 22; Dkt. 361-1 at ¶ 24; Bateman Decl. at ¶ 49. Plaintiffs' fees must be reduced for these entries. NCAA Opp., Dkt. 355 at 16-17.

Similarly, plaintiffs billed thousands of hours of document review for 96 timekeepers at an average rate of $385. Bateman Decl. at ¶ 50. This hourly rate should be reduced to a more appropriate $100 per hour, commensurate with work typically done by contract attorneys or paralegals. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). *See* NCAA Opp., Dkt. 355 at 17.[23]

Plaintiffs cannot recover for overstaffing at depositions or at trial. *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). The NCAA does not challenge fees requested for the first two attorneys at each deposition. But choosing to send three or more attorneys to a deposition is inefficient, and that choice should not be rewarded. *See* Bateman Decl. ¶¶ 51-52. Additionally, Plaintiffs request fees for up to 20 timekeepers on each day of the trial, an excessive number. *See id.* at ¶¶ 53-55; NCAA Opp. Ex. 27.[24]

---

*Hausfeld*, No. 13-0237 (N.D. Cal.), Dkt. 1 at ¶ 55. The billing records confirm King's admission – counsel padded the file with duplicative and unproductive work to inflate their fees. *See also SAL* Dkt. 244 at 4 (*Keller* lead counsel complaining that Hausfeld had overstaffed, calling it "an extraordinarily inclusive approach, involving over a dozen firms in meetings and conference calls").

[23] Here, plaintiffs disputed 25 entries out of the 1969 identified by the NCAA, leaving the vast majority uncontroverted. *See* NCAA Opp. Ex. 24; Dkt. 361-1 at ¶ 25.

[24] Plaintiffs argued that their staffing was not excessive as the NCAA had "over a dozen attorneys … as well as several paralegals and staff." Dkt. 361-1 at ¶ 30. But plaintiffs include in this count technical employees, whose work is clerical and not recoverable, and NCAA employees. In reality, plaintiffs have identified 12 NCAA timekeepers, not all of whom attended each day. In comparison, plaintiffs generally had 15-20 timekeepers in attendance. NCAA Opp. Ex. 27.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

20

Plaintiffs cannot recover for excessive conferencing time. *Welch*, 480 F.3d at 949. Over a quarter of the entries submitted are related to conferencing, both within and among firms. This excessive conferencing is clearly a result of plaintiffs' counsel's inefficient decision to staff this case with nearly 400 individuals from 33 firms. The NCAA identified 9799 entries reflecting conferencing, and plaintiffs identified only 31 alleged errors. NCAA Opp. Ex. 28; Dkt. 361-1 at ¶ 34. Judge Cousins discussed only one entry. Dkt. 405 at 20. This review is insufficient and fails to account for thousands of inefficient conferencing entries. *See* Bateman Decl. at ¶ 56 (identifying 104 separate entries for conferencing in five days). Plaintiffs should not be permitted to recover for this inefficiency. NCAA Opp., Dkt. 355 at 18.

Plaintiffs cannot recover fees for duplicative work, such as having multiple timekeepers independently circulate each ECF notice, or duplicating deposition preparation or summaries of depositions or hearings. *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989).[25] *See* NCAA Opp., Dkt. 355 at 18-19.

Plaintiffs cannot recover fees for filing "copycat" complaints that added nothing to the litigation. NCAA Opp., Dkt. 355 at 19.[26]

Plaintiffs billed hundreds of hours that did nothing to advance the litigation and can only be described as churning. NCAA Opp., Dkt. 355 at 19-20.[27]

Plaintiffs request fees for timekeepers whose work did not contribute to plaintiffs' success but who only billed time for training or to "get up to speed." NCAA Opp., Dkt. 355 at 20.[28]

---

[25] Plaintiffs disputed only 14 of the 1758 entries identified by the NCAA. NCAA Opp. Ex. 29; Dkt. 361-1 at ¶ 35. This ignores the bulk of the duplicative entries identified by the NCAA. *See* Bateman Decl. at ¶ 57-60 (selected entries showing duplicative entries for circulating same filed papers and news articles). *See also* Bateman Decl. at ¶ 60 (showing 84 entries totaling 489 hours and $213,938.50 for work related to deposition of Greg Shaheen).

[26] Plaintiffs disputed only 18 of the 750 entries identified. NCAA Opp. Ex. 33; Dkt. 361-1 at ¶ 42. This ignores hundreds of time entries for copycat cases. *See* Bateman Decl. at ¶¶ 61-75.

[27] Plaintiffs disputed only 56 of the 3996 entries identified. NCAA Opp. Ex. 34-36; Dkt. 361-1 at ¶ 43, 45, 46. This ignores thousands of churning time entries. *See* Bateman Decl. at ¶¶ 76-78.

[28] Plaintiffs disputed only 31 of the 960 entries identified. NCAA Opp. Ex. 37; Dkt. 361-1 at ¶ 47. This ignores hundreds of non-contributing time entries. *See* Bateman Decl. at ¶¶ 79-82.

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

21

**Relief Requested:** The NCAA requests the following reductions:

- $2,983,547.18 for associate-level work billed by partners, *see* NCAA Opp. Ex. 23;

- $2,356,053.88 for excessive rates for document review, *see* NCAA Opp. Ex. 24;

- $163,229.50 for overstaffing at depositions, *see* NCAA Opp. Ex. 25;

- $668,912.50 for overstaffing at trial, *see* NCAA Opp. Ex. 27;

- $5,701,445.25 for excessive conferencing, *see* NCAA Opp. Ex. 28;

- $226,816.79 for excessive and duplicative work, *see* NCAA Opp. Ex. 29;

- $1,801,481.12 for excessive deposition preparation work, *see* NCAA Opp. Ex. 30;

- $381,309.14 for filing "copycat" complaints, *see* NCAA Opp. Ex. 33;

- $97,599.40 for unproductive confidentiality challenges, *see* NCAA Opp. Ex. 34;

- $578,309.33 for unproductive privilege challenges, *see* NCAA Opp. Ex. 35;

- $1,316,466.41 for churning the file, *see* NCAA Opp. Ex. 36; and

- $411,633.00 for timekeepers who did not contribute, *see* NCAA Opp. Ex. 37.

**<u>OBJECTION NO. 17: The NCAA objects to the conclusion that a negative multiplier is not appropriate in this case. Dkt. 405 at 26.</u>**

**Reason:** As stated above in Objection 4, plaintiffs' counsel achieved only a limited victory for their class. As such, a negative multiplier is appropriate. *See* NCAA Opp., Dkt. 355 at 20-21.

**Authority:** The foremost consideration in determining whether to apply a multiplier is the benefit to the class. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). As outlined above, plaintiffs' counsel achieved only a limited victory. Former student-athletes will receive nothing as a result of the lawsuit, and current student-athletes will receive only injunctive relief. In similar cases, courts have applied substantial reductions to the lodestar. *See Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (50% reduction for $25,000 judgment on $5 million claim); *Moralez v. Whole Food Market, Inc.*, No. C 12-01072, 2013 WL 3967639, at *6 (N.D. Cal. July 31, 2013) (80% reduction for modest damages and no injunctive relief).

**Relief Requested:** The NCAA requests the application of a negative multiplier.

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

22

1    **OBJECTION NO. 18: The NCAA objects to the conclusion that plaintiffs are**

2    **entitled to copying and printing costs. Dkt. 405 at 24.**

3    **Reason:** Judge Cousins acknowledged that plaintiffs failed to provide the level of detail

4    required by courts in the Ninth Circuit. The award of copying and printing costs is therefore

5    contrary to the law of the courts of this Circuit. *See* NCAA Opp., Dkt. 355 at 24.

6    **Authority:** Plaintiffs should not be awarded copying expenses when they have failed to

7    adequately identify the reasons those copies were necessary. *E.g. Rojas*, 2015 WL 3657172 at

8    *33 ("[Plaintiffs] fail to explain the purpose of the copies such that the Court may determine the

9    copies were necessary for the course of the litigation, and were not, in fact, merely copies for

10   their convenience."); *Rodriguez v. General Dynamics Armament & Tech. Prods.,* 775 F.Supp.2d

11   1217, 1219 (D. Haw. 2011) (declining to award costs totaling $20,750.52 for copying where

12   "counsel state[d] only that the copies were for trial exhibits and list[ed] the per item cost for

13   various lines," but "the vast majority of those documents were never used or even referred to at

14   trial"); *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *10 (N.D. Cal. June

15   5, 2013) (no printing expenses because court could not determine whether the costs were

16   "allowable or reasonable"); *McCarthy v. R.J. Reynolds Tobacco Co.*, No. CIV. 2:09-2495 WBS,

17   2011 WL 4928623, at *6 (E.D. Cal. Oct. 17, 2011) (The costs of making copies prepared for the

18   convenience of the attorneys are not recoverable when the court cannot tell whether they were

19   merely for convenience of counsel). *See* Bateman Decl. at ¶ 83.

20   **Relief Requested:** The NCAA requests a reduction of $143,542.49. *See* NCAA Opp. Ex.

21   42.

22   **OBJECTION NO. 19: The NCAA objects to the conclusion that plaintiffs are**

23   **entitled to long distance travel expenses. Dkt. 405 at 25.**

24   **Reason:** Courts in this district require detail for long distance travel records sufficient for

25   a determination of whether the expense is reasonable. That detail is lacking here. NCAA Opp.,

26   Dkt. 355 at 24.

27   **Authority:** Courts in this district are clear about the level of detail required to recover

28

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF**
**DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

1   travel costs. *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588 WHA, 2012 WL 3257799, at

2   *1 (N.D. Cal. Aug. 8, 2012) ("Travel **must** be broken down into . . . categories. [] Within each

3   category, each expense **must** be listed, ***including date, description, and cost***.") (emphasis added).

4   *See also Bonner v. Fuji Photo Film*, No. C 06-04374 CRB, 2008 WL 410260, at *7 (N.D. Cal.

5   Feb. 12, 2008) ("[T]he requested amount will be trimmed because it was not necessary to use a

6   travel agent or a limo service . . ."). Plaintiffs' failure to meet this standard dooms their request.

7   *See* Bateman Decl. at ¶¶ 84 (lacking detail) and 85 (excessive expense).

8         **Relief Requested:** The NCAA requests a reduction of $491,632.72. *See* NCAA Opp. Exs.

9   43 and 44.

10         **OBJECTION NO. 20: The NCAA objects to the conclusion that plaintiffs are**

11   **entitled to legal research expenses. Dkt. 405 at 25.**

12         **Reason:** The record does not support the claim that plaintiffs provided "adequate

13   documentation" for legal research expenses. *See* NCAA Opp., Dkt. 355 at 24-25.

14         **Authority:** Failing to provide "the amount of time devoted to legal research, or any break-

15   down of the tasks that would require legal research," does not allow the court to determine

16   whether these expenses were allowable or reasonable. *Cruz*, 2013 WL 2447862 at *10. *See also*

17   *Payne v. Bay Area Rapid Transit Dist.*, No. C 08-2098 WDB, 2009 WL 1626588, at *9 (N.D.

18   Cal. June 5, 2009) ("[W]ithout a description of . . . the length of time spent doing on-line

19   research, the Court cannot assess whether the amount sought for these charges is reasonable.").

20   *See* Bateman Decl. at ¶ 86.

21         **Relief Requested:** The NCAA requests a reduction of $173,629.51. *See* NCAA Opp. Ex.

22   45.

23         **OBJECTION NO. 21: The NCAA objects to the conclusion that plaintiffs are**

24   **entitled to vaguely described expenses. Dkt. 405, Ex. 2 at 28.**

25         **Reason:** Plaintiffs requested $56,750.03 for miscellaneous expenses that are inadequately

26   identified in their documentation such that a determination of their reasonableness cannot be

27   made. *See* NCAA Opp., Dkt. 355 at 25.

28

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**
Case No. 09-cv-3329-CW

24

1   **Authority:** When entries of costs and expenses are inadequately vague, courts should not
2   permit the requesting party to recover them. *See Cruz*, 2013 WL 2447862 at *11 (denying request
3   for plaintiff's "various miscellaneous expenses"). *See* Bateman Decl. at ¶ 87.
4   **Relief Requested:** The NCAA requests a reduction of $56,750.03. *See* NCAA Opp. Ex.
5   47.
6   **V.   CONCLUSION**
7   For the reasons stated above and in its opposition to the fee petition and accompanying
8   exhibits, the NCAA respectfully requests a reduction of $36,864,238.59 in fees and
9   $4,916,282.68 in costs.

10
11   Respectfully submitted,
12   SCHIFF HARDIN LLP
13
14   By: */s/ Robert J. Wierenga*
    Dated:  July 27, 2015          Robert J. Wierenga (SBN183687)
15                                  Attorneys for Defendant NCAA

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

25

1

### CERTIFICATE OF SERVICE

2

I hereby certify that on July 27, 2015, I electronically filed the foregoing document with

3

the Clerk of the Court using the CM/ECF system which will send notification to the e-mail

4

addresses registered.

5

6

7

By: */s/ Robert J. Wierenga*

Robert J. Wierenga (SBN 183687)

8

Attorneys for Defendant NCAA

9

10

11

40984-0001
AA\200127737.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 09-cv-3329-CW

26