**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD O'BANNON, et al.

       Plaintiffs,

    v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION; ELECTRONIC ARTS
INC.; and COLLEGIATE LICENSING
COMPANY,

       Defendants.

_____/

No. C 09-3329 CW

ORDER GRANTING THE
NCAA'S MOTION FOR
DE NOVO REVIEW AND
ADOPTING IN PART
MAGISTRATE JUDGE
COUSINS' ORDER ON
ATTORNEYS' FEES
AND COSTS
(Docket No. 415)

On July 13, 2015, Magistrate Judge Cousins entered an order granting Plaintiffs' request for attorneys' fees and granting in part Plaintiffs' request for costs and expenses. Defendant National Collegiate Athletic Association (NCAA) has now filed a motion for de novo review of Magistrate Judge Cousins' order. Plaintiffs oppose the motion and the NCAA has filed a reply. After the Ninth Circuit affirmed this Court's decision and permanent injunction in part and reversed it in part, the Court granted the NCAA's motion to file a supplemental brief. The NCAA has filed its supplemental brief and Plaintiffs have responded. Having considered the parties' papers and the record in this case, the Court GRANTS the NCAA's motion to review the fee order de novo and adopts the fee order in part.

BACKGROUND

Plaintiffs are former and current student athletes who played Division I men's football or basketball. They filed this case as a putative class action in 2009, alleging that the Collegiate

Licensing Company (CLC), the NCAA and its members conspired to fix at zero the amounts paid to Division I football and basketball players for the use of their names, images and likenesses in violation of the Sherman Act, 15 U.S.C. § 1.  In 2010, the Court consolidated this action with Keller v. Electronic Arts Inc., Case No. 09-1967, a putative class action alleging right of publicity and related claims against the NCAA, CLC and Electronic Arts (EA).  Plaintiffs filed a consolidated amended complaint, which included antitrust claims against EA as well as the NCAA and CLC.

On August 31, 2012, Plaintiffs filed a motion to certify a class of current and former Division I men's football and basketball players to pursue claims for declaratory and injunctive relief.  They also moved to certify a subclass of current and former student-athletes to pursue money damages.

In September 2013, Plaintiffs, along with the plaintiffs in Keller v. Electronic Arts Inc., Case No. 09-1967, settled their claims against EA.  Plaintiffs in both cases continued to litigate against the NCAA.  In November 2013, the Court granted in part and denied in part Plaintiffs' motion for class certification, certifying a class of current and former Division I men's football and basketball players whose images, likeness and/or names may be, or have been, included in game footage or in videogames licensed or sold by the NCAA.  Docket No. 893.  However, the Court declined to certify the damages sub-class, finding that Plaintiffs failed to present a feasible method for determining which players appeared in videogames and were therefore eligible for monetary damages.

United States District Court
For the Northern District of California

Plaintiffs filed a motion for summary judgment and opposed the NCAA's cross-motion for summary judgment.  On April 11, 2014, the Court granted in part and denied in part Plaintiffs' motion for summary judgment and granted in part and denied in part the NCAA's cross-motion.

While Plaintiffs' motion for summary judgment was under submission, they, along with the plaintiffs in Keller, attended two settlement conferences with Magistrate Judge Cousins in an unsuccessful attempt to settle their claims against the NCAA.  The Keller plaintiffs continued to negotiate with the NCAA and reached an agreement in principle, which they announced on June 9, 2014, the first day of Plaintiffs' bench trial against the NCAA.[1]

A bench trial on Plaintiffs' claims against the NCAA was held between June 9, 2014 and June 27, 2014.  The Court entered findings of fact and conclusions of law in favor of Plaintiffs, determining that the NCAA's rules were an unlawful restraint of trade.  The Court concluded that there were less restrictive alternatives to the NCAA's rules and enjoined the NCAA and its member schools from agreeing to (1) prohibit deferred compensation of an amount less than $5,000 per year for the licensing or use of Plaintiffs' names, images, and likenesses, or (2) prohibit scholarships up to the full cost of attendance at Plaintiffs' schools.  The NCAA timely filed a notice of appeal to the Ninth Circuit.  Plaintiffs filed the instant request for attorneys' fees and costs, which the Court referred to Magistrate Judge Cousins.

---

[1] On August 19, 2015, the Court granted final approval to O'Bannon and Keller Plaintiffs' settlement with EA and Keller Plaintiffs' settlement with the NCAA.

**United States District Court**
For the Northern District of California

On July 13, 2015, Magistrate Judge Cousins entered a report and recommendation that the Court grant the motion for fees and costs with certain reductions.  On July 27, 2015, the NCAA filed the instant motion.

On September 30, 2015, the Ninth Circuit decided the NCAA's appeal.  The panel affirmed the Court's finding of an antitrust violation and affirmed the remedy relating to scholarships. However, the majority reversed the portion of the permanent injunction related to deferred compensation.  Plaintiffs filed a petition for rehearing en banc, which the NCAA opposed.  On December 16, the Ninth Circuit denied the petition for rehearing en banc.  On March 7, the United States Supreme Court granted the NCAA's application for an extension of time to file its petition for a writ of certiorari.  Any petition by the NCAA must be filed by April 14, 2016.  On March 15, 2016, Plaintiffs filed a petition for writ of certiorari in the United States Supreme Court, challenging the Ninth Circuit's holding regarding deferred compensation.

                              LEGAL STANDARD

Decisions on dispositive motions, such as motions for attorneys' fees, rendered by Magistrate Judges are to be reviewed de novo by the district court.  United States v. Raddatz, 447 U.S. 667, 673 (1980); see 28 U.S.C. § 636.  This determination may be made upon the record before the Magistrate Judge or after additional evidence is taken.  Fed. R. Civ. Pro. 72(b).  "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."  Id.

4

DISCUSSION

I.   Entitlement to Fees

In its supplemental brief, filed after the Ninth Circuit issued its opinion affirming in part this Court's findings and permanent injunction, the NCAA argues that the Ninth Circuit's reversal of the portion of this Court's decision and injunction allowing for deferred compensation renders Plaintiffs ineligible to recover fees.  Specifically, the NCAA argues that 15 U.S.C. § 26 provides for an award of attorneys' fees only to a plaintiff who "substantially prevails" and, given that the NCAA previously allowed schools to fund student-athletes' full cost of attendance, requiring the NCAA to allow schools to do so, Plaintiffs' case will not cause the NCAA to change its behavior in any way.

The NCAA argues that, even before this case was filed, Division I schools were permitted to allow student athletes to receive total financial aid packages equal to the cost of attendance by combining athletics-based grants in aid with need-based financial aid.  However, as the NCAA itself admits, the rule change permitting Division I schools to award athletics-based grants-in-aid equal to the cost of attendance was not made until 2015, while this Court's findings and permanent injunction were on appeal to the Ninth Circuit.  Moreover, as the Ninth Circuit recognized, "Although the NCAA now permits schools and conferences to elect to raise their scholarship caps to the full cost of attendance, it could reverse its position on that issue at any time.  The district court's injunction prohibiting the NCAA from setting a cap any lower than the cost of attendance thus remains

**United States District Court**
For the Northern District of California

in effect. . ." O'Bannon v. NCAA, 802 F.3d 1049, 1074 n.18 (9th Cir. 2015).

The fact that the NCAA changed its rules before the order requiring it to do so became effective does not preclude a finding that Plaintiffs are the prevailing party. "[A] plaintiff need not obtain formal relief to recover fees. Rather for there to be a 'prevailing party,' there must simply be a causal relationship between the litigation brought and the practical outcome realized." Southwest Marine, Inc. v. Campbell Indus., 732 F.2d 744, 747 (9th Cir. 1984). Where, as here, a defendant changes its behavior before it is ordered to do so, the "lawsuit must be a catalyst motivating the defendant to provide the relief sought." Braafladt v. Bd. Of Governors of Oregon State Bar Ass'n, 778 F.2d 1442, 1444 (9th Cir. 1985). The Ninth Circuit has adopted "the rule that chronological events are important, although not a definitive factor, in determining whether or not a defendant can be reasonably inferred to have guided his actions in response to a plaintiff's lawsuit." Id. Where, as here, a plaintiff "obtains a favorable decision and the result he seeks is then implemented, a cause and effect inference may ordinarily be drawn." Armster v. United States Dist. Court, 817 F.2d 480, 482 (9th Cir. 1987) (analyzing award of fees under the Equal Access to Justice Act). Although the court "must consider all other relevant facts and circumstances, the [defendant] has the burden of rebutting the inference and persuading us that the causal link has not been established." Id.

The NCAA has failed to rebut the inference that Plaintiffs' lawsuit and this Court's order were factors in its decision to

change its rules.  Accordingly, the Court finds that Plaintiffs were the prevailing party in this litigation and are entitled to recover fees.  The Court proceeds to consider the amount of fees to be awarded in light of Magistrate Judge Cousins' report and recommendation, the NCAA's objections to the report and recommendation, and the Ninth Circuit's opinion in this case.

II.  Weight to be afforded to the Magistrate Judge's Report and Recommendation

The parties disagree about the weight to be afforded to Magistrate Judge Cousins' report and recommendation.  The NCAA argues that it is entitled to de novo review, which must include an independent assessment of all of the records submitted.  However, as Plaintiffs argue, 28 U.S.C. § 636(b)(1)(B), which governs the review of reports and recommendations on dispositive motions such as this one, provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(B).  "[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."  Raddatz, 447 U.S. at 676.

Here, the Court finds that, while conducting its de novo review, it is appropriate to give significant weight to Magistrate Judge Cousins' report and recommendation.  In addition to the instant motion, this Court referred discovery and case management issues to Magistrate Judge Cousins.  He conducted numerous in-person and telephonic hearings and conferences and issued many

written orders on motions in the case, including on discovery issues related to the instant motion.  As noted above, Magistrate Judge Cousins also conducted two mediations in an effort to settle this case.  In sum, Magistrate Judge Cousins is extraordinarily familiar with this case and Plaintiffs' counsel's performance in it.  Therefore, his assessment of the motion for fees carries even more weight than a report and recommendation on attorneys' fees might usually be afforded.

III. NCAA's Objections

    A.   Conclusion that the unsuccessful claims were related to the successful claims (Objections One and Two)

The NCAA argues that Magistrate Judge Cousins' recommended finding that "all of plaintiffs' unsuccessful claims were related to the successful claims" is erroneous.  Docket No. 405 at 10.  In his report and recommendation, Magistrate Judge Cousins recognized that Plaintiffs' theory of their case changed over the course of the litigation.  Nevertheless, he rejected the NCAA's argument that (1) Plaintiffs should not be allowed to collect $23,084,122.89 in fees for 46,464.06 hours of work performed prior to August 31, 2012, when Plaintiffs filed their motion for certification of a class of current and former Division I men's football and basketball players to pursue declaratory and injunctive relief, as well as a subclass of current and former student-athletes to pursue monetary damages; (2) Plaintiffs' fees between the filing of the motion for class certification and the Court's November 8, 2013 order certifying the injunctive relief class but denying the request to certify the damages class should be reduced by eighty percent; and (3) the Court should deduct

$32,835,828.85 in fees for "all hours after November 8, 2013 related to damages, group licensing or live broadcast, products like jerseys or trading cards, monitoring the Keller litigation, time related to any specific plaintiff, or other unsuccessful claims[.]"  Docket No. 354-41 at 12-13.  In the alternative, the NCAA asserts that the Court should reduce Plaintiffs' fees by fifty percent to account for their "limited success."  Id. at 13.

The NCAA argues that all fees incurred prior to the class certification motion concerned claims that Plaintiffs voluntarily abandoned.  Moreover, the NCAA argues that the fees incurred between the time of the motion for class certification and the order on class certification must be reduced because the Court denied certification of the damages class.

The NCAA cites Hensley v. Eckerhart, which holds that, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  461 U.S. 424, 436 (1983).  However, Magistrate Judge Cousins properly found that Plaintiffs obtained excellent results in this case.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  Hensley, 461 U.S. at 435.  Although Plaintiffs refined their theory of the case over the course of the litigation, their abandoned claims "involve[d] a common core of facts or [were] based on related legal theories."  Id.

Finally, in its supplemental brief, the NCAA argues that the Ninth Circuit's reversal of this Court's findings and injunction related to deferred compensation requires a reduction in fees for

9

United States District Court
For the Northern District of California

limited success.  Citing <u>McGinnis v. Kentucky Fried Chicken</u>, 51 F.3d 805 (9th Cir. 1994), the NCAA suggests that it would be an abuse of discretion not to reduce the fee award in light of the partial reversal by the Ninth Circuit.  In <u>McGinnis</u>, the jury awarded the plaintiff $234,000 in damages, including $200,000 in punitive damages.  <u>Id.</u> at 807.  The district court awarded the plaintiff approximately $148,000 in fees and costs and stated that it would award the same amount, even if the punitive damages award were to be reversed.  <u>Id.</u> at 807, 809.  The Ninth Circuit reversed the punitive damages award and found that "the district court abused its discretion by expressly refusing to relate the extent of success to the amount of the fee award."  <u>Id.</u> at 810.  Here, the Court has considered the Ninth Circuit's holding.

Moreover, unlike <u>McGinnis</u>, a case where "the relief sought and obtained is limited to money" in which "the terms 'extent of success' and 'level of success' are euphemistic ways of referring to money,"  51 F.3d at 810, this a case for injunctive relief under 15 U.S.C. § 26, in which the award of fees to a prevailing plaintiff is mandatory.  "The legislative history of the 1976 amendment to section 26 suggests that awards of attorney's fees are essential if private attorneys-general are to enforce the antitrust laws."  <u>Southwest Marine</u>, 732 F.2d at 746.  Although a portion of the injunctive relief ordered by this Court was reversed, the finding of liability and the remaining injunctive relief are together an excellent result.  Indeed, the Ninth Circuit observed, the decision obtained by Plaintiffs "is the first by any federal court to hold that any aspect of the NCAA's amateurism rules violate the antitrust laws, let alone to mandate

**United States District Court**
For the Northern District of California

by injunction that the NCAA change its practices." <u>O'Bannon</u>, 802 F.3d at 1053.

Accordingly, the Court overrules the NCAA's first and second objections.

B.   State Law Issues and Claims (Objection 3)

The NCAA argues that Plaintiffs cannot recover fees related to their state law claims for unjust enrichment and accounting, which they voluntarily dismissed.  However, as discussed above, Magistrate Judge Cousins properly found that the work related to abandoned claims shares a common core of facts with the successful antitrust claims.  The NCAA also argues that, under the Clayton Act, Plaintiffs are not entitled to compensation for state-law claims.  The NCAA cites <u>Baughman v. Wilson Freight Forwarding Co.</u>, in which a panel of the Third Circuit held that a plaintiff could not recover fees under the Clayton Act for work done in connection with a state-law claims for tortious interference with business relationships.  583 F.2d 1208, 1216 (3d Cir. 1978).  However, <u>Baughman</u> was decided before <u>Hensley</u> and the Third Circuit panel did not address whether the state-law claim in that case shared a common core of facts with the successful claim.  The Court overrules the NCAA's third objection.

D.   Conclusion that Plaintiffs obtained "Excellent Results"
     (Objection 4)

The NCAA next objects to Magistrate Judge Cousins' conclusion that Plaintiffs obtained "excellent results."  The NCAA argues that <u>Hensley</u>, which instructs that a "reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole," requires a

reduction in Plaintiffs' fee award.  461 U.S. at 440.  As discussed above, the Court finds that Plaintiffs obtained excellent results in this case.

The NCAA's fourth objection is overruled.

E.    Fees Related to Damages and Jury Trial Preparation (Objection 5)

The NCAA argues that Plaintiffs should not be able to recover fees for work related to their claim for damages or in preparation for a jury trial because they abandoned their damages claims and did not have a jury trial.  In their motion for fees, Plaintiffs stated that they "excised . . ., to the extent separable, time concerning damages claims; the pursuit of a damages class under Rule 23(b)(3); draft jury instructions, voir dire, and questionnaires[.]"  Docket No. 341 at 12.  However, the NCAA asserts that Plaintiffs failed to remove all of the fees related to these matters.  Further, the NCAA asserts, Plaintiffs' fee request must be further reduced because that "[w]ork related to damages and a jury trial did not contribute to plaintiffs' success at a bench trial for injunctive relief."  Docket No. 415 at 11.  However, this objection is based on the premise that Plaintiffs are not entitled to receive fees for their unsuccessful related claims.  As discussed above, Plaintiffs obtained an excellent result in this case and are entitled to recover fees for work on unsuccessful related claims.

Moreover, as Plaintiffs point out, many of the entries that the NCAA identifies as related to damages or jury trial are directly related to their successful claim.  For example, the NCAA argues that Plaintiffs should not be able to recover fees related

**United States District Court**
For the Northern District of California

to the defense of Dr. Daniel Rascher's deposition.  Although Dr. Rascher was Plaintiffs' damages expert, he testified at the bench trial.  In fact, the decision to abandon the claim for monetary damages was a strategic decision, which one could reasonably assume contributed to Plaintiffs' success on their claim for injunctive relief.  One can also reasonably conclude that other work, while related to damages or to preparation for a jury trial, contributed to Plaintiffs' success on their antirust claim for injunctive relief.  The fact that their mock trial was conducted before they abandoned their claims for damages, and thereby waived their right to a jury trial, does not mean that conducting the mock trial was unrelated to their success.  Plaintiffs reasonably assert that the mock trial "sharpened Plaintiffs' trial presentation" even though that trial was a bench trial.  Docket No. 421 at 11.

The NCAA's fifth objection is overruled.

F.   Block-Billing (Objection 6)

The NCAA next argues that Magistrate Judge Cousins erroneously failed to reduce Plaintiffs' fee request based on block-billed entries.  The NCAA asserts that over 13,000 entries, representing $22,913,777.59 in fees are block-billed.  The NCAA argues that these fees should be reduced by thirty percent, or $6,874,133.28.  Magistrate Judge Cousins properly found that "block billing has been accepted in this district." PQ Labs, Inc. v. Qi, 2015 WL 224970, at *3 (N.D. Cal.) (citing Stonbrae, L.P. v. Toll Bros., Inc., 2011 WL 1334444, at *8 (N.D. Cal.)) ("Block Billing is a typical practice in this district, and blocked-bills

United States District Court
For the Northern District of California

have been found to provide a sufficient basis for calculating a
fee award.").

    The NCAA faults Magistrate Judge Cousins for discussing only
two of the purportedly block-billed entries in his order.
However, Magistrate Judge Cousins' report and recommendations make
clear that the two entries discussed are only examples.  Having
reviewed the entries identified in Exhibit 3 to the NCAA's
opposition to Plaintiffs' motion for fees, the Court agrees with
Magistrate Judge Cousins' finding that the identified entries
"contain enough specificity as to individual tasks to ascertain
whether the amount of time spent performing them was reasonable."
Garcia v. Resurgent Capital Servs., L.P., 2012 WL 3778852, at *8
(N.D. Cal.).  Moreover, it appears that Plaintiffs claimed
reasonable amounts of time for the tasks described.

    The Court further notes that it is unreasonable for the NCAA
to expect the Court to discuss all, half or even one-tenth of the
over 13,000 entries the NCAA identified.  This is particularly
true because it appears that the NCAA challenged any entry that
includes more than a single task.  However, many of the identified
entries are for .10 hours.  By "block-billing" these entries,
Plaintiffs actually claimed less, not more, time than if they had
made a separate time entry for each task.  See, e.g., Docket No.
354-4 at 10 (0.10 hours claimed on July 7,2011: "Review notes from
MDH re draft 2nd req for admissions to NCAA; Email to case team re
same").  Other entries very clearly contain enough specificity as
to the tasks performed.  See, e.g., id. at 39 (6.80 hours claimed
on October 30, 2013: "Discuss motion for partial summary judgment
with B. Glacking; review rule of reason case law; edit motion for

**United States District Court**
For the Northern District of California

1  partial summary judgment."). Still others do not even appear to

2  be block-billed. <u>See, e.g.</u>, <u>id.</u> at 29 (2.30 hours claimed on

3  August 1, 2012: "Reviewing draft RFA responses to NCAA RFAs.

4  Commenting."); <u>id.</u> (0.40 hours claimed on August 7, 2012:

5  "Conference call with Plaintiffs' counsel re: NCAA document

6  review[.]"); <u>id.</u> at 47 (3.90 hours claimed on April 24, 2014:

7  "Research case law for motions in limine; edit motions in

8  limine.").

9       The NCAA's sixth objection is overruled.

10      G.    Vague Entries (Objection 7)

11      The NCAA identified 4,292 entries it contends are

12  impermissibly vague because they do not allow it "to determine

13  what claims or which defendant the work was directed to or whether

14  the time expended was unreasonable." Docket No. 415 at 12. The

15  NCAA seeks a reduction of $2,192,858.38, representing a fifty

16  percent reduction in fees requested for these entries. Magistrate

17  Judge Cousins found that the challenged entries were sufficiently

18  detailed to permit the court fairly to evaluate the reasonableness

19  of the time expended. The NCAA again faults Magistrate Judge

20  Cousins for discussing only one example in his written order.

21  However, as noted above, it is unreasonable for the NCAA to expect

22  the Court to address even a fraction of the entries it identifies

23  as potentially vague, particularly when the NCAA includes multiple

24  entries that clearly involve recoverable fees. To the extent

25  certain entries may appear vague, considered in the context of the

26  billing records as a whole, or the case record, they contain

27  sufficient information to assess their reasonableness. For

28  example, the NCAA identifies an April 6, 2011 entry claiming 1.50

hours of work for "preparation for hearing" as vague.  Docket No. 354-5 at 28.  However, a brief review of the <u>Keller</u> docket discloses that the Court heard oral argument on Defendants' motions to dismiss on April 7, 2011.  Other entries contain sufficient information standing alone.  <u>See, e.g.</u>, <u>id.</u> at 54 (0.20 hours claimed on January 6, 2012: "Review defendants' case management conference statement."); <u>id.</u> at 66 (one hour claimed on April 4, 2012: "team call re case status"); <u>id.</u> at 89 (1.20 hours claimed on November 8, 2012: "Review Defendants' reply ISO motion to strike Plaintiffs' motion for class certification."); <u>id.</u> at multiple pages (entries claiming time for "document review").

The NCAA's seventh objection is overruled.

H.   Redactions (Objection 8)

The NCAA argues that Magistrate Judge Cousins erred when he allowed Plaintiffs to recover fees based on ninety-five redacted and five hundred thirty-six partially redacted entries.  In its reply, the NCAA contends that the entries "are redacted such that the NCAA cannot determine whether the fees were reasonable." Docket No. 427 at 8.  However, it is the Court, not the NCAA, that must determine whether the fees requested are reasonable. Magistrate Judge Cousins reviewed unredacted entries in camera and determined both that the entries were sufficiently detailed to make a reasonableness determination and that the time expenditures documented in the redacted entries were reasonable.  Having also reviewed the redacted entries, the Court adopts Magistrate Judge Cousins' recommendation.  The NCAA's eighth objection is overruled.

16

**United States District Court**
For the Northern District of California

I.   Quarter-Hour Time Entries (Objection 9)

Magistrate Judge Cousins reduced by five percent certain entries which were billed in quarter-hour increments.  He found that only a small number of the entries identified were for tasks that likely took one- or two- tenths of an hour rather than a quarter hour.  In addition, Magistrate Judge Cousins found that the practice was not widespread or excessive.  The NCAA cites Welch v. Metropolitan Life Ins. Co., in support of its argument that the fees based on the quarter-hour time entries should have been reduced by twenty percent.  480 F.3d 942, 948-49 (9th Cir. 2007).  However, in Welch, the Ninth Circuit panel simply affirmed the district court's decision to impose a twenty percent reduction.  The panel held that the "district court was in the best position to determine in the first instance whether counsel's practice of billing by the quarter-hour resulted in a request for compensation for hours not reasonably expended on litigation" and noted the deference afforded to such determinations.  Id. at 948.

Having reviewed the challenged entries, the Court finds that the practice of billing in quarter-hour increments did not result in any significant overstatement of hours spent on tasks.  In Welch, the twenty percent reduction was based on a finding that "the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time."  Id. at 949.  Unlike in Welch, the challenged entries in this case are not "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences."  Id.

The NCAA's ninth objection is overruled.

United States District Court
For the Northern District of California

J.   Alleged Rounded Quarter-Hour Time Entries (Objection 10)

The NCAA asserts that it has "identified 12 timekeepers whose time entries always end in .0, .3, .5 or .8, suggesting that they were rounding up quarter-hour entries to avoid detection."  Docket No. 415 at 14.  The NCAA argues that the Court should reduce these entries by twenty percent.[2]  As an initial matter, the Court notes that almost all of the twelve timekeepers the NCAA has identified have time entries that do not end in .0, .3, .5 or .8.  As with other challenges to specific time entries, the NCAA was vastly overinclusive when it compiled the ninety-five pages of challenged time entries it asks the Court to review.

Having reviewed the entries the NCAA challenges, the Court finds that only one type of entry appears likely to have been rounded up resulting in an overstatement of the time reasonably spent on the litigation.  The Court notes that there are many entries claiming .3 hours of time for "receiv[ing] and review[ing] correspondence from U.S. District Court" regarding filings.  The Court understands these entries to be reviewing and receiving notices of electronic filing from the Electronic Case Filing system.  However, Plaintiffs' counsel claimed .3 hours of work for many of these entries, regardless of whether the notice of filing related to a substantive order of the Court, a simple notice of appearance by an attorney, or even a ministerial action, such as a clerk's notice continuing a case management conference, an order granting an application to appear pro hac vice, or the filing of a

---

[2] It appears that Magistrate Judge Cousins did not directly address this argument.

**United States District Court**
For the Northern District of California

certificate of service.  Review of every notice of electronic filing cannot reasonably have taken eighteen minutes.

Accordingly, the NCAA's tenth objection is sustained in part. The Court will reduce the challenged entries by five percent or $40,111.

K.   Media-Related Activities (Objection No. 11)

The NCAA argues that Magistrate Judge Cousins improperly found that Plaintiffs are entitled to fees for media-related activity.  However, the Ninth Circuit has held, "Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients." Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992), reh'g denied and opinion vacated in non-relevant part, 984 F.2d 345 (1993).  Accordingly, the Ninth Circuit has allowed counsel to recover fees for media-related activities.  In this high-profile class action, counsel's media-related work was part of their successful representation of the class.  The NCAA's eleventh objection is overruled.

L.   Claims against EA or CLC (Objection No. 12)

The NCAA argues that Plaintiffs are not entitled to recover fees from it based on work related to their claims against EA and CLC, which they settled.  Instead, the NCAA argues, Plaintiffs

must recover such fees from EA and CLC through the settlement.[3]
Accordingly, the NCAA argues that Magistrate Judge Cousins erred
when he found that "the claims against EA and CLC involve a common
core of facts with the claims brought against the NCAA" and
allowed Plaintiffs to recover $3,554,108.15 in fees Plaintiffs
identified as specific to their claims against EA and CLC as well
as other fees that the NCAA believes were specific to the claims
against EA and CLC.  Docket No. 405 at 16.  The NCAA seeks a
reduction of $3,634,334.54 on this basis.

    As discussed above, the Supreme Court in Hensley allows a
plaintiff that is not successful on all of its claims to recover
all of its fees if it obtains "excellent results."  461 U.S. at
435.  This is true when the unsuccessful claims are related to the
successful claims and "involve a common core of facts or [are]
based on related legal theories."  Id.  However, this conclusion
is based on an assumption that, in such cases, "[m]uch of
counsel's time will be devoted generally to the litigation as a
whole, making it difficult to divide the hours expended on a
claim-by-claim basis."  Id.  The Supreme Court explains that
"[s]uch a lawsuit cannot be viewed as a series of discrete claims.
Instead the district court should focus on the significance of the
overall relief obtained by the plaintiff in relation to the hours
reasonably expended on the litigation."  Id.

_____

    [3] While the instant motion was pending, the Court awarded
Plaintiffs $4,000,000 in fees and placed $2,000,000 in escrow as
part of the EA settlement.  The Court held, "If the fee award
related to the O'Bannon trial [i.e. the fee award at issue in this
order] is not paid by the NCAA, the $2,000,000 will be paid to
O'Bannon Plaintiffs' counsel."  Docket No. 459 at 24.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

However, in this case, Plaintiffs themselves have identified nearly 8,000 hours spent on work specific to their claims against EA and CLC.  At least with respect the hours identified by Plaintiffs, this is not a situation where it is "difficult to divide the hours expended on a claim-by-claim basis."  Id. Accordingly, whether or not the claims are related, Plaintiffs may not recover the fees they themselves have identified as related solely to their claims against EA and CLC.  Accordingly, the Court will reduce the fee award by $3,554,108.15.

The NCAA asserts that it has identified 2000 additional entries that are for work on Plaintiffs' claims against EA and CLC.  The Court has reviewed those entries and finds that they are not exclusively for work on the claims against EA and CLC.  See, e.g., Docket No. 354-19 at 7 (claiming 1.10 hours on September 17, 2009 to "review NCAA's opposition to motion to consolidate cases"); id. at 76 (claiming 3.50 hours on July 14, 2012 for "Continued drafting responses to contention interrogatories and requests for admission."); id. at 89 (claiming 2.50 hours on November 12, 2012 to "Review complaint and background materials in preparation for document review assignment.").

M.   Communication with Clients (Objection No. 13)

The NCAA next objects to time it asserts that Plaintiffs' counsel spent soliciting clients.  The NCAA argues that such time is not compensable, citing ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999).  In Barnes, the Eleventh Circuit held that "hours spent looking for and soliciting potential plaintiffs" is not compensable "because until the attorney has a client, there is no case to litigate."  168 F.3d at 435.  Accordingly, the NCAA argues

United States District Court
For the Northern District of California

that Plaintiffs should not be able to recover fees for work performed before the O'Bannon complaint was filed.  However, the NCAA has made no showing that any of the challenged entries are for work performed before counsel had even one client.  Moreover, in a complex class action such as this one, it is reasonable to conclude that the identification of class representatives is a strategic decision that contributed to the success of the litigation and that necessary legal research into the viability of claims would take place before potential class representatives were identified.  Accordingly, the Court rejects the NCAA's argument that Plaintiffs should not be able to recover fees incurred before the O'Bannon complaint was filed.

The NCAA further argues that much of the time billed after the O'Bannon complaint was filed is non-compensable solicitation by other law firms seeking to file "copycat" lawsuits, which were later merged into the O'Bannon case.  However, the relevant time entries identified by the NCAA include descriptions of work that go beyond bare solicitation.  For example, the NCAA objects to time billed to "Investigate facts and research legal issues. Correspond and discuss w/colleagues and possible plaintiffs cases, claims, damages, complaints and allegations, and status and strategy."  Bateman Decl., Dkt. 424-1 at ¶ 22.  Although this entry includes a discussion with possible plaintiffs, entries such as these involve work that contributed to the substance of the case.  Similarly, the NCAA objects to time billed to "Look over final draft of complaint.  Discussion with Eugene Spector re another lead client and type."  Id. at ¶ 17.  Entries such as these involve legal strategy that likewise goes beyond the simple

solicitation of an individual to act as a client.  To the extent these entries claim time related to the identification and "solicitation" of plaintiffs, the Court finds, as discussed above, that the identification and solicitation of class representatives in a case such as this involves strategic decision-making that impacts the success of the case.

Moreover, the NCAA does nothing to identify which entries it believes fall into this category of solicitation of plaintiffs in "copy-cat" cases.  The fee applicant "has an initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." United States v. $28,000.00 in United States Currency, 802 F.3d 1100, 1105 (9th Cir. 2015) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  However, once that burden is met, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1993) (citing Blum, 465 U.S. at 892 n.5).  The NCAA has failed to meet that burden.  Accordingly, its thirteenth objection is overruled.

N.    Motion to be Lead Counsel (Objection No. 14)

The NCAA next argues that Plaintiffs cannot recover fees for time spent on motions to be lead counsel.  The NCAA bases this objection on language in Hensley, which provides, "Hours that are not properly billed to one's client also are not properly billed to one's adversary."  461 U.S. at 434 (emphasis in original). However, the NCAA cites no support for a finding that a client

United States District Court
For the Northern District of California

would not pay its attorney to file a motion to act as lead counsel in a complex case.  The NCAA's fourteenth objection is overruled.

O.   Clerical Work (Objection No. 15)

The NCAA next seeks a $1,719,551.35 reduction in fees to account for time it argues was spent on clerical tasks.  "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate or lawyer's rate, regardless of who performs them."  Davis v. City of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) (quoting Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)) (internal alteration marks omitted).  The NCAA identified 6,086 entries it contends are for purely clerical work and faults Magistrate Judge Cousins for citing only one of the 6,086 entries when he found that "what the NCAA calls 'clerical or secretarial work' actually involved substantive work that substantially differs from the 'purely clerical or secretarial tasks' in Davis."  Docket No. 405 at 18.

Again, the Court notes that it is unreasonable for the NCAA to expect Magistrate Judge Cousins to discuss even a fraction of the more than 6,000 entries it identified.  This is particularly true when many of the entries identified are unquestionably for substantive work.  See, e.g., Docket No. 354-23 at 3 (5 hours claimed on July 19, 2009 to "Proof and edit draft complaint to be filed on Tuesday in USDC ND CA"); id. at 38 (1.20 hours claimed on January 7, 2011: "Reviewed motion for leave to file separate motions to dismiss; notice of presentation of oral appellate argument; MDL pleadings."); id. at 39 (.40 hours claimed on January 13, 2011: "Reviewed CL's and NCAA's Oppositions to Motion to Relate case."); id. at 230 (12.30 hours claimed on June 22,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

2014: "Assisted lawyers in the preparation for and administration of next trial day including legal and factual research, making witness binders, preparing admitted exhibits for submission to Court and reviewing documents."). These are only a few of the many non-clerical entries included in the NCAA's 234 page exhibit listing purportedly clerical time entries. The Court notes that there are a number of entries that are purely clerical, including entries for making travel arrangements, opening bank accounts and printing or copying documents. However, the Court finds that these entries make up a very small portion of the entries challenged. Accordingly, the Court will reduce the fee award by $34,391, representing two percent of the $1,719,551.35 reduction sought by the NCAA for purportedly clerical work.

P.   Staffing Decisions (Objection No. 16)

The NCAA next objects to various staffing decisions made by Plaintiffs' counsel. The NCAA first challenges 3,491 entries, arguing that Plaintiffs "inefficiently assigned" work to partners that could have been performed by junior attorneys or non-attorneys. However, the entries identified are primarily for time spent conducting legal and factual research, drafting pleadings, briefs and discovery requests, preparing for depositions, and preparing for trial. The NCAA provides no authority to support a finding that this type of work cannot be reasonably assigned to partners as well as associates. See Moreno v. City of Sacramento, 534 F.3d 1006, 1115 (9th Cir. 2008) ("The difficulty and skill level of the work performed, and the result achieved--not whether it would have been cheaper to delegate the work to other attorneys--must drive the district court's decision."). The

NCAA's next challenge fails for similar reasons.  The NCAA argues that all document review should be billed at a rate of "$100 per hour, commensurate with work typically done by contract attorneys or paralegals."  Docket No. 415 at 20.  However, as noted by Magistrate Judge Cousins, the NCAA provides no authority for its position that document review may only be performed by contract attorneys or paralegals, or that contract attorneys and paralegals may only be compensated at $100 per hour.

The NCAA also argues that Plaintiffs' counsel overstaffed depositions and trial.  Specifically, the NCAA argues that Magistrate Judge Cousins' reliance on the fact that the NCAA had comparable levels of staffing at the challenged depositions and at trial was flawed because, the NCAA argues, Plaintiffs miscounted some non-billing technical staff in its tally of NCAA timekeepers.  Even if Plaintiffs had more timekeepers than the NCAA present for trial on any given day, the staffing levels were comparable.  Moreover, when considering an overstaffing challenge, "[c]ourts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication."  Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004).  Given the scope and complexity of this case, the Court finds that Plaintiffs' attorneys' staffing levels were reasonable.

The NCAA next argues that Plaintiffs held excessive conferences and, accordingly, should not be able to recover full fees based on 9,779 of their entries.  However, the NCAA seeks to reduce fees for every entry that mentions a meeting or conference, arguing that the conferencing was "excessive" and "clearly a

United States District Court
For the Northern District of California

result of plaintiffs' counsel's inefficient decision to staff this case with nearly 400 individuals from 33 firms." Docket No. 415 at 21. The NCAA also faults Plaintiffs' opposition for specifically discussing only thirty-one of the 9,799 entries and Magistrate Judge Cousins' order for discussing only one of the entries. However, as discussed above, the Court interprets the discussion of those instances as examples, rather than a comprehensive itemization of the issue.

Moreover, the NCAA itself makes only the most general objection to these nearly 10,000 entries, without discussing any specific entries. In the declaration filed in support of its motion for de novo review, the NCAA identifies 104 entries "for conferencing" over the course of one work-week in April 2012. The NCAA does not explain its objections to these entries. The work documented in those entries ranges from deposition preparation, propounding discovery, planning for Plaintiffs' motion for class certification, reviewing discovery and discussing potential experts. Given the busy time in the case and the scope of the litigation, the Court finds that the entries identified in the NCAA's declaration are reasonable. Similarly, review of the nearly 10,000 entries the NCAA identifies as "conferencing entries" reveals reasonable discussion among attorneys and legal staff regarding case strategy and the work necessary to pursue their clients' claims. The Court notes that the NCAA's claimed "conferencing entries" also include many entries that do not include any conferencing among Plaintiffs' counsel at all. See, e.g., Docket No. 354-29 at 365 (two hours claimed on August 20, 2013: "review defendants reply briefs on motion to strike and

motions for leave to file MTD"); <u>id.</u> at 439 (one hour claimed on May 14, 2014: "Conference call with court regarding pre trial issues); <u>id.</u> at 457 (4.70 hours claimed on June 23, 2014: "Review trial transcript, court rulings, and misc. correspondence with defense counsel").

The NCAA next challenges 1,758 entries as "excessive and duplicative." However, the NCAA makes only one specific objection, that multiple timekeepers independently circulated each ECF notice. The Court finds that, when multiple law firms are working on a case, it is reasonable for someone at each firm to monitor and circulate ECF notices. Moreover, it is reasonable that each firm would keep its own case file. The challenged entries include many other types of entries, none of which are unreasonable. The NCAA also makes a broad argument that Plaintiffs spent excessive time preparing for depositions or summarizing depositions or hearings. The NCAA points out time entries related to the preparation for the June 2012 deposition of Greg Shaheen. The Court finds that the entries identified claim a reasonable amount of work to prepare for the deposition of an executive at the NCAA. To the extent the NCAA challenges time spent preparing for other depositions, or summarizing depositions or hearings, the Court has reviewed the challenged entries and finds that the NCAA has not carried its burden of rebuttal.

The NCAA makes similar broad assertions when challenging 750 entries it asserts are for preparing and filing "copycat" complaints, which the NCAA asserts "added nothing to the litigation," and 3,996 entries it identifies as "churning" that "did nothing to advance the litigation." Docket No. 415 at 21.

The Court notes that, as with every other list of challenged entries, the NCAA has included many entries that do not even arguably fit into the category challenged.  Moreover, the Court has reviewed the challenged entries and finds that they are not unreasonable.  The NCAA has not carried its burden of rebuttal with respect to these entries.

Finally, the NCAA identifies 960 entries that are for timekeepers who the NCAA argues only billed for training or reviewing case materials rather than contributing to the case. However, the challenged entries include conducting legal research, meeting with clients, and drafting motions.  See, e.g., Docket No. 354-38 at 3 (1.70 hours claimed on October 26, 2009: "Draft administrative motion to relate cases"); id. at 27 (one hour claimed on May 15, 2014: "Conference call with court regarding pre trial issues").

The NCAA has not met its burden of rebuttal with respect to its staffing decision arguments.  Accordingly, its sixteenth objection is overruled.

Q.   Negative Multiplier (Objection No. 17)

The NCAA argues that Magistrate Judge Cousins erred when he declined to apply a negative multiplier to Plaintiffs' fee request.  The NCAA argues that a negative multiplier is appropriate in light of Plaintiffs' limited success in this case. However, as discussed above, the Court finds that the excellent results achieved by Plaintiffs entitles them to their full fee, with only minimal specific reductions, in this case.  The NCAA's seventeenth objection is overruled.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

R.   Copying and Printing Costs (Objection No. 18)

The NCAA argues that Magistrate Judge Cousins erred when he allowed Plaintiffs to recover $143,542.49 for copying and printing costs.  In his order, Magistrate Judge Cousins acknowledged that Plaintiffs' records "identify only the firm name, the date, a non-substantive description (e.g. "Photocopying Expense"), and the amount spent."  Docket No. 405 at 24.  The NCAA argues that case law requires that a party seeking copying and printing costs provide records with "sufficient detail to show the reasons the copies were necessary."  While the magistrate and district judges in the cases cited by the NCAA found that the documentation was insufficient in those cases, Magistrate Judge Cousins found that Plaintiffs' documentation and explanation were sufficient in the context of this case.  The Court has reviewed the records submitted by Plaintiffs and finds that the copying and printing costs claimed by Plaintiffs are reasonable in the context of the litigation.  As the NCAA concedes, Plaintiffs are entitled to recover reasonable costs that would ordinarily be paid by a paying client.

Accordingly, the NCAA's eighteenth objection is overruled.

S.   Long-Distance Travel Expenses (Objection No. 19)

The NCAA next contends that Magistrate Judge Cousins erroneously concluded that Plaintiffs were entitled to compensation for long distance travel.  The NCAA asserts that there is a rule that a party seeking reimbursement of travel expenses must provide the dates, description and cost for each item claimed.  However, the NCAA bases this assertion on an order from a single judge in this district, directing counsel in that

case to submit more detailed records in support of their motion

for fees and costs.  See Docket No. 415 at 24 (citing Tuttle v.

Sky Bell Asset Mgmt., LLC, 2012 WL 3257799 (N.D. Cal.)).  The

Court finds that the records submitted by Plaintiffs are

sufficient to meet their burden of production.  The NCAA has

provided no argument or evidence that the entries are unreasonable

to carry its burden of rebuttal.

The NCAA also argues that other claimed expenses were

excessive.  As with other objections, the NCAA fails to argue with

specificity why any single entry represents an excessive claim.

Instead, the NCAA attaches a declaration to its motion, which

identifies ten entries as examples of purportedly excessive travel

expenses.  The Court assumes that the NCAA believes that these are

the most egregious examples.  Each of those entries contains

expenses related to a trip from Minneapolis to Washington, D.C.

The costs in these entries and in the others identified by the

NCAA are not patently excessive and the NCAA has provided no basis

for finding that they are excessive in this case.

The NCAA's nineteenth objection is overruled.

T.   Legal Research Expenses (Objection No. 20)

The NCAA seeks a reduction of $173,629.51 in costs claimed

for legal research database access, internet access while

traveling and PACER and other online court record database fees.

The NCAA argues that Plaintiffs are required to provide

information about the amount of time spent performing legal

research or a description of the tasks requiring legal research to

support their claim for legal research costs.  Again, the NCAA

simply cites cases in which courts found, in the context of those

cases, that the plaintiffs failed to provide sufficient evidence. Given the scope of this case and the number of motions filed, the Court finds that the legal research costs claimed are reasonable. The NCAA's twentieth objection is overruled.

U.   Description of Expenses (Objection No. 21)

Finally, the NCAA objects to $56,750.03 in expenses it claims are inadequately identified.  As with many of its other objections, the NCAA makes a broad assertion that the entries listed in the five-page exhibit are too vague to establish that they are reasonable but does not provide argument specific to any of those entries.  Review of the entries shows that many of them provide sufficient description to determine that the expenses are for purchasing video games and books for factual research for the case or NCAA programs to be used as exhibits for trial.  Other entries are for compensable travel expenses such as airport baggage carts or internet access fees on airplanes.  Still other entries are for room rentals for depositions or deposition transcripts which are also expenses that could reasonably be charged to a paying client.

However, other entries are not clearly reasonable.  For example, there are multiple entries under the "Investigation Hours" category that have only "Kenny Byrd" as the description. It is not clear if Kenny Byrd is the investigator being paid or the subject of the investigation.  Moreover, it is not clear that any such investigation is reasonably related to the litigation. Similarly, there are entries for items that appear to be office supplies, which are overhead that should not ordinarily be billed to a client.  See Missouri v. Jenkins, 491 U.S. 274, 296 (1989)

United States District Court
For the Northern District of California

("[A] prudent attorney customarily includes . . . office overhead . . . in his own hourly billing rate."). For example, there are entries for "phone/fax" and for a supply shelf for storage. Accordingly, the Court will sustain in part the NCAA's twenty-first objection and will reduce by ten percent, or $5,675, the costs identified by the NCAA as vague.

CONCLUSION

For the reasons stated above, the Court GRANTS the NCAA's motion for de novo review of Magistrate Judge Cousins' fee order and adopts the fee order in part. Docket No. 415. The Court orders the following reductions in addition to the reductions ordered by Magistrate Judge Cousins. The Court will further reduce Plaintiffs' attorneys' fees by $3,628,610.15, to $40,794,245.89, and will further reduce Plaintiffs' costs by $5,675.00, to $1,540,195.58.

The NCAA's motions to file under seal portions of the declaration and amended declaration of Paul Bateman are GRANTED because the redacted portions contain time-detail information protected by the attorney-client privilege or work-product doctrine that Magistrate Judge Cousins previously ordered to be filed under seal. Docket Nos. 416, 420, 425.

IT IS SO ORDERED.

Dated: March 31, 2016

CLAUDIA WILKEN
United States District Judge